UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM CONSTANT,

      Plaintiff,

-against-

ANTHONY J. ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision (DOCCS), ALBERT PRACK, Director of Special Housing and Inmate Disciplinary Programs, DOCCS, WILLIAM LEE, Superintendent of Green Haven Correctional Facility ("Green Haven"), FREDERICK BERNSTEIN, M.D., Facility Health Services Director, Green Haven, ROBERT BENTIVEGNA, M.D., physician, Green Haven, Corrections Officers N. DAPCEVIC, R. CABRAL, A. ALBAN, B. STURTEVENT, J. MARKWICK, B. HESS, M. VENNERO, and JOHN and JANE DOES 1-20, all Individual Defendants in their individual and official capacities,

      Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/5/2018

No. 16-cv-3985 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff William Constant commenced this action against Defendants Anthony J. Annucci, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), Albert Prack, Director of Special Housing and Inmate Disciplinary Programs for DOCCS, William Lee, Superintendent of the Green Haven Correctional Facility ("Green Haven"), Frederick Bernstein, M.D., Facility Health Services Director for Green Haven, Robert Bentivegna, M.D., a physician at Green Haven, and Corrections Officers N. Dapcevic, R. Cabral, A. Alban, B. Sturtevent, J. Markwick, B. Hess, M. Vennero, and John and Jane Does 1–20 in their individual and official capacities. Plaintiff asserts five claims pursuant to 42 U.S.C. §§

1

1983 and 1985(3), alleging that Defendants: (1) deprived him of the right to be free from excessive force in violation of the Eighth Amendment; (2) acted with deliberate indifference to the serious risk of violence against Plaintiff in violation of the Eighth Amendment; (3) acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; (4) deprived Plaintiff of his due process rights under the Fourteenth Amendment by denying him a fair and impartial disciplinary hearing; and (5) deprived Plaintiff of his due process rights under the Fourteenth Amendment by subjecting him to atypical and substantial hardship during his one year sentence in the Special Housing Unit. Before the Court are Defendants William Lee and Albert Prack's Partial Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

This case stems from a grisly incident at the Green Haven Correctional facility ("Green Haven")—a maximum security facility run by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Compl. ¶ 11, ECF No. 1.) On May 27, 2013, Plaintiff, who was incarcerated at Green Haven, was playing cards with another inmate at one of the facility's yards (*Id.*) when, without provocation, another inmate by the name of William Reyes slashed Plaintiff repeatedly with a razor-like object on the head, face, and ear. After slashing Plaintiff, Reyes began running towards an area where various corrections officers stood. Plaintiff, who began bleeding profusely, ran after Reyes. (*Id.* ¶¶ 12–13.) When both Plaintiff and Reyes approached the area where the officers stood, the officers backed away, leaving Plaintiff vulnerable to another attack. (*Id.* ¶ 14.)

Reyes attacked Plaintiff once again. (*Id.* ¶¶ 16–17.) This time they both fell to the ground, with Plaintiff on top of Reyes, at which point one of the Correction Officers "brutally beat plaintiff twice in the side of the head with his baton." (*Id.* ¶ 17.)[1] Correction Officers then took Plaintiff and Reyes to the facility's medical clinic where the clinic staff determined that Plaintiff suffered serious injuries and required emergency hospital treatment. (*Id.* ¶¶ 20–21.) Plaintiff was taken to St. Francis Hospital where he received more than sixty-five stitches to close the wounds to his face, head, and ear. (*Id.* ¶¶ 21–22.) Plaintiff was later informed that he sustained brain injury to the side of his head where Officer Dapcevic had struck him twice with his baton. (*Id.* ¶ 22.)

Upon Plaintiff's release from the hospital, one of the Defendants served him with a "Tier III disciplinary ticket." (*Id.* ¶ 27.) Plaintiff was then sent to the Special Housing Unit ("SHU"), where he awaited resolution of his disciplinary hearing over the course of two months. (*Id.* ¶¶ 27–28.) Meanwhile, his purported attacker, Reyes, who was not charged with slashing Plaintiff, returned to the general population. (*Id.* ¶ 29.) Several inmates were set to testify on Plaintiff's behalf at his disciplinary proceeding, however, they refused to testify soon thereafter, "fearing retribution." (*Id.*) Once the disciplinary proceeding began, the hearing officer denied Plaintiff's requests to call several witnesses on his behalf. (*Id.* ¶ 30.) Further, although the hearing officer recorded each day's proceedings, the hearing officer did not record the day Officer Vennero, an eyewitness from the yard, testified, or the day Plaintiff argued his request for inmate witnesses. (*Id.* ¶ 31.) The hearing officer found Plaintiff guilty on "all charges" and sentenced him to one year's confinement in the SHU along with other "deprivations." (*Id.* ¶ 32.) Plaintiff appealed the

---

[1] Plaintiff notes that the facility's reports identify Officer Dapcevic as the officer who struck Plaintiff with his baton. (Compl. ¶ 17.)

findings and his sentence, which Defendant Albert Prack, Director of Special Housing and Inmate Disciplinary programs for DOCCS, upheld. (*Id.* ¶ 33.)

While in the SHU, Plaintiff suffered "numerous physical and emotional hardships." (*Id.* ¶ 34.) He frequently suffered from migraines, dizziness, muscle spasms, nausea, impaired vision, and hearing loss (*Id.*) as well as "excruciating pain" from headaches including migraines. (*Id.* ¶ 38.) Plaintiff made repeated requests for medical assistance, yet he did not receive any medical treatment to alleviate his severe pain or debilitating symptoms. (*Id.* ¶ 34, 39.) Further, Plaintiff often found parts of his meal missing or that someone had tampered with the food. (*Id.* ¶ 35.) Plaintiff lost significant weight as a result. (*Id.*)

Plaintiff was also subjected to smoke inhalation from a fire set by an inmate in his cell block. This caused lung problems and difficulty breathing. Plaintiff again requested medical treatment but received none. (*Id.* ¶ 36.) Plaintiff further asserts that Defendants left urine and feces in the hallway outside of Plaintiff's cell without cleaning it up for extended periods of time. Plaintiff, as a result, ate his meals in close proximity to the urine and feces. (*Id.* ¶ 37.)

Plaintiff alleges that he continues to suffer from physical injuries, severe pain from those injuries, and emotional distress. (*Id.* ¶ 40.)

## STANDARD ON MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but

the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

Plaintiff brings two claims against Defendants Lee and Prack in their individual capacity pursuant to 42 U.S.C. § 1983.[2] First, Plaintiff alleges that Defendants Lee and Prack violated his due process rights under the Fourteenth Amendment to the United States Constitution by subjecting him to atypical and substantial hardship during his one year sentence in the SHU. (Compl. ¶¶ 69–76.) Second, Plaintiff also alleges that Defendant Prack violated his due process rights under the Fourteenth Amendment by denying him a fair and impartial disciplinary hearing. (Compl. ¶¶ 61–68.) Defendants argue that both of these claims should be dismissed because Defendants were not personally involved in the purported constitutional violations under § 1983 and they are both entitled to qualified immunity.

### 42 U.S.C. § 1983 and Personal Involvement

To state a claim under 42 U.S.C. § 1983, Plaintiff "must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *3 (S.D.N.Y. Sept. 19, 2017) (citing

---

[2] In a letter dated November 16, 2016, Plaintiff withdrew his claims against all Defendants in their official capacities as well as his claims against Defendant Annucci. (Letter from Plaintiff's Counsel to Judge Román (Nov. 16, 2016), ECF No. 27.)

*Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011)). "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (quotations and citation omitted). Prison disciplinary proceedings implicate a liberty interest when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

A central component of a § 1983 claim is Defendant's personal involvement in the alleged constitutional violation. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation"). Personal capacity suits, such as this one, "seek to impose individual liability upon a government officer for actions taken under color of state law." *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *6 (S.D.N.Y. Feb. 13, 2018) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Where, as here, the Defendants occupied supervisory roles, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). The personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

6

failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

### Plaintiff's Claim against Defendants Lee and Prack

Plaintiff's Fifth Cause of Action alleges that Defendants Lee and Prack violated his due process rights under the Fourteenth Amendment to the United States Constitution by subjecting him to atypical and substantial hardship during his one year sentence in the SHU. (Compl. ¶¶ 69–76.) Defendant argues that Plaintiff fails to allege any conduct on behalf of Defendants Lee and Prack that supports a theory of direct liability for a constitutional violation. (Def. Prack and Lee's Mem. of Law in Supp. of their Partial Mot. to Dismiss ("Def. Mot.") 4, ECF No. 33.) The Court agrees.

In this case, Plaintiff fails to explain how Defendants Lee and Prack were involved in the alleged constitutional deprivations he suffered while in the SHU. The sole allegation with respect to Defendants Lee and Prack concerning the SHU is that they subjected him to confinement which imposed "an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life . . ." (Compl. ¶ 74.) It is insufficient for purposes of § 1983 that Defendants merely occupied supervisory roles at Green Haven Correctional Facility. Defendants must have been personally involved in the alleged constitutional violations. *See Marshall v. Annucci*, No. 16-cv-8622 (NSR), 2018 WL 1449522, at *10 (S.D.N.Y. March 22, 2018) (finding

---

[3] This Court has previously acknowledged that because Courts in this Circuit are divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under §1983 following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the most prudent approach is to conclude that in the absence of Second Circuit precedent suggesting otherwise, all five categories under *Colon* are still valid. *See e.g.*, *Matteo*, 2017 WL 4217142, at *4–5; *Corbett*, 2018 WL 919832, at *6 n.5.

supervisory Defendant was personally involved in alleged constitutional violation concerning Plaintiff's mental illness treatment where Defendant supervised Plaintiff's treatment and oversaw all treatment provided to prisoners in the correctional facility).Plaintiff's current allegation merely states, in conclusory terms, that Defendants Lee and Prack subjected Plaintiff to the conditions complained of. [4] The present claim, in the absence of supporting factual allegations, insufficiently ties the Defendants to the constitutional violations at issue. Thus, Defendant's Fifth Cause of Action against Defendants Lee and Prack is dismissed, without prejudice.[5]

Defendants also assert that they are entitled to qualified immunity because Plaintiff "fails to plead that any of his constitutionally protected rights were violated by Defendants Lee or Prack." (Def. Mot. 4, 8.) Plaintiff argues that Defendants Lee and Prack are not entitled to qualified immunity because the Complaint adequately pleaded that the Defendants violated his due process rights. (Pl. Mem. of Law in Opp. to Def. Prack and Lee's Partial Mot. to Dismiss ("Pl. Opp.") 9, ECF No. 31.)

"The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Consequently, "qualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S.

---

[4] Plaintiff also asserts that he "repeatedly wrote letters and grievances to Superintendent Lee to complain of the hardships he suffered while in solitary confinement." (Pl. Mem. of Law in Opp. to Def. Prack and Lee's Partial Mot. to Dismiss ("Pl. Opp.") 5, ECF No. 31.) Plaintiff made this assertion for the first time in his Opposition and is, therefore, not properly before this Court. *See e.g.*, *Sobek v. Quattrochi*, No. 03 Civ. 10219(RWS), 2004 WL 2809989, at *6 (S.D.N.Y. Dec. 8, 2004) ("Since such allegation are not stated in the complaint, they cannot be considered in connection with this motion, which is addressed solely to the sufficiency of the complaint.").
[5] While Defendants argue that Plaintiff abandoned this claim as it relates to Defendant Prack (Def. Prack and Lee's Reply Mem. of Law in Further Supp. of Mot. to Dismiss ("Def. Reply Mot.") 2, ECF No. 32) the Court need not reach this issue because Plaintiff has been granted leave to amend his pleading.

658, 664 (2012)). "A right is clearly established when its contours . . . are sufficiently clear that, at the time of the challenged conduct, every reasonable official would have understood that what he is doing violates that right." *Crawford v. Cuomo*, No. 16-CV-3466, 2018 WL 542578, at *1 (2d Cir. Jan 25, 2018) (quotations and citations omitted).

Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)). On a 12(b)(6) motion, however, the Defendants "must accept [a] more stringent standard." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The "facts supporting the defense [must] appear on the face of the complaint", *id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), and the motion must only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

Defendant's motion to dismiss Plaintiff's claims on the basis of qualified immunity is denied because the Complaint provides insufficient factual allegations to make such a determination at this juncture. It is improper for this court to determine at this stage whether Defendants Lee and Prack violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) ("we hold that it was improper for the district court to conclude, at this stage of the litigation, that it was reasonable for the officers to believe that probable cause existed. Accordingly, dismissing [Plaintiff's] complaint on qualified immunity grounds was inappropriate."); *Anilao v. Spota*, 774 F. Supp. 2d 457, 493 (E.D.N.Y. 2011) ("In sum, while the Court again recognizes that the qualified immunity issue should be decided at the earliest

9

juncture where possible, the County defendants' motion to dismiss plaintiffs' claims on the basis of qualified immunity is denied, given the [insufficient] allegations in the complaint"); *Caidor v. M&T Bank*, 2006 WL 839547, at *13 (N.D.N.Y. March 27, 2006) ("at this juncture, the complaint provides insufficient facts to make a determination regarding [whether Defendants violation a clearly established right]. Therefore, the Court concludes that Defendants [] are not entitled to qualified immunity at this stage in the proceedings."). In this case, Plaintiff only asserts that Defendants Lee and Prack subjected him to atypical and significant hardship and does not plead, with particularity, the actions Defendants took with regard to the alleged constitutional violations. The dearth of factual allegations certainly warrants a finding that Plaintiff failed to plead sufficient facts to show personal involvement under § 1983. The Complaint's pleading deficiency, however, significantly attenuates the Court's qualified immunity analysis. Therefore, the Defendants' motion to dismiss this claim on the basis of qualified immunity is denied at this stage.

## Plaintiff's Claim against Defendant Prack

Plaintiff's Fourth Cause of Action asserts that Defendant Prack violated his due process rights under the Fourteenth Amendment by affirming the hearing officer's determination and sentence despite the purported due process violations. (Compl. ¶¶ 61–68.) Defendant Prack argues that this claim should be dismissed because a supervisor's review and affirmance of an appeal from a disciplinary hearing fails to establish personal involvement in the alleged denial of an inmate's due process rights. (Def. Mot. 5.) Plaintiff asks this Court to find that affirming a disciplinary hearing is sufficient to establish personal involvement for supervisory officials. (Pl. Opp. 6–7.)

Plaintiff is correct in indicating that it is unclear "whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2017 WL 365493, at *8 (S.D.N.Y. Jan. 24, 2017). The Second Circuit has suggested on at least two occasions that an appeal officer may be liable for failing to correct procedural due process errors in the underlying hearing. *See Wright v. Smith*, 21 F.3d 496, 502 (2d Cir. 1994) (finding that Defendant—who reviewed and affirmed a hearing where Plaintiff was denied notice of the hearing and its outcome, an impartial hearing officer, the right to be present, and the right to respond to the evidence against him—was a supervisory official who after learning of the violation through a report or appeal failed to remedy a wrong and, therefore, "cannot escape liability by denying personal involvement); *Williams v. Smith*, 781 F.2d 319, 325 (2d Cir. 1986) (finding an issue of material fact concerning superintendent's personal involvement in violating inmate's civil rights by affirming result of disciplinary hearing at which inmate was purportedly deprived of due process by not being allowed to call witnesses). District Courts reviewing those cases, however, "have determined that the circumstances were factually unique enough to leave open the question of whether an appeal officer may be held liable merely for the failure to reverse the outcome of an allegedly unconstitutional hearing." *Lebron*, 2017 WL 365493, at *8.

An appeal officer may be held liable for failure to correct a procedural due process error below. *Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. March 31, 2018). First, given *Colon*'s continued vitality, an appeal officer's review of a purportedly unconstitutional hearing falls squarely within *Colon*'s second prong. *Delgado v. Bezio*, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding the post-*Iqbal* landscape does not preclude liability where "supervisory personnel affirmed a decision that they knew to have been imposed

in violation of Plaintiff s due process rights, thus continuing a deprivation of liberty without due process of law"); *Booker*, 2018 WL 1614346, at *11 (finding that a Defendant was personally involved in the underlying constitutional violation under the second *Colon* factor when Defendant reviewed and affirmed an inmate's appeal of his placement in administrative segregation without due process of the law); *C.f. Corbett*, 2018 WL 919832, at *7 (holding that a supervisor who reviews and ultimately denies a grievance adequately establishes personal involvement in the constitutional violation underlying the grievance under the second *Colon* factor). Second, despite varying limitations that district courts have placed on *Colon*, and given the fact that hearing officers, generally, may be sued for violating an inmate's procedural due process rights, "[t]here is no principled reason why the appeal officer, who has access to the same information as the hearing officer and is empowered to correct errors of the hearing officer, should not be held to the same standards of liability as the hearing officer, or why it should offend justice to so hold." *Lebron*, 2017 WL 365493, at *9. Consequently, here, where Plaintiff pleads that a Defendant appeal officer affirmed the underlying sentence despite purported constitutional violations, Defendant's "actions fall squarely within the second Colon factor—[because] after he learned, via an appeal, of an alleged violation of plaintiff's rights, he not only failed to remedy the wrong, but allowed it to continue." *Thomas v. Calero*, 824 F. Supp. 2d 488, 509–10 (S.D.N.Y. 2011).

Nonetheless, Defendant Prack is entitled to qualified immunity. As previously stated, "qualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi*, 764 F.3d at 230. "A right is clearly established when its contours are sufficiently clear that at the time of the challenged conduct, every reasonable official would have understood that

what we was doing violates that right." *Crawford*, 2018 WL 542578, at *1. Defendant is entitled to qualified immunity because, given the uncertainty within the Circuit, it cannot be said that "every reasonable official would have understood that" affirming a disciplinary hearing containing procedural due process violations would violate an inmate's constitutional rights. *Lebron*, 2017 WL 365493, at *9; *Booker*, 2018 WL 1614346, at *12. Accordingly, Plaintiff's Fourth Cause of Action against Defendant Prack is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. The Court grants Plaintiff leave to amend the Complaint's Fifth Cause of Action in conformance with this opinion. The Clerk of Court is respectfully requested to terminate Defendant Commissioner Annucci from this case in accordance Plaintiff's letter dated November 16, 2016. (ECF No. 27.)

Plaintiff is directed to file an Amended Complaint in conformance with the above on or before April 26, 2018. Failure to timely file an Amended Complaint will result in the dismissal of the Fifth Cause of Action. The remaining Defendants shall answer the Amended Complaint or seek a pre-motion conference on any potential motion to dismiss by May 17, 2018.

An in-person Initial Pre-trial Conference is scheduled for June 1, 2018, at 11:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order, submit it to the Court, and bring it to the conference.

Dated: April 5, 2018
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge