UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

WILLIAM CONSTANT,

                          Plaintiff,

      -against-

ALBERT PRACK, Director of Special Housing and
Inmate Disciplinary Programs, DOCCS, WILLIAM
LEE, Superintendent of Green Haven Correctional
Facility ("Green Haven"), FREDERICK
BERNSTEIN, M.D., Facility Health Services
Director, Green Haven, ROBERT BENTIVEGNA,
M.D., physician, Green Haven, Corrections Officers
N. DAPCEVIC, R. CABRAL, A. ALBAN, B.
STURTEVENT, J. MARKWICK, B. HESS, M.
VENNERO, and JOHN and JANE DOES 1-20, all
Individual Defendants in their individual capacities,

                          Defendants.

------------------------------------------------------------------x

**AMENDED
COMPLAINT**

Docket No. 16 Civ. 3985

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff WILLIAM CONSTANT seeks relief

for defendants' violation of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), and the Eighth

and Fourteenth Amendments to the United States Constitution.  The claims arise from a May 27,

2013 incident in which, among other things, defendants failed to protect plaintiff from a brutal

attack by another inmate at Green Haven Correctional Facility, applied unreasonable and

unnecessary force to plaintiff, were deliberately indifferent to plaintiff's serious medical needs,

violated his due process rights during his disciplinary hearing, and deprived  him of a liberty

interest by subjecting him to atypical and significant hardship during his one-year sentence in

solitary confinement.   Plaintiff seeks compensatory and punitive damages, declaratory and

injunctive relief, an award of costs and attorney's fees, and such other and further relief as the court deems just and proper.

## JURISDICTION

2.       This action is brought pursuant to the Constitution of the United States, including its Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1985(3), and federal law.   Jurisdiction is conferred on this court by 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil rights.   28 U.S.C. § 1367 gives this Court jurisdiction to adjudicate the state law claims asserted herein.

## JURY TRIAL DEMANDED

3.       Plaintiff demands a trial by jury on each and every one of his claims.

## VENUE

4.       Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

Plaintiff

5.        Plaintiff WILLIAM CONSTANT is a citizen and resident of the United States.   At all times relevant herein, he was an incarcerated inmate in the custody of the New York State Department of Corrections and Community Services ("DOCCS").

Defendants

6.       Defendants ALBERT PRACK, Director of Special Housing and Inmate Disciplinary Programs for DOCCS; WILLIAM LEE, Superintendent, Green Haven Correctional Facility ("Green Haven"); FREDERICK BERNSTEIN, M.D., Facility Health Services Director,

Green Haven; ROBERT BENTIVEGNA, M.D. physician, Green Haven; Corrections Officers N. DAPCEVIC, R. CABRAL, A. ALBAN, B. STURTEVENT, J. MARKWICK, B. HESS, M. VENNERO, and JOHN and JANE DOES 1 – 20, all individual defendants in their individual capacities, are and/or were at all times relevant to the complaint duly appointed and acting officers, servants, employees and agents of DOCCS, an agency of the State of New York.

7.      JOHN and JANE DOES 1 – 20 represent defendants whose identity is currently unknown and who may have participated in whole or in part in the deprivations of plaintiff's civil liberties, constitutional and/or statutory rights as outlined herein.

8.      At all times relevant to this complaint, defendants acted, and/or continue to act, under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of the State of New York.

9.      Defendants acted, and/or continue to act, for and on behalf of, and with the power and authority vested in them by, the State of New York and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

10.     Defendants are and/or were at all times relevant to this complaint, duly appointed and acting supervisory officers, servants, employees and agents of the State of New York and/or DOCCS, an agency of the State of New York, responsible for the hiring, training, retention, supervision, discipline, and control of all DOCCS employees under their authority.

## STATEMENT OF FACTS

11.     On May 27, 2013, at approximately 7:45 p.m., plaintiff William Constant ("plaintiff") was playing cards with another inmate in the E & F yard at Green Haven, a maximum-

security facility run by DOCCS.  Suddenly, without provocation, William Reyes, an inmate, came up behind plaintiff and slashed him repeatedly on the head, face, and ear, with a razor-like object.

12.     Plaintiff, who was bleeding profusely from his head and face, saw Reyes run towards the area in front of the telephones, where Officers Dapcevic, Cabral, Alban, Sturtevent, Markwick, Hess, Vennero, and John and Jane Doe officers ("defendant officers") stood looking at plaintiff and Reyes.

13.     Plaintiff ran after Reyes and towards the officers.

14.     When plaintiff and Reyes approached the area where the officers stood, the officers backed away from them, leaving plaintiff vulnerable to another attack from Reyes.  None of the officers gave Reyes or plaintiff any orders or took any steps to prevent plaintiff from being attacked again by Reyes.

15.     As Reyes approached him, plaintiff, fearing that Reyes still wielded the razor, picked up a rock in self-defense.  Reyes came towards plaintiff and attacked him.

16.     Although there were several defendant officers in the yard, and two officers in the elevated guard tower, none of them took any steps to stop Reyes' attack.

17.     During the Reyes attack on plaintiff, plaintiff and Reyes fell to the ground with plaintiff on top of Reyes.  Suddenly, without any provocation from plaintiff, one of the officers brutally beat plaintiff twice in the side of the head with his baton, causing plaintiff severe pain, brain injury, and trauma.  The facility's reports identify Officer Dapcevic as the officer who struck plaintiff with his baton.

18.     Plaintiff, who continued bleeding severely from the deep lacerations to his face, head and ear, was in a state of extreme pain, shock, and confusion from the officer's brutal blows to his head.

4

19.     Upon information and belief, no officers struck Reyes or used any force on him.

20.     The defendant officers handcuffed plaintiff and Reyes and took them to the facility's medical clinic.

21.     Clinic staff determined plaintiff's serious injuries required emergency hospital treatment.  Prison staff immediately transported plaintiff by ambulance to St. Francis Hospital.

22.     At the hospital, plaintiff received more than sixty-five stitches to close the deep wounds to his head, face, and ear.  Hospital staff informed plaintiff he sustained a brain injury to the right side of the back of his head, where Officer Dapcevic struck him twice with his baton.

23.     At the time Reyes slashed plaintiff, the defendant officers congregated at the entranceway to the prison and were not stationed at their assigned posts in the yard.

24.     At the time Reyes slashed plaintiff, no surveillance cameras were employed in the yard to observe and prevent Reyes' violent actions.

25.     At the time Reyes slashed plaintiff, defendants did not require inmates, such as Reyes, moving from the prison to the E & F yard to pass through a metal detector, which would have detected the razor-like weapon he used to slash plaintiff.  Defendants only subjected some inmates to occasional random pat frisks before they entered the yard.

26.      At the time Reyes slashed plaintiff, defendants did not routinely require inmates to return razors distributed to them for shaving.

27.     Upon information and belief, Defendant Green Haven Superintendent William Lee either created, or knew or should have known about, Green Haven's policies, practices, customs, and/or procedures that led to Plaintiff's injuries, including, but not limited to correction officers failing to maintain assigned posts, the absence of surveillance cameras in the yard, the failure to require inmates moving from the prison into the yard to pass through a metal detector or submit to

a search, and the failure to routinely require inmates to return razors distributed to them for shaving.

28.     Upon information and belief, Defendant Green Haven Superintendent William Lee knew or should have known about violent incidents that occurred between inmates in the prison and yard prior to Plaintiff being attacked with a razor on May 27, 2013, but failed to put policies, practices, customs, and procedures in place to prevent such violent incidents and/or failed to change existing deficient policies, practices, customs, and procedures that led to such violent incidents.

29.     On June 14, 2013, Plaintiff submitted a grievance complaining:

 a.  Officers present for the May 27, 2013 incident were deliberately indifferent and grossly negligent to his safety and security by failing to protect him from Reyes' violent attack and subjecting him to potentially deadly force by attacking him physically and striking him in the head with a baton twice; and

 b.  Of inadequate security measures which failed to capture video and audio footage of the prison compound and allowed inmates to (i) enter the E &F yard without going through metal detectors and (ii) retain possession of razors issued by prison officials.

30.     Upon information and belief, Defendant Green Haven Superintendent Lee knew of Plaintiff's grievance, but failed to take action to remedy the conditions.

31.     Upon plaintiff's release from the hospital, defendants served him with a Tier III disciplinary ticket and sent him to solitary confinement.

32.     The hearing officer took two months to complete plaintiff's disciplinary hearing.

33.     During the hearing, plaintiff's attacker, William Reyes, whom defendants never charged with slashing plaintiff, returned to general population.  Several inmates who originally agreed to testify for plaintiff changed their mind and refused to testify once Reyes returned to general population, fearing retribution.

34.     Upon information and belief, Defendant Green Haven Superintendent Lee knew about and/or authorized Reyes to be released to the general population.

35.     During the hearing, the hearing officer denied plaintiff's requests to call several witnesses on his behalf.

36.     The hearing officer conducted the hearing over several days and recorded each day's proceedings on a separate audio cassette.  On one day, Officer Vennero, an eyewitness from the yard, testified and plaintiff argued his request for inmate witnesses.   The hearing officer failed to properly record that day on an audio cassette, and no record of that testimony or colloquy exists.

37.     Following the hearing, the hearing officer found plaintiff guilty on all charges and sentenced him to one year's confinement in the Special Housing Unit ("SHU"), and other deprivations.

38.     Plaintiff appealed from that sentence.  Defendant Albert Pack, Director of Special Housing and Inmate Disciplinary Programs for DOCCS in Albany, upheld the disciplinary hearing finding and plaintiff's excessive sentence.

39.     During the one year plaintiff was confined to SHU, he suffered numerous physical and emotional hardships.  Plaintiff suffered excruciating pain due to migraine and other types of headaches on a daily basis.  He suffered from dizziness, muscle spasms, nausea, impaired vision, and hearing loss.  Despite repeated requests, he did not receive medical treatment to alleviate his

severe pain or other debilitating symptoms.  Defendant Dr. Bentivegna admitted to plaintiff he would have treated him differently if he were not in SHU.

40.     During plaintiff's year in solitary confinement, defendants subjected him to woefully inadequate food.  When he received meals in his cell, he often found parts of the meal missing.  On some occasions, he found that someone had tampered with the food.  As a result of inadequate food, plaintiff lost a significant amount of weight.

41.     Once during his year in solitary confinement, defendants subjected plaintiff to smoke inhalation from a fire set by an inmate in his cell block.  As a result, plaintiff suffered lung problems and difficulty breathing.  Despite plaintiff's repeated requests for medical treatment, he received none.

42.     During plaintiff's year in solitary confinement, defendants left urine and feces in the hallway outside his cell without cleaning it up for extended periods.  Plaintiff was forced to eat his meals in close proximity to the urine and feces.

43.     As a result of the attack on him by Reyes and then Officer Dapcevic, plaintiff suffered excruciating pain from repeated migraine headaches and other headaches, dizziness, nausea, muscle spasms, impaired vision and hearing loss.

44.     Although plaintiff repeatedly requested treatment for his severe pain, Dr. Bernstein, Dr. Bentivegna and John and Jane Doe physicians and physician's assistants denied him prompt medical treatment to alleviate the pain.

45.     Plaintiff, his wife, and his attorney repeatedly advised Defendant Green Haven Superintendent Lee and his subordinates, through grievances, appeals, letters, and verbally, about the hardships he suffered while in solitary confinement and his grave health and safety concerns.

46.     Plaintiff's complaints to Defendant Green Haven Superintendent Lee and his staff included, but were not limited to, defendants' failure to provide medical treatment, failure to provide adequate food and food tampering by staff, failure to provide treatment for smoke inhalation, and the failure to clean up urine and feces outside Plaintiff's cell for extended periods of time.

47.     Defendant Green Haven Superintendent Lee knew about defendants' failure to provide Plaintiff medical treatment, failure to provide Plaintiff adequate food and food tampering by staff, failure to provide Plaintiff treatment for smoke inhalation, and the failure to clean up urine and feces located outside of Plaintiff's cell for extended periods of time, but failed to take any action to remedy such conditions.

48.     As a result of all defendants' actions, plaintiff suffered and continues to suffer from physical injuries, severe pain from those physical injuries, and emotional distress.

49.     Plaintiff complied with the requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), by fully exhausting the grievance process as to each allegation in the complaint.

## FIRST CLAIM

### DEFENDANTS DEPRIVED PLAINTIFF OF THE RIGHT TO BE FREE FROM EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

50.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

51.     By their actions, defendant Officer Dapcevic and/or other defendant officers subjected plaintiff to potentially deadly physical force by brutally attacking him physically,

including by striking him on the head twice with a baton, without provocation from plaintiff and without any justification whatsoever.

52.     As a result of defendants' actions, plaintiff suffered and continues to suffer serious physical and emotional injuries.

53.     Defendants' actions violated plaintiff's Eighth Amendment right to be free from excessive force.

54.     42 U.S.C. § 1983 enables plaintiff to sue for such violation.

## <u>SECOND CLAIM</u>

## DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO THE SERIOUS RISK OF VIOLENCE AGAINST PLAINTIFF IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

55.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

56.     Green Haven policies, practices, customs, and procedures permitted inmates to enter the E & F yard without first passing through a metal detector or otherwise submitting to a search.

57.     Green Haven policies, practices, customs, and procedures permitted inmates to remain in possession of razors issued by prison officials.

58.     Green Haven policies, practices, customs, and procedures failed to provide for video surveillance of the E & F yard where Plaintiff was attacked.

59.     Green Haven policies, practices, customs, and procedures failed to require correction officers to maintain their assigned posts.

60.     Upon information and belief, Defendant Green Haven Superintendent Lee knew or should have known about violent incidents that occurred between inmates in the prison and yard prior to Plaintiff being attacked on May 27, 2013.

61.     Upon information and belief, Defendant Green Haven Superintendent Lee created or knew or should have known about the above policies, practices, customs, and procedures that resulted in such violent incidents, including Plaintiff being attacked with a razor in the yard by another inmate, but failed to put policies, practices, or customs in place to prevent such violent incidents and/or failed to change existing deficient policies, practices, customs, or procedures that led to such violent incidents.

62.     Defendant officers failed to protect plaintiff from being attacked again by inmate Reyes.

63.     Defendant officers failed to prevent inmate Reyes from brutally slashing plaintiff because they failed to assume their assigned posts throughout the yard.

64.     Once the defendant officers observed plaintiff, who was bleeding profusely, coming towards them as Reyes approached plaintiff after already slashing plaintiff deeply multiple times, defendant officers were aware of a serious risk of harm to plaintiff. The officers disregarded the imminent risk of danger to plaintiff by stepping back from plaintiff and Reyes and allowing Reyes to continue to attack.

65.     Upon information and belief, Defendant Green Haven Superintendent Lee knew about and/or authorized Reyes to be released to general population shortly after his attack on plaintiff.

66.     The defendant officers' conduct constituted deliberate indifference to plaintiff's safety and health under the Eighth Amendment to the United States Constitution.

67. Upon information and belief, the defendant officers and Superintendent Lee were aware their failure to address the serious risks of violence would violate plaintiff's rights pursuant to the Eighth Amendment to the United States Constitution.

68. As a result of defendants' actions, plaintiff suffered and continues to suffer serious physical and emotional injuries.

69. 42 U.S.C. § 1983 enables plaintiff to sue for such violations

## THIRD CLAIM

## DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

70. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71. After being treated at St. Francis Hospital for the injuries plaintiff received from Reyes and from defendant Officers, plaintiff returned to Green Haven.

72. Upon his return to Green Haven, plaintiff suffered severe pain from migraine headaches and other headaches, dizziness, nausea, muscle spasms, impaired vision, and hearing loss.

73. Despite plaintiff's numerous requests for medical treatment, defendants Dr. Bernstein, Dr. Bentivegna, and Jane and John Doe physicians and physician's assistants sometimes denied plaintiff pain medication and sometimes gave plaintiff inadequate medication that did nothing to alleviate his severe pain and other symptoms. Defendants denied plaintiff's requests to see a neurologist or other providers for his serious head injury. They repeatedly denied plaintiff's requests for treatment for his other medical conditions.

12

74.     Plaintiff repeatedly complained to Defendant Green Haven Superintendent Lee about, inter alia, his need for medical treatment and defendants' failure to provide required medical treatment.

75.     Defendant Green Haven Superintendent Lee continuously failed to take any action to ensure Plaintiff received proper timely medical treatment.

76.     Defendants Superintendent Lee, Bernstein, Bentivegna, and the John and Jane Doe physicians and physician's assistants acted with deliberate indifference to plaintiff's serious medical needs despite their awareness of his conditions, in violation of the Eighth Amendment to the United States Constitution.

77.     Upon information and belief, defendants Superintendent Lee, Bernstein, Bentivegna, and the John and Jane Doe physicians and physician's assistants were aware their failure to address plaintiff's serious medical needs would violate plaintiff's rights pursuant to the Eighth Amendment to the United States Constitution.

78.     As a result of defendants' conduct, plaintiff suffered and continues to suffer serious physical and emotional injuries.

79.     42 U.S.C. § 1983 enables Plaintiff to sue for such violations.

## FOURTH CLAIM

**DEFENDANTS DEPRIVED PLAINTIFF OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DENYING HIM A FAIR AND IMPARTIAL DISCIPLINARY HEARING**

80.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

81.     The hearing officer took more than two months to complete plaintiff's Tier III disciplinary hearing in violation of New York State regulations.

13

82.     During that time, several of the inmate witnesses whom plaintiff requested to testify at the hearing, and who had initially agreed to testify, backed out of testifying because they feared retaliation from plaintiff's attacker, Reyes, after defendants released Reyes from solitary confinement during plaintiff's protracted disciplinary hearing.   The hearing officer failed to adequately ascertain the inmates' reasons for their refusal to testify.

83.     Plaintiff requested that several individuals testify, including inmates and corrections officers.   Plaintiff also requested that his hearing assistant be allowed to testify, as she had spoken to the inmate witnesses who subsequently refused to testify out of fear of retribution by Reyes.   The hearing officer denied these requests.

84.     The hearing officer recorded each day's proceedings on audio cassettes.   One entire day's proceeding did not properly record due to an error.   As a result, the hearing officer did not preserve any record of critical eyewitness testimony from Officer Vennero and evidentiary arguments were lost.

85.     Defendant Prack violated plaintiff's due process rights by upholding the hearing officer's determination and the excessive sentence on appeal despite the aforementioned due process violations.

86.     As a result of the defendants' conduct, plaintiff suffered serious physical and emotional injuries.

87.     42 U.S.C. § 1983 enables plaintiff to sue for such violations.

## FIFTH CLAIM

### DEFENDANTS DEPRIVED PLAINTIFF OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY SUBJECTING HIM TO ATYPICAL AND SUBSTANTIAL HARDSHIPS DURING HIS ONE YEAR IN SOLITARY CONFINEMENT

88.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.     During the one year plaintiff was confined in SHU, he suffered numerous physical and emotional hardships.  Plaintiff daily suffered excruciating pain due to migraine and other types of headaches.  He suffered from dizziness, muscle spasms, nausea, impaired vision, and hearing loss.  Despite repeated requests, he did not receive medical treatment.  Defendant Dr. Bentivegna admitted to plaintiff that he would treat him differently if he were not in SHU.

90.     During his one year in solitary confinement, defendants subjected plaintiff to inadequate food.  He received meals in his cell and found parts of the meal missing.  On other occasions, he found someone tampered with his food.  As a result of inadequate food, plaintiff lost a significant amount of weight.

91.     During his year in solitary confinement, defendants subjected plaintiff to smoke inhalation from a fire set by an inmate in his cell block.  As a result, plaintiff suffered lung problems and difficulty breathing.  Despite plaintiff's repeated requests for medical treatment, he received none.

92.     During the year, defendants allowed urine and feces from other inmates to remain in the hallway immediately outside plaintiff's cell for extended periods without cleaning it up.  Defendants forced plaintiff to eat his meals in close proximity to the urine and feces.

93.     Plaintiff repeatedly advised Defendant Green Haven Superintendent Lee and his subordinates, through grievances, appeals, letters, and verbally about, inter alia, defendants' failure to provide medical treatment, failure to provide adequate food and food tampering by staff, failure to provide treatment for smoke inhalation, and the failure to clean up urine and feces outside Plaintiff's cell for extended periods of time, but defendants failed to take any action to remedy such conditions.

94.     In allowing plaintiff to be subjected to these conditions during his one-year period of confinement, defendants Superintendent Lee, Albert Prack, Director of Special Housing and Inmate Disciplinary Programs for DOCCS, and John and Jane Doe defendants subjected plaintiff to confinement which imposed an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life and implicated plaintiff's liberty interests in violation of plaintiff's due process rights under the Fourteenth Amendment.

95.     Upon information and belief, defendants were aware their failure to address plaintiff's conditions of confinement during his one-year period in SHU would violate plaintiff's liberty interests and due process rights pursuant to the Fourteenth Amendment.

96.     As a result of defendants' conduct, plaintiff suffered serious physical and emotional injuries.

97.     42 U.S.C. § 1983 enables plaintiff to sue for such violations.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all of the Defendants:

1.     A judgment declaring that defendants have committed the violations of law alleged in this action;

2.      Damages to compensate plaintiff for the deprivation of constitutional and statutory rights caused by Defendants and to compensate him for his physical and emotional injuries;

3.      Punitive damages against all individual defendants in an amount to be proven at trial;

4.      The convening and empaneling of a jury to consider the merits of the claims herein;

5.      An order awarding disbursements, costs, interest, and attorneys' fees; and

6.      Such other and further relief as this court may deem appropriate, equitable, just and proper.

Dated: Carle Place, New York
       May 10, 2018

                              SOKOLOFF STERN, LLP
                              *Attorneys for Plaintiff William Constant*

                         By: _____
                              BRIAN S. SOKOLOFF
                              MARK A. RADI
                              179 Westbury Avenue
                              Carle Place, New York 11514
                              (516) 334-4500