UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WILLIAM CONSTANT,

                     Plaintiff,                            Docket No.
                                                   16 Civ. 3985 (NSR)

      -against-

ANTHONY J. ANNUCCI, et al.,

                     Defendants.
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


SOKOLOFF STERN LLP
*Attorneys for Plaintiff*
179 Westbury Ave
Carle Place, NY 11514
Phone: (516) 334-4500
File No.: 130065


Of Counsel:
  Mark A. Radi

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

   POINT I: PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY
       ALLEGES FAILURE TO PROTECT .............................................................. 6

     A.   SUBSTANTIAL RISK OF SERIOUS HARM .............................................. 6

     B.   DELIBERATE INDIFFERENCE .............................................................. 7

     C.   PERSONAL INVOLVEMENT .................................................................. 9

   POINT II: THE COURT SHOULD NOT GRANT DEFENDANT LEE QUALIFIED IMMUNITY .............. 11

   POINT III: PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES
       A DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIM ..................................... 13

     A.   DR. BERNSTEIN'S PERSONAL INVOLVEMENT ................................... 15

     B.   DR. BENTIVENGA'S PERSONAL INVOLVEMENT ............................... 15

     C.   SUPT. LEE'S PERSONAL INVOLVEMENT ........................................... 16

   POINT IV: PLAINTIFF PLED TWO SEPARATE DUE PROCESS CLAIMS ........................................ 17

CONCLUSION.................................................................................................................... 21

## TABLE OF AUTHORITIES

CASES

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ......................................................................................... 11

*Ashcroft v. al-Kidd,*
    536 U.S. 731, 743 (2011) (2011) ..................................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 5

*Beckford v. Portuondo,*
    151 F. Supp. 2d 204 (N.D.N.Y. 2001) ........................................................... 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 5

*Bentley v. Dennison,*
    852 F. Supp. 2d 379 (S.D.N.Y. 2012) .......................................................... 5, 9

*Bonilla v. Brancato*, No. 99 CIV. 10657 LTSJCF,
    2002 WL 31093614 (S.D.N.Y. Sept. 18, 2002) ............................................ 11

*Brown v. Chambers*, No. 92 Civ. 7622 (LAP),
    1995 WL 234681 & n. 2 (S.D.N.Y. Apr. 20, 1995) ........................................ 8

*Cartier v. Lussier,*
    955 F.2d 841 (2d Cir. 1992) ............................................................................ 11

*Chance v. Armstrong,*
    143 F.3d 698 (2d Cir. 1998) ...................................................................... 14, 15

*Colon v. Coughlin,*
    58 F.3d 865 (2d Cir.1995) ......................................................................... 15, 16

*Connecticut Indem. Co. v. 21st Century Transp. Co.*, 99 CV 7735 (ILG),
    2001 WL 868340 (E.D.N.Y. July 27, 2001) .................................................... 4

*Coronado v. Goord*, No. 99 Civ. 1674(RWS),
    2000 WL 1372834 (S.D.N.Y. Sept. 25, 2000) ................................................ 8

*Cuoco v. Moritsugu,*
    222 F.3d 99 (2d Cir. 2000) .............................................................................. 17

*Daniel v. T&M Prot. Res., Inc.*,
  992 F.Supp.2d 302 (S.D.N.Y. 2014) ........................................................ 5

*Davis v. Barrett*,
  576 F.3d 129 (2d Cir. 2009) ................................................................ 17

*Erickson v. Pardus*,
  551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ............................ 5

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................ 7, 13, 18

*George v. Burton*, No. 00-Civ-143 (NRB),
  2001 WL 12010 (S.D.N.Y. Jan. 4, 2001) .............................................. 7

*Gibson v. Brooks*,
  335 F. Supp. 2d 325 (D. Conn. 2004) ................................................ 12

*Graham v. Macy's Inc.*, No. 14–CV–3192,
  2015 WL 1413643 n. 1 (S.D.N.Y. Mar. 23, 2015) ................................ 5

*Hathaway v. Coughlin*,
  37 F.3d 63 (2d Cir. 1994) .................................................................. 16

*Hazelwood v. Monroe*, No. 95 Civ. 3648 (DC),
  1996 WL 312355 (S.D.N.Y. June 11, 1996) ........................................ 8

*Hobson v. Fisher*, No. 10 Civ. 5512 (SAS),
  2011 WL 891314 (S.D.N.Y. Mar. 14, 2011) ........................................ 5

*Hope v. Pelzer*,
  536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ........................ 12

*King v. Department of Corr.*, No. 95 Civ. 3057,
  1998 WL 67669 (S.D.N.Y.1998) ........................................................ 6

*Knowles v. New York City Dep't of Corrections*,
  904 F. Supp. 217 (S.D.N.Y. 1995) ...................................................... 6

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ................................................................ 5

*Lane v. Franks*,
  134 S. Ct. 2369 (2014) ...................................................................... 11

*LaReau v. MacDougall,*
   473 F.2d 974 (2d Cir.1972) ........................................................................... 20

*Liles v. Camden County Dep't of Corr.,*
   225 F.Supp.2d 450 (D.N.J. 2002) .................................................................... 8

*Manley v. Mazzuca*, No. 01 CIV. 5178 (BSJ),
   2004 WL 253314 (S.D.N.Y. Feb. 10, 2004) ..................................................... 20

*Mateo v. Fischer,*
   682 F.Supp.2d 423, (S.D.N.Y. 2010) ......................................................... 16, 20

*McGriff v. Coughlin,*
   640 F. Supp. 877 (S.D.N.Y. 1986) ................................................................... 8

*Morgan v. City of New York*, No. 1:12-CV-00282 ALC,
   2014 WL 3952917 (S.D.N.Y. Aug. 12, 2014) ............................................ 9, 10, 12

*Murchison v. Keane*, No. 94 Civ. 466 (CSH),
   1996 WL 363086 (S.D.N.Y. July 1, 1996) ..................................................... 7, 8

*Parris v. New York State Dep't Corr. Servs.,*
   947 F. Supp. 2d 354 (S.D.N.Y. 2013) .......................................................... 9, 11

*Randle v. Alexander,*
   960 F. Supp. 2d 457 (S.D.N.Y. 2013) ............................................................. 6

*Richardson v. Williams*, No. 15 CV 4117 (VB),
   2016 WL 5818608 (S.D.N.Y. Oct. 5, 2016) ..................................................... 11

*Salahuddin v. Goord,*
   467 F.3d 263 (2d Cir. 2006) ...................................................................... 13, 14

*Samuels v. Fischer,*
   168 F. Supp. 3d 625 (S.D.N.Y. 2016) .............................................................. 5

*Saxon v. Attica Med. Dep't,*
   468 F. Supp. 2d 480 (W.D.N.Y. 2007) ............................................................ 17

*Sharma v. D'Silva,*
   157 F. Supp. 3d 293 (S.D.N.Y. 2016) ............................................................. 15

*Stubbs v. Dudley,*
   849 F.2d 83 (2d Cir. 1988) ........................................................................... 10

*Walker v. Pataro*, No. 99CIV.4607 (GBD) (AJP),
    2002 WL 664040 (S.D.N.Y. Apr. 23, 2002) ............................................................................ 16

*Walker v. Schult*,
    717 F.3d 119 (2d Cir. 2013) ................................................................................ 18, 19, 20

*Warren v. Goord*,
    476 F. Supp. 2d 407 (S.D.N.Y. 2007) ...................................................................... 3, 6, 7, 8

*White v. Mitchell*, No. 99-CV-8519 (FB),
    2001 WL 64756 (E.D.N.Y. Jan. 18, 2001) ......................................................................... 17

*White v. Pauly*,
    137 S.Ct. 548 (2017) ................................................................................................. 12

*Williams v. Vincent*,
    508 F.2d 541 (2d Cir. 1974) ............................................................................ 10, 11, 14, 15

*Wilson v. Seiter*,
    501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) ............................................... 18

*Zimmerman v. Macomber*, No. 95 Civ. 0882 (DAB),
    2001 WL 946383 (S.D.N.Y. Aug. 21, 2001) ........................................................................ 6

## PRELIMINARY STATEMENT

Plaintiff William Constant, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), submits this memorandum of law in opposition to defendants' partial motion to dismiss.

Plaintiff adequately alleged Defendant William Lee, Superintendent of Green Haven Correctional Facility, was aware of the obvious and substantial risk of harm to Green Haven inmates of being slashed in the recreation yard. He was deliberately indifferent to this risk by maintaining policies that permitted instances of yard slashings to reoccur and failing to remedy the resulting violations. Moreover, Supt. Lee should not be entitled to qualified immunity because his actions violated plaintiff's clearly established constitutional rights. Plaintiff properly pled a failure to protect claim against Supt. Lee.

Plaintiff sufficiently alleged he was deprived medical care to treat serious injuries resulting from the attack on May 27, 2013. Dr. Berstein and Dr. Bentivegna were each involved in Plaintiff's inadequate treatment, with the latter admitting he would treat Plaintiff differently in a different setting. Their awareness of Plaintiff's medical conditions and failure to properly treat him, or sometimes treat him at all, constituted deliberate indifference and is sufficient to allege liability. Plaintiff also adequately alleged Supt. Lee was deliberately indifferent to Plaintiff's medical needs. Supt. Lee was aware that Plaintiff was not receiving adequate care and he received and responded to plaintiff's grievances concerning inadequate medical care. This deliberate indifference sufficiently alleges Supt. Lee's personal involvement.

Plaintiff also adequately pleads a due process claim separate and apart from the one the Court dismissed as against defendant Prack. Defendants' attempt to conflate the two due process claims should not subject the surviving claim to dismissal. The Court should deny defendants' motion in its entirety.

1

**STATEMENT OF FACTS**

On May 27, 2013, at approximately 7:45 p.m., Plaintiff William Constant was playing cards with another inmate in the E&F recreation yard at Green Haven Correctional Facility ("Green Haven") a maximum-security facility operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). (¶ 11.[1])  Inmate William Reyes suddenly came up behind Plaintiff and repeatedly slashed him on the head, face and ear with a razor-like object, causing Plaintiff to bleed profusely.  (¶¶ 11-12.)   A congregation of correction officers, including defendant Correction Officers Dapcevic, Cabral, Alban, Sturtevent, Markwick, Hess, Vennero and other unidentified officers (collectively, the "defendant officers") stood near the telephones, instead of at their assigned yard posts, watching Plaintiff and Reyes.  (¶¶ 12, 14, 23.) After the attack, Reyes ran towards the defendant officers, and Plaintiff ran after him.  (¶¶ 12-13.)  The defendant officers backed away from Plaintiff and his attacker as they approached, leaving Plaintiff vulnerable to another attack.  (¶ 14.)  None of the defendant officers, including officers standing in the yard and two officers in the guard tower above the yard, tried to stop Reyes' attack on Plaintiff; they did not issue any verbal orders, to Plaintiff or Reyes, nor did they take measures to prevent another attack.  (¶¶ 14, 16.)  Plaintiff, fearing that Reyes still wielded the weapon, picked up a rock in self-defense.  (¶ 15.)  Reyes attacked plaintiff.  (*Id.*)

During the attack, Plaintiff and Reyes fell to the ground, and defendant officer, Officer Depcevic, struck Plaintiff twice in the side of his head with his baton, causing Plaintiff severe pain, injury and trauma.  (¶ 17.)  No officer struck Reyes or otherwise applied force to him.  (¶ 19.)

Plaintiff was handcuffed and taken to the facility's medical center. (¶ 21.) There, it was determined his injuries required emergency treatment and he was immediately transported to St.

---

[1] All paragraph references in this format refer to plaintiff's Amended Complaint, filed May 10, 2018.

Francis Hospital, where he received over sixty-five stitches to close the deep wounds to his head, face and ear.  (¶¶ 21-22.)  Doctors informed Plaintiff he sustained an injury to the right side of the back of his head, where Officer Depcevic struck him with his baton.  (¶ 22.)

On June 14, 2013, Plaintiff filed a grievance complaining: (1) that the officers present in the yard on May 27, 2013 were deliberately indifferent and grossly negligent to his safety and security by failing to protect him from Reyes' attack and subjecting him to deadly force by physically attacking him and striking him in the head with a baton; and (2) of the facilities inadequate security measures which failed to capture video and/or audio footage of the recreation yard and allowed inmates to (a) enter the yard without submitting to metal detectors and (b) retain possession of razors issued by prison officials. (¶ 29.) Green Haven defendants, including Supt. Lee were aware of the general risk of slashings in the recreation yard in light of several lawsuits brought against the facility and its officials in the recent years prior. *See, e.g. Warren v. Goord*, 476 F. Supp. 2d 407, 412 n. 2 (S.D.N.Y. 2007) ("the fact that a former lawsuit was filed against Commissioner Goord and the former Green Haven Superintendent concerning the dangers of the exercise yard might itself be evidence that the defendants were aware of such dangers.")

Plaintiff received a Tier III disciplinary ticket and was sent to solitary confinement, upon his release from the hospital.  (¶ 31.) Reyes was never charged for attacking and slashing Plaintiff. (¶ 33.)   During his disciplinary hearing, which took over two months to complete, Plaintiff was denied the opportunity to call several witnesses on his behalf, and an entire day of testimony and colloquy was not preserved via audio recording.  (¶¶ 32, 33, 36.) Additionally, several witnesses that had previously agreed to testify, refused upon Reyes' return to general population. (¶ 33.)

The hearing officer found Plaintiff guilty on all charges and sentenced him to a year's confinement in the Special Housing Unit ("SHU").  (¶ 37.)  Plaintiff appealed that sentence, and Defendant Prack, Director of Special Housing and Inmate Discipline, upheld the disciplinary hearing finding and excessive sentence.  (¶ 38.)

Plaintiff suffered atypical and significant hardships during his one-year confinement in SHU, including excruciatingly painful migraine headaches, muscle spasms, dizziness, nausea, impaired vision and hearing loss due to his head injury inflicted by defendant officer, Officer Depcevic, and other hardships, including inadequate medical treatment, inadequate food and food tampering, significant weight loss, urine and feces being left on the floor immediately outside his cell for extensive periods, and a fire causing smoke inhalation.   (¶¶ 22, 39-44, 46.) Plaintiff, his wife and his attorney submitted numerous grievances, appeals, letters, and verbal complaints to Supt. Lee and others concerning the hardships and health concerns Plaintiff suffered. (¶¶ 45, 47.) Supt. Lee's knowledge of these grievances is based upon his responses thereto. On August 5, 2013, Supt. Lee responded to plaintiff's grievance, number 75341-13 concerning "Rec. Proper Medical Treatment," (Ex. A[2]); on December 12, 2013, Supt. Lee responded to plaintiff's grievances, numbers 76047-13 and 75903-13, concerning "Req. Retesting by Audiologist," and "Issues with Meals," (Ex. B; Ex. C); and on March 6, 2014, Supt. Lee responded to plaintiff's grievance, number 75960-13, concerning "Care Inadequate After Fire." (Ex. D.) On November 5, 2013, Supt. Lee referred plaintiff's letter grievance concerning the unsanitary conditions he was subjected to in the SHU, to DSS Burnett for action; on November 13, 2013, Supt. Lee referred the letter to the Inspector General's Office. (Ex. E; Ex.

---

[2] This Court may properly consider the Exhibits attached hereto, as Plaintiff's grievances are incorporated by reference in the Amended Complaint and Supt. Lee's responses thereto are integral to Plaintiff's claims of Supt. Lee's personal involvement. *See Connecticut Indem. Co. v. 21st Century Transp. Co.,* No. 99 CV 7735 (ILG), 2001 WL 868340, at *4 (E.D.N.Y. July 27, 2001) (considering purchase agreement as integral to complaint because it provided the basis for plaintiff's theory of defendant's liability.)

F.) Supt. Lee failed to remedy the conditions plaintiff complained of in the specified grievances, or any others. (¶ 47.)

## STANDARD OF REVIEW

To survive a defendant's motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 634 (S.D.N.Y. 2016). A complaint "does not need detailed factual allegations." *Id.* at 633. When ruling on a motion to dismiss, a judge must "accept as true all of the factual allegations contained in the complaint." *Id.* at 634 (*quoting Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)); *see also Graham v. Macy's Inc.*, No. 14–CV–3192, 2015 WL 1413643, at *1 n. 1 (S.D.N.Y. Mar. 23, 2015) ("[f]or the purpose of resolving the motion to dismiss, the court assumes all well-pled facts to be true.") In addition to the complaint, the Court's review may also include documents incorporated into the complaint by reference, documents integral to plaintiff's allegations, even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. *Hobson v. Fisher,* No. 10 Civ. 5512 (SAS), 2011 WL 891314, at *3 (S.D.N.Y. Mar. 14, 2011); *see also Bentley v. Dennison,* 852 F. Supp. 2d 379, 382 n. 5 (S.D.N.Y. 2012) (courts can take judicial notice of court documents on a motion to dismiss). To resolve a motion to dismiss, the court must "draw all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y. 2014) (*citing Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). The motion should not be granted where a plaintiff pleads enough facts to state a plausible claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

5

ARGUMENT

**POINT I: PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES FAILURE TO PROTECT**

It is well established that the Eighth Amendment imposes a duty to take reasonable measures to guarantee inmate safety upon prison officials. *Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007); *Randle v. Alexander,* 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013). This duty obligates prison officials to protect inmates from violence at the hands of one another. *See Warren*, 476 F. Supp. 2d at 410. To state a failure to protect claim under § 1983, a plaintiff need only demonstrate that: (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "prison officials acted with deliberate indifference to the safety of the inmate." *Id.* Plaintiff's Amended Complaint sufficiently alleges a failure to protect claim against defendant Supt. Lee.

**A.  Substantial Risk of Serious Harm**

Plaintiff's Amended Complaint sufficiently pleads the first prong of the inquiry. Plaintiff alleges being the victim of a violent attack that resulted in several wounds to his head, face, and ear, requiring over sixty-five stitches. (¶¶ 11, 22.) Allegations involving the attack and the manner in which it occurred, sufficiently demonstrate Plaintiff was subject to a substantial risk of serious harm. *Warren*, 476 F. Supp. 2d at 410; *see e.g., Knowles v. New York City Dep't of Corrections*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (sudden violent slashing attack by another inmate, which resulted in cut to face requiring sixty stitches, satisfied plaintiff's substantial risk requirement); *King v. Department of Corr.*, No. 95 Civ. 3057, 1998 WL 67669, at *5 (S.D.N.Y.1998) (inmate who received 13 stitches for cuts to the face, neck, and shoulder, due to attack by another inmate, fulfilled requirement); *Zimmerman v. Macomber*, No. 95 Civ. 0882 (DAB), 2001 WL 946383, at *4 (S.D.N.Y. Aug. 21, 2001) (inmate who had been repeatedly

stabbed by another inmate met substantial risk requirement); *see also George v. Burton,* No. 00-Civ-143 (NRB), 2001 WL 12010, at * 3 (S.D.N.Y. Jan. 4, 2001) ("the pervasive risk of harm requirement is met when prison guards simply stand by and permit an attack to proceed.") Defendants do not, and cannot contend the sufficiency of Plaintiff's allegations concerning the conditions under which he was incarcerated and the substantial risk of serious harm to which he was subjected.

### B. Deliberate Indifference

Plaintiff's Amended Complaint also sufficiently alleges defendant Supt. Lee exhibited deliberate indifference to his safety. The Supreme Court has held deliberate indifference can be demonstrated by showing either that prison officials failed to respond to a particularized threat to the plaintiff or by showing a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and circumstances suggest the defendant had been exposed to information about the risk. *Warren,* 476 F. Supp. 2d at 411 (*citing Farmer v. Brennan,* 511 U.S. 825, 842 (1994)). "[U]nder *Farmer*, deliberate indifference does not preclude a scheme that attributes constructive knowledge of an obvious risk to prison officials." *Id.* (*citing Murchison v. Keane,* No. 94 Civ. 466 (CSH), 1996 WL 363086, at *6 (S.D.N.Y. July 1, 1996)).

The plaintiff in *Warren*, like Plaintiff here, was an inmate housed at Green Haven. *Id.* at 409. Warren was suddenly slashed in the face while watching television in the "E/F" yard. Plaintiff alleged prison officials exhibited deliberate indifference by failing to act despite knowledge that violent acts were occurring in the prison yard. *Id.* at 409, 411. More specifically, he alleged the Commissioner of the New York State Department of Correctional Services and the then-Superintendent of Green Haven knew of assaults and stabbings occurring in the yard, that

an inmate had been killed in the yard in mid-2003 and that metal detectors would prevent such attacks from occurring. *Id.* at 411. The Court found plaintiff's allegations sufficiently pled deliberate indifference so as to withstand a motion to dismiss. *Id.; see also Liles v. Camden County Dep't of Corr.,* 225 F.Supp.2d 450, 464 (D.N.J. 2002) (the obvious risk of physical altercations resulting when urine splashed on inmates sleeping on cell floors could establish deliberate indifference); *Hazelwood v. Monroe*, No. 95 Civ. 3648 (DC), 1996 WL 312355, at *2 (S.D.N.Y. June 11, 1996) (official tolerance of contraband weapons could be used to demonstrate deliberate indifference based on knowledge of substantial safety risk); *Brown v. Chambers*, No. 92 Civ. 7622 (LAP), 1995 WL 234681, at *5 & n. 2 (S.D.N.Y. Apr. 20, 1995) (allegations of a widespread tolerance of contraband weapons may very well state a claim of deliberate indifference); *McGriff v. Coughlin*, 640 F. Supp. 877, 880 (S.D.N.Y. 1986) ("[a]t least one court has held that a tolerance of pervasive violence may constitute evidence of deliberate indifference if the level of violence reaches an extreme or exceeds the norms of similar institutions.")

In *Warren,* the defendants' contentions that Warren improperly relied upon allegations that prison guards knew of issues of prison safety in the most general sense were dismissed. The Court found Warren to have demonstrated prison officials were aware of a specific hazardous condition, the presence of contraband weapons in the prison yard, and did nothing to stop the resulting violence. 476 F. Supp. 2d at 412. Furthermore, the Court referred to *Coronado v. Goord,* No. 99 Civ. 1674(RWS), 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000) and held "the fact that a former lawsuit was filed against Commissioner Goord and the former Green Haven Superintendent concerning the dangers of the exercise yard might itself be evidence that the defendants were aware of such dangers." *Id.* at 412 n. 2.

Here, Plaintiff alleges defendant Supt. Lee had actual or constructive knowledge of prior instances of violence occurring between inmates in the E&F yard and nonetheless failed to institute policies to prevent such violent occurrences or to correct existing policies that resulted in such occurrences. (¶¶ 28, 60.) More specifically, Supt. Lee maintained policies under which: inmates were not subject to metal detectors before entering the E& F yard; correction officers failed to maintain their assigned posts; there were no surveillance cameras employed in the E&F yard; and inmates were not required to return prison-issued razors. (¶¶ 23-27.) Supt. Lee should have been aware of the obvious risks, if only because there are at least three recent federal lawsuits – *Warren, Coronado* and *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354 (S.D.N.Y. 2013), the last of which is relied upon in defendants' motion to dismiss– in which inmates were stabbed or slashed in the recreation yard and complained of the facility's lack of metal detectors.[3] The incidents were legally documented, evidencing obvious and substantial risks to Green Haven inmates in the E&F yard. As plaintiff alleges, Supt. Lee was or should have been aware of the prior instances, especially since he was named as a defendant in *Parris.* Nonetheless, Supt. Lee failed to remedy the obvious risks to inmate safety. His failure to do so suggests a tolerance of contraband weapons in the recreation yard and constitutes deliberate indifference. Drawing all inferences in Plaintiff's favor, the Court should find his allegations plausible so as to survive defendants' motion to dismiss.

### C.  Personal Involvement

Additionally, contrary to defendants' contention, Plaintiff's allegation that Supt. Lee maintained a policy allowing officers to abandon their posts sufficiently states a claim for supervisor liability. Defendants' reliance upon *Morgan v. City of New York*, No. 1:12-CV-00282

---

[3] The Court may properly take judicial notice of court documents. *Bentley*, 852 F. Supp. 2d at 382 n. 5.

ALC, 2014 WL 3952917, at *3 (S.D.N.Y. Aug. 12, 2014) is improper. For one, Plaintiff's attack cannot be completely characterized as a surprise; after observing Plaintiff bleeding profusely after being attacked by Reyes, defendant officers stepped back, allowing room for another attack. (¶14.) Reyes' second attack was no surprise and the defendant officers failed to intervene and prevent additional injury. *See Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974) (plaintiff may have sufficiently pled deliberate indifference had he alleged the officer, "having jumped back initially, stood by and let the attacker further injure [plaintiff]"); *Stubbs v. Dudley*, 849 F.2d 83, 86–87 (2d Cir. 1988) (finding deliberate indifference where correction officer had adequate time to assess the serious threat facing inmate and fair opportunity to protect him at no risk to himself.) Defendant officers never gave any verbal instructions to deescalate the situation, nor did they apply physical force to Reyes, the source of the immediate risk. (¶¶ 14, 19.)

*Morgan* is also distinguishable because there, the plaintiff did not allege any risk, either specifically to himself, or to the inmate population in general. Here, drawing all reasonable inferences in favor of Plaintiff requires a finding that defendant officers who abandoned their posts were aware of the obvious risk of stabbings in the yard, given the number of documented past occurrences. They were not only aware of a general risk of stabbing in the yard, but they also became aware of a specific risk to Plaintiff. Defendant officers disregarded each risk by abandoning their posts and stepping back and allowing Reyes to attack again.

Defendants also contend Plaintiff fails to allege a policy, practice, custom, or procedure that failed to require officers to maintain their assigned posts. They do not assert this argument with regard to the other policies and practices plaintiff alleged.  Even if plaintiff failed to allege a policy of failing to require officers to maintain their posts, the remaining policies, which are apparently undisputed – i.e.: (1) the absence of surveillance cameras in the yard; (2) failure to

10

require inmates to pass through a metal detector before entering the yard or submit to a search; and (3) failure to routinely require inmates to return prison issued razors –sufficiently allege a basis for Supt. Lee's liability. In any event, Plaintiff alleges prior instances of violence occurring in the yard resulted from the failure to change policy regarding officers' posts, and others. (¶ 28.) In other words, Plaintiff alleges the history of prior instances required Supt. Lee to remedy the issue of abandoned posts, and other policies resulting in yard slashings. *See Parris,* 947 F. Supp. 2d at 365. The instant action is also different from *Richardson v. Williams*, No. 15 CV 4117 (VB), 2016 WL 5818608, at *4 (S.D.N.Y. Oct. 5, 2016) because unlike the plaintiff there, Plaintiff plausibly alleges officers routinely abandoned their shifts, resulting in substantial risks of inmate harm.

### POINT II: THE COURT SHOULD NOT GRANT DEFENDANT LEE QUALIFIED IMMUNITY

The doctrine of qualified immunity does not protect those who are plainly incompetent or knowingly violate the law. *Ashcroft v. al-Kidd*, 536 U.S. 731, 743 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 740. (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). This does not suggest an official action is protected under the doctrine unless the specific act has been previously held unlawful. *Anderson,* 483 U.S. at 640. It merely provides that in light of the pre-existing law, the unlawfulness of the action must be apparent. (*Id.*) "The pertinent inquiry is how a reasonable official in the defendant's position would respond." *Bonilla v. Brancato*, No. 99 CIV. 10657 LTSJCF, 2002 WL 31093614, at *8 (S.D.N.Y. Sept. 18, 2002) (*citing Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir. 1992).

The Amended Complaint contains plausible allegations of Supt. Lee's personal involvement in violations of Plaintiff's clearly established Eighth Amendment right to be protected from violent assault. "An official cannot benefit from the doctrine of qualified immunity if he had 'fair warning' that his conduct deprived his victim of a constitutional right." *Gibson v. Brooks*, 335 F. Supp. 2d 325, 335 (D. Conn. 2004) (*citing Hope v. Pelzer,* 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Supt. Lee had notice that deliberate indifference to obvious, substantial risks of violent assault in the prison yard would constitute a violation of Plaintiff's rights and is thus not entitled to qualified immunity.

In spite of defendants' reference to *White v. Pauly,* 137 S.Ct. 548, 552 (2017), for the premise that the "clearly established law should not be defined at a high level of generality," defendants seek to avoid liability by overgeneralizing Supt. Lee's conduct. In other words, defendants again characterize the relevant conduct as simply "know[ing] that officers did not always maintain their posts." (Def. Memo of Law at p. 11.) Nonetheless, Plaintiff has also alleged Supt. Lee created or maintained policies including: (1) allowing inmates into the yard without being subject to a metal detector or search; (2) failing to implement cameras in the yard; and (3) not routinely requiring inmates to return prison issued razors. Each policy is alleged to have resulted in prior slashing incidents in the yard and illustrates Supt. Lee's personal involvement in the violations to Plaintiff's rights, as well as his deliberate indifference thereto.

 Moreover, defendants improperly rely upon *Morgan,* 2014 WL 3952917, at *4, to advance their position that allegations that defendant officers abandoned their posts fail to state a failure to protect claim. Plaintiff, unlike the plaintiff in *Morgan*, also alleges the defendant officers were aware of and deliberately indifferent to a known risk to inmate safety, so as to adequately plead failure to protect. (¶ 67.) Moreover, his claim is based upon more than an

allegation that officers customarily abandoned their posts. Since Plaintiff has sufficiently alleged deliberate indifference under a failure to protect theory, Supt. Lee is not entitled to qualified immunity.

### POINT III: PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES A DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIM

The Eighth Amendment requires prison officials to ensure that inmates receive adequate medical treatment. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer, 511 U.S. at 832, 844. Grave deprivations of care that deny the "minimal civilized measure of life's necessities" give rise to a constitutional violation when: (1) the plaintiff has actually been deprived of adequate medical care and (2) the charged official acted with a sufficiently culpable state of mind. Id. 279-80.

The former inquiry requires examination of how the offending conduct is inadequate and what harm, if any, the inadequacy has, or will likely, cause plaintiff. Id. at 280. If the offense is failure to treat plaintiff's medical condition, courts will examine whether the condition is sufficiently serious by analyzing relevant factors, such as whether a reasonable doctor would find the condition worthy of comment; whether it significantly affects the plaintiff's daily activities; and whether it causes chronic and substantial pain. Id. If the inadequacy is the treatment given, the inquiry is narrower and focuses on, for example, the challenged delays, instead of the underlying medical condition. Id.

The second prong does not require a knowing or purposeful infliction of harm; deliberate indifference to the inmate's health will suffice. Id. Deliberate indifference exists when an official is subjectively aware that his or her conduct will almost certainly result in harm to the inmate's health.  While a plaintiff's desire for different treatment than that received is not sufficient to establish deliberate indifference, physicians have been held deliberately indifferent where he or

she "consciously chooses 'an easier and less efficacious treatment plan.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998), (*citing Williams,* 508 F.2d at 544).

Defendants' reliance upon Salahuddin, 467 F.3d 263, and Chance, 143 F.3d 698, is improper. Application of either element demonstrates both that plaintiff was actually deprived of adequate medical care and that the charged officials exhibited deliberate indifference.

Regarding the first element, in Salahuddin plaintiff's allegations that he was in pain for five months sufficiently established he was deprived of adequate medical care. Salahuddin, 467 F.3d at 281. In Chance, plaintiff's complaints of "great pain" were sufficiently serious to give rise to an Eighth Amendment claim. *Chance,* 143 F.3d at 702. Here, Plaintiff has pled medical conditions of a nature that any reasonable medical professional would have deemed worthy of comment and understood to pose a substantial risk. More specifically, Plaintiff alleges brain injury, excruciating pain, migraine headaches and headaches, dizziness, muscle spasms, impaired vision and hearing loss, resulting from defendant Officer Dapcevic striking him in his head with a baton and inmate Reyes viciously attacking him with a razor-like weapon. (¶¶ 39, 43.) This occurred for at least a year, while Plaintiff was confined to SHU. (¶ 39.) Plaintiff's allegations of excruciating pain, continuing for at least one year and largely going untreated, sufficiently plead the first element, i.e. Plaintiff was actually deprived of adequate medical care.

Defendants' reliance upon *Salahuddin* and *Chance*, is likewise improper when regarding the second element. In *Salahuddin,* the court did not find deliberate indifference because there was direct evidence of the defendants' belief there was no substantial risk to plaintiff inmate resulting from postponing a liver biopsy. Here, there is no similar evidence. In *Chance,* the court found deliberate indifference where the official had an underlying motive in selecting his course of treatment. Drawing all reasonable inferences in Plaintiff's favor allows the Court to infer that

Dr. Bentivenga's admission constitutes an acknowledgement that Plaintiff's injuries warranted treatment of a different nature than that which he was receiving. (¶ 39.) Bentivenga's failure to administer the treatment he apparently thought Plaintiff's condition required, was motivated by Plaintiff's presence in SHU. Taking Plaintiff's allegations as true, Dr. Bentivegna chose a less efficacious treatment plan because Plaintiff was in the SHU and was thus deliberately indifferent to the substantial risks to Plaintiff's health. *See Williams*, 508 F.2d at 704.

### A.  Dr. Bernstein's Personal Involvement

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Sharma v. D'Silva*, 157 F. Supp. 3d 293, 304 (S.D.N.Y. 2016) (*quoting Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).

Dr. Bernstein was directly involved in Plaintiff's care; he was aware of Plaintiff's serious medical needs, yet failed to adequately address them. (¶¶ 73-77.) On occasion Dr. Bernstein denied Plaintiff medication for his injuries sustained on May 27, 2013, and on others he provided inadequate medications. (*Id.*) He participated directly in the inadequate medical treatment Plaintiff was subjected to, thus making him personally involved in the constitutional violation.

### B.  Dr. Bentivenga's Personal Involvement

Plaintiff also sufficiently pleads Dr. Bentivegna's personal involvement, so as to sustain an Eighth Amendment claim for inadequate medical treatment against him. Dr. Bentivenga's participation in Plaintiff's medical treatment, or lack thereof, and his deliberate indifference to

the substantial risks of harm to Plaintiff's health, evidenced by his employment of a less efficacious treatment plan, suffices to establish his personal involvement. See Point III, supra; *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (district court did not dismiss defendant in light of his personal involvement in plaintiff's medical care.)

### C.  Supt. Lee's Personal Involvement

Plaintiff sufficiently pleads Supt. Lee's personal involvement in defendants' unconstitutional indifference to his medical needs. Plaintiff repeatedly wrote letters and grievances to Supt. Lee to complain of the hardships he suffered while in solitary confinement, including the inadequacy of his medical treatment. (*See* ¶¶ 45-46.) Supt. Lee reviewed and provided detailed responses to at least three of Plaintiff's grievances concerning adequate medical treatment. (Ex. A; Ex. B; Ex. D.) *See Mateo v. Fischer,* 682 F.Supp.2d 423, 430-31, (S.D.N.Y. 2010) (*citing Walker v. Pataro,* No. 99CIV.4607 (GBD) (AJP), 2002 WL 664040, at *13 (S.D.N.Y. Apr. 23, 2002)) ("where a supervisory official reviews and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second Colon prong…."). Plaintiff also had conversations with Supt. Lee regarding the poor conditions in his cell. (¶¶ 45-46.) Supt. Lee failed to remedy the constitutional violations of which he was aware. (¶ 47.) Supt. Lee's discussions with Plaintiff and handling of Plaintiff's grievances regarding these potential constitutional violations should render him personally involved in the denial of adequate medical treatment.

Furthermore, defendants' reliance upon *Cuoco v. Moritsugu,* 222 F.3d 99, 111 (2d Cir. 2000) is improper. The *Cuoco* holding is inapplicable to the facts here. There the court found the defendant officials were not doctors and had no reason to challenge a medical diagnosis,

especially since they could not provide plaintiff with the requested estrogen, "no matter how attentive to her problems and symptoms they were." *Id.* The facts here are more similar to those in *Saxon v. Attica Med. Dep't,* 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007), where the court found the defendant superintendent personally involved because the plaintiff filed grievances informing of inadequate medical treatment. Plaintiff informed Supt. Lee that he was not receiving proper care for his injuries sustained on May 27, 2013 and Supt. Lee failed to ensure he was adequately treated. (*See* Ex. A; Ex. B.) *See also White v. Mitchell,* No. 99-CV-8519 (FB), 2001 WL 64756, at *3 (E.D.N.Y. Jan. 18, 2001) (personal involvement sufficiently pled where plaintiff alleged superintendent received and denied a grievance providing that inmate's medical needs were being ignored and failed to take steps to provide for treatment.)

### POINT IV: PLAINTIFF PLED TWO SEPARATE DUE PROCESS CLAIMS[4]

Defendants improperly conflate Plaintiff's Fourth (¶¶ 80-87) and Fifth Claim (¶¶ 88-97) as redundant. In *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009), the Second Circuit distinguished between the plaintiff's claims stemming from the alleged misconduct of the hearing officer presiding over his disciplinary hearing and any potential claim arising directly from the conditions of his administrative confinement. Here, Plaintiff's Fourth Claim sought redress for deficiencies in his administrative hearing process, which led to a one-year SHU sentence. As such, the Fourth Claim is distinguishable from the Fifth.

Plaintiff's Fifth Claim seeks redress from the atypical and substantial hardships he incurred during his one-year in SHU confinement, not the imposition of the SHU sentence itself. (*See* ¶¶ 39-49; 88-97.) He alleges conditions including inadequate medical treatment, inadequate

---

[4]  Plaintiff acknowledges the Court dismissed one of his due process claims, i.e. Plaintiff Fourth Claim. However, Plaintiff's Fifth Claim is not redundant, as defendants contend.

and tampered-with food, being forced to eat and sleep in close proximity to urine and feces, and smoke inhalation. These are atypical and significant hardships in relation to the ordinary incidents of prison life, implicating a liberty interest. Plaintiff alleges Defendants failed to address or remedy these conditions, depriving him of any due process protection. On this basis, Plaintiff sufficiently alleges a due process claim concerning the conditions of his one-year SHU confinement.

To the extent this claim should be analyzed under the Eighth Amendment, Plaintiff has adequately pled a conditions of confinement claim. It is well settled the Constitution does not permit inhuman conditions and the treatment an inmate receives is subject to scrutiny under the Eighth Amendment. *Farmer,* 511 U.S. at 832. The Eighth Amendment requires prison officials to provide humane conditions of confinement, including ensuring inmates receive adequate food, clothing, shelter, medical care and safe and sanitary living conditions. *Id.* at 832-33 (citations omitted); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). There is however, no distinction between an Eighth Amendment claim alleging inadequate medical care and one alleging inadequate conditions of confinement. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326–27, 115 L. Ed. 2d 271 (1991). To state a conditions of confinement claim, an inmate must allege: "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind ..., such as deliberate indifference to inmate health or safety.'" *Walker*, 717 F.3d at 125 (citations omitted). On this basis, Plaintiff sufficiently pleads an Eighth Amendment conditions of confinement claim. *See* Points I, III, *supra*.

Plaintiff plausibly alleges conditions that deprived him of a minimal civilized measure of life's necessities, especially when taken together. More specifically, Plaintiff alleges defendant officers failed to intervene and protect him from a vicious attack; he received inadequate medical treatment for injuries sustained on May 27, 2013; he received inadequate and tampered-with food; he received no medical treatment in response to smoke inhalation; and instances where defendants failed to clean urine and feces in close proximity to where Plaintiff ate and slept, for extended time periods. (¶¶ 11-17; 39-42.)

As provided in Point IA, Plaintiff has sufficiently pled defendants' failure to intervene and/or protect was sufficiently serious. As provided in Point III, Plaintiff has sufficiently alleged defendants' failure to provide adequate treatment for injuries sustained on May 27, 2013 was a sufficiently serious deprivation. He also sufficiently alleges defendants' failure to provide adequate food, which led to significant weight loss, was a sufficiently serious deprivation. (¶ 40.) *See Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213, n. 11 (N.D.N.Y. 2001) (allegations that officers only provided one of three meals a day sufficient to defeat dismissal). Plaintiff's allegations regarding a deprivation of medical treatment following smoke inhalation adequately establishes a sufficiently serious deprivation because lung problems and difficulty breathing are conditions which a reasonable doctor would find worthy of comment and they significantly affected Plaintiff's daily activities. See Point III, supra. Likewise, Plaintiff pled a sufficiently serious deprivation via allegations defendants left urine and feces near where he ate and slept, for extended periods of time. *See Walker,* 717 F.3d at 127 (*citing LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972) ("[c]ausing a man to live, eat and perhaps sleep in close confines with [] human waste is too debasing and degrading to be permitted."))

Having reviewed and responded to grievances concerning deprivations of adequate medical treatment for injuries sustained on May 27, 2013 and smoke inhalation, (Ex. A; Ex. B; Ex. D), and having referred Plaintiff's grievances regarding unsanitary conditions for investigation, (Ex. E; Ex. F), Supt. Lee was sufficiently involved. *See Mateo,* 682 F.Supp.2d at 430 (directing someone else to investigate a plaintiff's claims constitutes personal involvement) (*citing Manley v. Mazzuca*, No. 01 CIV. 5178 (BSJ), 2004 WL 253314, at *3 (S.D.N.Y. Feb. 10, 2004)); s*ee also*, Point III.C., *supra.* Accordingly, Plaintiff sufficiently alleges an Eighth Amendment conditions of confinement claim.

**Supt. Lee's Personal Involvement**

Supt. Lee is personally involved in the ongoing constitutional violations Plaintiff suffered while in SHU confinement. His awareness of and deliberate indifference to the conditions Plaintiff underwent, without any due process protection, constitutes direct participation and makes him liable for these constitutional violations. *See* Point III.C., *supra.*

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss, together with such other and further relief as this Court deems just and proper.[5]

Dated: Carle Place, New York
        September 7, 2018

SOKOLOFF STERN LLP
*Attorneys for Plaintiff*

By:    Mark A. Radi
       Vernée Pelage
       179 Westbury Avenue
       Carle Place, New York 11514
       (516) 334-4500
       File No. 130065

---

[5] Plaintiff does not assert a § 1985 claim and hereby withdraws such claim to the extent it is referenced in the complaint.

21