UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM CONSTANT,

                Plaintiff,

   -against-

ALBERT PRACK, Director of Special Housing and
Inmate Disciplinary Programs, DOCCS, WILLIAM
LEE, Superintendent of Green Haven Correctional
Facility ("Green Haven"), FREDERICK
BERNSTEIN, M.D., Facility Health Services
Director, Green Haven, ROBERT BENTIVEGNA,
M.D., physician, Green Haven, Corrections Officers
N. DAPCEVIC, R. CABRAL, A. ALBAN, B.
STURTEVENT, J. MARKWICK, B. HESS, M.
VENNERO, and JOHN and JANE DOES 1-20, all
Individual Defendants in their individual capacities,

                Defendants.

No. 16-cv-3985 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff William Constant commenced this action against Defendants Albert Prack,

Director of Special Housing and Inmate Disciplinary Programs for the New York State Department

of Corrections and Community Supervision ("DOCCS"), William Lee, Superintendent of the

Green Haven Correctional Facility ("Green Haven"), Frederick Bernstein, M.D., Facility Health

Services Director for Green Haven, Robert Bentivegna, M.D., a physician at Green Haven,

Corrections Officers N. Dapcevic, R. Cabral, A. Alban, B. Sturtevent, J. Markwick, B. Hess, M.

Vennero, and John and Jane Does 1–20 (collectively, "Defendants") in their individual capacities.

(*See* Am. Compl. ("AC"), ECF No. 40.)  Plaintiff asserts five claims pursuant to 42 U.S.C. §§



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/2019

1

1983 and 1985(3),[1] alleging that Defendants: (1) deprived him of the right to be free from excessive force in violation of the Eighth Amendment; (2) acted with deliberate indifference to a serious risk of violence against Plaintiff, in violation of the Eighth Amendment; (3) acted with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment; (4) deprived Plaintiff of his due process rights under the Fourteenth Amendment by denying him a fair and impartial disciplinary hearing; and (5) deprived Plaintiff of his due process rights under the Fourteenth Amendment by subjecting him to atypical and substantial hardships during his one-year sentence in the Green Haven Special Housing Unit.

Before the Court is Defendants' Partial Motion to Dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (ECF No. 46.) For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are derived from the AC and the Exhibits affixed to Plaintiff's Attorney Declaration in Opposition to Defendants' Motion to Dismiss (the "Exhibits"). These facts are presumed to be true for the purposes of the Motion.

### A. Prison Yard Attack

On May 27, 2013, Plaintiff, an inmate at Green Haven, was playing cards with another inmate at one of Green Haven's facility yards. (AC ¶ 11.) Suddenly, without any provocation, an inmate by the name of William Reyes used a razor-like object to slash Plaintiff repeatedly on the head, face, and ear. (*Id.*) Following this sudden attack, Reyes ran towards an area where several

---

[1] Plaintiff has since withdrawn claims under § 1985 to the extent any appear in the AC. (*See* Pl. Memo. of Law in Opp. to Defs. Partial Mot. to Dismiss ("Pl. Opp.") 21 n.5, ECF No. 47.) Accordingly, the Court dismisses any claims to the extent they arise under § 1985.

corrections officers (the "Officers") were standing. (*Id.* ¶ 12.) Plaintiff—who was bleeding profusely—then followed him. (*Id.* ¶ 12-13.) As Plaintiff and Reyes approached the area, the Officers backed away and left Plaintiff vulnerable to further attacks by Reyes. (*Id.* ¶ 14.) The Officers did not take any action to prevent a further altercation between the two men. (*Id.*)

Reyes again attacked Plaintiff. (*Id.* ¶ 15.) Upon this attack, both men fell to the ground, with Plaintiff ending up on top of Reyes. (*Id.* ¶¶ 16-17.) As the two men altercated, one of the Officers—identified by the facility reports as Defendant Dapcevic—"brutally beat plaintiff twice in the side of the head with his baton." (*Id.* ¶ 17.) The Officers eventually handcuffed Plaintiff and Reyes and took them to Green Haven's medical clinic. (*Id.* ¶ 20.)

Upon a medical evaluation, clinic staff determined that Plaintiff had sustained serious injuries and required emergency hospital treatment. (*Id.* ¶ 21.) Accordingly, prison staff immediately transported Plaintiff to St. Francis Hospital. (*Id.*) During this visit, Plaintiff received more than sixty-five stitches to close wounds to his head, face, and ear. (*Id*. ¶ 22.) He was also informed by hospital staff that he had sustained "a brain injury to the right side of the back of his head," which is where Defendant Dapcevic had struck him twice with his baton. (*Id.* ¶ 22.)

Nearly one month later, on June 14, 2013, Plaintiff submitted a grievance to Defendant Lee about the May 27, 2013 incident. (*Id.* ¶ 29.) In this grievance, Plaintiff raised two complaints. First, Plaintiff explained that "Officers present for the May 27, 2013 incident were deliberately indifferent and grossly negligent to [Plaintiff's] safety by failing to protect him from Reyes' violent attack and subjecting him to deadly force by attacking him physically and striking him in the head with a baton twice." (*Id.* ¶ 29(a).) Next, Plaintiff contended that "inadequate security measures [] failed to capture video and audio footage of the prison compound and allowed inmates to (i) enter the [prison] yard without going through metal detectors and (ii) retain possession of razors issued

by prison officials." (*Id.* ¶ 29(b).)  Defendant Lee did not implement any changes at Green Haven based on this grievance.  (*Id.* ¶ 30.)

## B. Disciplinary Proceedings

Upon Plaintiff's release from the hospital, one of the Defendants served him with a "Tier III disciplinary ticket."  (*Id.* ¶ 31.)  Plaintiff was then sent to Green Haven's Special Housing Unit ("SHU").  (*Id.*)  Plaintiff's purported attacker, Reyes, on the other hand, was not charged for his conduct and returned to Green Haven's general population.  (*Id.* ¶ 33.)  Notably, upon Reyes's return to the general population, several inmates—who had previously agreed to testify for Plaintiff during his disciplinary hearing—refused to appear out of fear of his retribution.  (*Id.*)

The Tier III disciplinary process lasted two months, with disciplinary hearings specifically being conducted over the course of several days.  (*Id.* ¶ 32, 36.)  Plaintiff focuses on two specific procedural issues from these hearings: (1) the hearing officer's denial of Plaintiff's request to call several witnesses on his behalf (*id.* ¶ 35); and (2) the hearing officer's failure to record the proceedings in which (a) Defendant Vennero, an eyewitness from the yard, had testified, and (b) Plaintiff had made his request to call inmate witnesses[2] (*id.* ¶ 36).  At the end of the proceedings, the hearing officer found Plaintiff guilty on "all charges" and sentenced him to one year of confinement in the SHU, along with "other deprivations."  (*Id.* ¶ 37.)  Plaintiff appealed the findings and his sentence, but Defendant Prack upheld both upon review.  (*Id.* ¶ 38.)

## C. SHU Conditions

During his SHU confinement, Plaintiff suffered "numerous physical and emotional hardships."  (*Id.* ¶ 39.)  For example, Plaintiff "suffered excruciating pain due to migraine and other types of headaches on a daily basis."  (*Id.*)  Further, Plaintiff experienced "dizziness, muscle

---

[2]    As Plaintiff explains, the hearing officer had otherwise "recorded each day's proceedings on a separate audio cassette."  (AC ¶ 36.)

spasms, nausea, impaired vision, and hearing loss." (*Id.*) Plaintiff made several requests for medical assistance to alleviate his severe pain and debilitating symptoms, but Defendants did not provide "prompt medical treatment." (*Id.* ¶¶ 39, 44.) Specifically, as Plaintiff's grievances detailed, Defendant Bentivegna (1) stopped administering pain medication to Plaintiff after he had complained of their ineffectiveness, and instead prescribed weaker medication three days later; (2) did not timely remove Plaintiff's stitches; and (3) did not provide Plaintiff with medication for his stitch wounds. (Pl. Att'y Decl. in Opp'n ("Pl. Aff. Opp.") Ex. A at 1-2.)[3] Defendant Bentivegna also told Plaintiff that he would have treated him "differently if he were not in SHU." (AC ¶ 39.)

Plaintiff encountered several other issues during his SHU confinement. First, Defendants provided him with "woefully inadequate food." (*Id.* ¶ 40.) Specifically, Plaintiff "often found parts of [his] meals missing" or "tampered with." (*Id.*) These food-related issues caused Plaintiff to lose a "significant amount of weight." (*Id.*) Second, Plaintiff was subjected to smoke inhalation from a fire set by an inmate in his cell block.[4] (*Id.* ¶ 41.) Plaintiff, as a result, suffered "lung problems and difficulty breathing," and claimed he did not receive treatment for these ailments. (*Id.*) Finally, Defendants left urine and feces in the hallway outside his cell and did not clean it up promptly.[5] (*Id.* ¶ 42.) As a result, Plaintiff was forced to eat meals near urine and feces. (*Id.*)

Plaintiff alleges that he, his wife, and his attorney used grievances, appeals, letters, and verbal communication to alert Defendant Lee to the conditions of his SHU confinement, as well

---

[3]    The Court is free consider the Exhibits because they are integral to Plaintiff's allegation. *See Hobson v. Fischer*, No. 10 Civ. 5512 (SAS), 2011 WL 891314, at *3 (S.D.N.Y. Mar. 14, 2011).

[4]    In his grievance response, Defendant Lee explained that an "inmate lit a piece of paper on fire" but it "was not of significant size and, therefore, did not generate much smoke." (Pl. Aff. Opp. Ex. D). Defendant Lee's response notes that prison officials "[a]s a precaution," turned on exhaust fans and evacuated Plaintiff. (*Id.*)

[5]    According to Plaintiff's November 4, 2013 grievance, the urine and feces were thrown on the floor by an inmate residing in a nearby SHU cell. (Pl. Aff. Opp. Ex. E.). Prison staff purportedly left the urine and feces on the floor for "over 20 hours," serving two meals before cleaning up the waste. (*Id.*) Defendant Lee later referred the incident to the Inspector General's Office for investigation. (Pl. Aff. Opp. Ex. F.)

as his health and safety concerns.  (*Id.* ¶ 45-46.)  Plaintiff contends that Defendant Lee did not take any action to remedy these conditions.  (*Id.* ¶ 47.)  Plaintiff further claims that he continues to suffer from physical injuries, severe pain from those injuries, and emotional distress.  (*Id.* ¶ 48.)

## II.  Procedural Background

Plaintiff commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985(3), alleging that Defendants: (1) deprived him of the right to be free from excessive force, in violation of the Eighth Amendment; (2) acted with deliberate indifference to a serious risk of violence against Plaintiff, in violation of the Eighth Amendment; (3) acted with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment; (4) violated his Fourteenth Amendment due process rights by denying him a fair and impartial disciplinary hearing; and (5) violated his Fourteenth Amendment due process rights by subjecting him to atypical and substantial hardships during his SHU confinement.  (ECF No. 1.)

Defendants Lee and Prack[6] filed a partial motion to dismiss Plaintiff's Complaint on November 3, 2016, arguing that (1) Plaintiff failed to plead Defendants' personal involvement in a purported constitutional violation under § 1983 and (2) they were both entitled to qualified immunity.  (ECF No. 22.)  Plaintiff opposed Defendants' motion to dismiss, contending that he had sufficiently alleged the two Defendants' personal involvement and that neither were entitled to qualified immunity.  (ECF No. 31.)  The Court's April 5, 2018 Opinion, denying that motion to dismiss in part and granting it in part, is described in relevant part below.  After the Court issued its opinion, Plaintiff filed his AC on May 10, 2018.  (ECF No. 40.)  Defendants then filed an Answer on June 20, 2018 (ECF No. 43) and the Motion on June 23, 2018 (ECF No. 44).

---

[6]   DOCCS Commissioner Anthony Annucci—a named Defendant in the original complaint—had also joined the partial motion to dismiss.  By a letter dated November 16, 2016, however, Plaintiff withdrew his claims against Commissioner Annucci and he was dismissed from the Complaint.  (ECF No. 27.)

### III.     The 2018 Opinion

In its April 5, 2018 Opinion (the "2018 Opinion"), the Court granted Defendants' partial motion to dismiss in part and denied it in part.  The 2018 Opinion is summarized below.

### A.   Plaintiff's Due Process Claims Against Defendants Lee and Prack Regarding Atypical and Substantial Hardships Experienced During SHU Confinement.

The Court first granted Defendants' motion to dismiss Plaintiff's Fifth Cause of Action, which alleged that Defendants Lee and Prack violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution by subjecting him to atypical and substantial hardship during his one-year sentence in SHU.  *Constant v. Annucci*, No. 16-cv-03985 (NSR), 2018 WL 1684411, at *4 (S.D.N.Y. April 5, 2018).  In doing so, the Court held that Plaintiff failed to allege facts that established that Defendants Lee and Prack were personally involved in inflicting the alleged constitutional deprivations he suffered while in the SHU.  *Id.* The Court explained that Plaintiff's allegations only stated, in conclusory terms, that Defendants Lee and Prack "subjected Plaintiff to the conditions complained of" and that it was "insufficient for purposes of § 1983 that Defendants merely occupied supervisory roles."  *Id.*  Thus, as drafted, Plaintiff's complaint failed to tie Defendants to the constitutional violations at issue.  *Id.*

The Court, however, denied Defendants' motion to dismiss Plaintiff's claims based on qualified immunity.  *Id.* at *5.  The Court explained that the Complaint "provide[d] insufficient factual allegations to make such a determination at this juncture."  *Id.*  It was therefore "improper" to determine whether "Defendants Lee and Prack violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Id.*

### B.   Plaintiff's Due Process Claims Against Defendant Prack Regarding the Fairness and Impartiality of Plaintiff's Disciplinary Hearing.

The Court next turned to Plaintiff's Fourth Cause of Action, which asserted that Defendant Prack violated Plaintiff's due process rights under the Fourteenth Amendment by affirming the

hearing officer's determination and sentence despite purported due process violations. *Id.* The Court first concluded that an appeal officer may be held liable for affirming a disciplinary action that was unconstitutional. *Id.* Accordingly, given the alleged facts, Plaintiff had established Defendant Prack's personal involvement. *Id.*

Despite this conclusion, however, the Court determined that Defendant Prack was entitled to qualified immunity and granted his motion to dismiss the Fourth Cause of Action. *Id.* at *6. The Court concluded that there was uncertainty within the Circuit related to whether an appeal officer may be held liable for failure to correct a procedural due process error below. *Id.* For this reason, it could not be said that "'every reasonable official would have understood that' affirming a disciplinary hearing containing procedural due process violations would violate an inmate's constitutional rights." *Id.* (quoting *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2017 WL 365493, at *9 (S.D.N.Y. Jan. 24, 2017)).

## LEGAL STANDARDS

### I.    Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry for a motion to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss, a court is generally confined to the facts alleged in the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp. plc.*, 706 F.3d 145, 152 (2d Cir. 2013).

To determine whether a complaint states a plausible claim for relief, a court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the facts allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *3 (S.D.N.Y. Sept. 19, 2017) (citing *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011)). A defendant's conduct must therefore be a proximate cause of the claimed violation for a court to find that the individual defendant deprived the plaintiff of his constitutional rights. *Ross v. Westchester Cty. Jail*, No. 10-CV-3937 (DLC), 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

Additionally, as a prerequisite to recover monetary damages under § 1983, a plaintiff must show personal involvement in the alleged constitutional deprivation. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). In other words, there must be "specific factual allegations as to how *each defendant* is personally involved in the alleged illegal activities." *Jamiel v. Washburn*, No. 17-

CV-7172(NSR), 2019 WL 2491596, at *3 (S.D.N.Y. June 14, 2019) (emphasis added); *see also Samuels v. Fischer*, 168 F.3d 625, 639 (2d Cir. 2016) (general allegation that defendants "failed to train subordinates" was insufficient to establish personal involvement, absent some factual connection between their failure to train and the harm that eventually befell Plaintiff"); *Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1988) (dismissing claim against defendant where complaint lacked specific factual allegations concerning defendant's personal involvement in the alleged constitutional harm); *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("Personal involvement is a question of fact and must be satisfied as to each individual defendant.").

## DISCUSSION

In his AC, Plaintiff asserts a total of five claims, which arise under either the Eighth or Fourteenth Amendment. At issue on the Motion are Plaintiff's (1) Eighth Amendment claim against Defendant Lee regarding his failure to protect Plaintiff (AC ¶¶ 55-69); (2) Eighth Amendment claims against Defendants Bentivegna, Bernstein, and Lee related to deliberate indifference to medical needs (*id.* ¶¶ 70-79); (3) Fourteenth Amendment Due Process claims against Defendants Prack and Lee regarding Plaintiff's disciplinary hearing (*id.* ¶¶ 80-87); and (4) Fourteenth Amendment Due Process claims against all Defendants related to the "atypical and substantial hardships" of his SHU confinement (*id.* ¶¶ 88-92).

Defendants offer several arguments in support of the Motion. As to the Eighth Amendment claims, Defendants contend that (1) Plaintiff failed to state an Eighth Amendment failure-to-protect claim against Defendant Lee, (2) Defendant Lee is entitled to qualified immunity regarding any purported failure to protect Plaintiff; and (3) Plaintiff failed to establish that Defendants Bentivegna, Bernstein, and Lee were personally involved in the purported constitutional violations

related to deliberate indifference to medical needs. As to the Fourteenth Amendment claims, Defendants argue that (a) Defendants Lee and Prack are entitled to qualified immunity for any conduct related to the disciplinary hearing; (b) Defendant Lee lacked personal involvement in subjecting Plaintiff to atypical and substantial hardships, and (c) Plaintiff's atypical and substantial hardship claims are duplicative of his disciplinary-hearing claims, or, alternatively, are actually Eighth Amendment conditions-of-confinement claims for which Plaintiff has not stated a claim.

Below, the Court addresses these arguments.

## I.    Eight Amendment Claims

The Eighth Amendment requires prison officials to ensure the "reasonable safety" of inmates. *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994). Not every injury, however, "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, for a plaintiff to establish that a prison official violated the Eighth Amendment, "(1) the alleged deprivation must be 'sufficiently serious,' and (2) the alleged perpetrator—ordinarily a prison official—must possess 'a sufficiently culpable state of mind.'" *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (quoting *Farmer*, 511 U.S. at 834).

### A.  Failure to Protect[7]

To plead a failure-to-protect claim under § 1983, a plaintiff must show that (1) he or she was "incarcerated under conditions posing a substantial risk of serious harm" and (2) a prison official acted with "deliberate indifference" to his or her safety. *Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007). The Court analyzes each of these elements in turn.

---

[7]    As the Court will explain, Plaintiff has failed to state a claim against Defendant Lee regarding his purported failure to protect Plaintiff from a substantial risk of harm. However, had Plaintiff plausibly alleged that Defendant Lee violated his Eighth Amendment rights, the facts at this motion to dismiss stage do not entitle Defendant Lee to qualified immunity. Plaintiff's right to be free from an arbitrary failure to protect is well established, and "any reasonable official would know that failing to respond" to a well-documented threat to Plaintiff or inmates—had there been a sufficiently pleaded harm—would be a constitutional violation. *See Lebron*, 2017 WL 365493, at *7.

### i.    Substantial Risk of Serious Harm

The AC makes clear that Plaintiff experienced a grisly attack, which resulted in multiple wounds to his head, face, and ear, and necessitated emergency medical treatment.  (AC ¶¶ 11, 22.) Consistent with other courts in this district, the Court agrees that these facts sufficiently establish that Plaintiff was put at a substantial risk of serious harm under the Eighth Amendment.  *See, e.g.*, *Coronado v. Goord*, No. 99 CIV. 1674 (RWS), 2000 WL 1372834, at *3 (S.D.N.Y. Sept. 25, 2000) (concluding that plaintiff's allegations of an attack resulting in several stab wounds, which were "serious enough to justify transport[ation]" to an off-site hospital, established a sufficiently serious harm); *King v. Dep't of Corr.*, No. 95 Civ. 3057 (JGK), 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (holding that "the injury sustained by the plaintiff, a cut to his face, neck, and shoulder requiring 12-13 stitches, and the manner in which he received the injury, [were] sufficient to satisfy the objective requirement of the Eighth Amendment claim").

### ii.    Deliberate Indifference

Plaintiff argues that Defendant Lee "had actual or constructive knowledge" of prior instances of violence but failed to take any steps to "remedy the obvious risks to inmate safety." (Pl. Opp. 9.)  Specifically, Plaintiff claims that Defendants improperly maintained policies, practices, and customs such as (1) failing to have officers maintain assigned posts, (2) not installing cameras in the facility yard, (3) not requiring inmates to pass through metal detectors, and (4) not routinely requiring inmates to return shaving razors.  (AC ¶ 27.)  Plaintiff alleges that Defendant Lee acted deliberately indifferent because he failed to implement changes even though he "knew or should have known about violent incidents that had occurred between inmates in the prison and yard prior to" the May 27, 2013 attack.  (*Id.* ¶ 28.)  The Court disagrees.

To plead deliberate indifference, a plaintiff must establish that a defendant "ha[d] knowledge that an inmate face[d] a substantial risk of serious harm and [] disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Parris v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (citations omitted). The defendant must either know of, and disregard, a specific risk to plaintiff's safety or be aware of a general risk to all inmates. *Id.*

As it pertains to general risks of harm, a plaintiff must allege that a defendant (1) "knew of a history of prior inmate-on-inmate attacks similar to the one suffered by plaintiff" and (2) could have taken measures "in response to such prior attacks [that] would have prevented the attack on the plaintiff." *Blandon v. Aitchinson*, No. 17-CV-65 (KMK), 2019 WL 1206370, at *6 (S.D.N.Y. Mar. 14, 2019) (quoting *Parris*, 947 F. Supp. 2d at 363). This generally requires a plaintiff to establish a "'longstanding, pervasive, well-documented' history of similar attacks, coupled with 'circumstances suggest[ing] that the defendant-official being sued had been exposed to [this] information.'" *Stephens v. Venettozzi*, No. 13-CV-5779 (RA) (DF), 2016 WL 929268, at *21 (S.D.N.Y. Feb. 24, 2016), *adopted by* 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016) (quoting *Hicks v. Woods*, No. 9:09-cv-0051(GLS/DRH), 2011 WL 5974973, at *3 (N.D.N.Y. Nov. 28, 2011)); *see also Coronado*, 2000 WL 1372834, at *6 ("In order to make out a claim under the theory of failure to protect against the general threat of harm, Coronado must plead facts stating every one of the following elements: (1) there were numerous other inmate-on-inmate attacks in the GHCF yard; (2) these attacks posed a substantial risk of serious harm to inmates; (3) the Defendants knew about these prior attacks; (3) despite their knowledge of the prior attacks, Defendants failed to take steps to reduce the risk of harm to inmates; (4) the prior attacks and the stabbing of Coronado were similar enough that any steps Defendants could have taken to alleviate the danger posed by the

other attacks would also have reduced the risk to Coronado; and (5) if Defendant had taken such steps, Coronado would not have been stabbed in the yard on June 30, 1997.").

Even drawing all inferences in Plaintiff's favor, the Court is unable to conclude that Defendant Lee was aware of a specific risk to Plaintiff or a general risk to inmates. First, Plaintiff fails to establish that Defendant Lee was aware of a specific risk to Plaintiff. As Defendants correctly note, the May 27, 2013 attack was a surprise, and Plaintiff has not established that Defendant Lee was aware of a pre-existing risk to Plaintiff, such as a prior altercation between Plaintiff and Reyes or an existing threat made by Reyes to Plaintiff. *See Fernandez v. N.Y.C. Dep't of Corr.*, No. 08 CV 4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) ("Absent clear notice of a risk of harm to the prisoner, '[c]ourts routinely deny deliberate indifference claims based upon surprise attacks.'"). For this reason, the claims of deliberate indifference based on a specific risk to Plaintiff must fail as presently pleaded. *See Morgan v. City of New York*, No. 1:12-cv-00282 (ALC) (RLE), 2014 WL 3952917, at *3 (S.D.N.Y. Aug. 12, 2014).[8]

Second, Plaintiff fails to establish that Defendant Lee was deliberately indifferent to a general risk to inmates at Green Haven. To support his conclusory contention that Defendant Lee "knew or should have known" about prior violent incidents between inmates caused by "existing deficient policies" (AC ¶ 27-28), Plaintiff—for the first time in his Opposition—points to three lawsuits (one in which Defendant Lee is named) that detail occurrences of violence at Green Haven: (1) *Parris v. New York State Department of Corrections*, a case filed approximately one year prior to the May 27, 2013 attack and decided four days prior; (2) *Warren v. Goord*, a case

---

[8]     Plaintiff distinguishes this case from cases like *Morgan* by pointing out that the Officers "were aware of a specific risk" to Plaintiff after observing the initial attack by Reyes and failed to take any action despite their awareness of a threat to Plaintiff's safety. (*See* Pl. Opp. 10.) Plaintiff, however, fails to explain how *Defendant Lee* would have been aware of, and disregarded, a specific risk to Plaintiff, even if Reyes's second attack was not a complete surprise. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [supervisor defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

filed approximately eight years prior to the attack and decided five years prior, and (3) *Coronado v. Goord*, a case filed approximately fourteen years prior to the attack and decided nearly thirteen years prior. (Pl. Opp. 9.) Plaintiff does not offer any other facts to show that Defendant Lee knew of and disregarded general risks to inmates.

Courts within this Circuit that have considered the issue have suggested that knowledge of prior lawsuits may apprise defendants of the existence of a constitutional deficient conditions or policies, particularly when accompanied by sufficient details of the lawsuit and their relation to the current allegations. *See, e.g.*, *Zielinski v. Annucci*, 2019 WL 2479616, at *4, *9 (N.D.N.Y. Jan. 8, 2019), *adopted by* 2019 WL 1305826 (N.D.N.Y. Mar. 22, 2019) (concluding that defendant "'knew or should have known that there was a high degree of risk' of potentially unconstitutional conduct regarding the DOCCS Directives" because the complaint cited five lawsuits—including the titles, case numbers, and a summary of the claims—filed between 2006 and 2013 by inmates challenging the constitutionality of those directives); *Felix v. City of New York*, 344 F. Supp. 3d 644, 660-62 (S.D.N.Y. 2018) (concluding that plaintiffs adequately pleaded deliberate indifference by reference to "a pattern of lawsuits *and* corroborating reports"—here eight lawsuits filed over thirty years, two other instances reported in the press, and an Inspector General report—to support their failure-to-train claims against the defendants); *Brown v. Cty. of Nassau*, No. 16-CV-54 (LDW) (AYS), 2016 WL 4995283, at * (E.D.N.Y. Sept. 19, 2016) (allowing plaintiff to amend complaint with "allegations describing the circumstances surrounding lawsuits filed in this, and other jurisdictions regarding deaths and/or injuries of inmates who were incarcerated in facilities that contracted with Armor to provide medical services" because "the number of lawsuits and dates of alleged violations is relevant" to establishing a "consistent pattern"); *Edwards v. City of New York*, No. 14-cv-10058 (KBF), 2015 WL 5052637, at *6 (S.D.N.Y. Aug. 27, 2015) (explaining

that plaintiff's "cited government reports, news articles and eighteen prior lawsuits plausibly demonstrate that policymakers knew to a moral certainty that DOC officers routinely confront situations in which detainees provoke them and that there is a history of DOC officers mishandling such situations by responding with excessive force"); *see also Warren*, 476 F. Supp. 2d at 412 n.2 (opining that the "fact that a former lawsuit was filed against Commissioner Goord and the former Green Haven Superintendent concerning the dangers of the exercise yard might itself be evidence that the defendants were aware of such dangers").

Other courts, however, have seemingly determined that the mere the existence of lawsuits, alone, does not support a finding of knowledge, particularly when considering the timing and posture of the prior cases and their connection (or lack thereof) to the present allegations. *See, e.g., Ortiz v. Annucci*, No. 17-cv-3620 (RJS), 2019 WL 1438006, at *5 (S.D.N.Y. Mar. 29, 2019) (explaining that plaintiff had failed to establish personal involvement, in part, because "[t]he mere fact that [an officer] had been previously sued by an inmate—without any allegation that this prior lawsuit yielded a determination of wrongdoing—and Plaintiff's unsupported allegation that [the officer] had been the subject of numerous prior complaints do not make plausible the inference that [the supervisor] was 'grossly negligent' in supervising him, nor can such allegations establish deliberate indifference"); *Guillory v. Cuomo*, No. 9:14-CV-0971 (MAD/RFT), 2014 WL 11173632, at *4 (N.D.N.Y. Dec. 2, 2014) (dismissing claims related to a deliberate indifference to violence against supervisory defendants where plaintiff "cite[d] to his four prior lawsuits but [did] not allege how any defendant . . . had any involvement or any knowledge of the incidents described in those lawsuits); *Wilson v. Gurreno*, 1:10-cv-05901-PGG at 13 (S.D.N.Y. June 18, 2012) (ECF No. 39) (determining that defendant supervisor's knowledge of a prior lawsuit against subordinate defendant did not demonstrate personal involvement "[g]iven the passage of time . . . between the

prior violent incidents" against Plaintiff and "the general failure of Plaintiff to plausibly allege a policy or custom underlay these acts"); *see also Warren v. Goord*, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008) (explaining, in the summary judgment context, that the "fact that another inmate had made similar allegations in an action that was dismissed at the pleadings stage years before Plaintiff's attack does not support the inference that [defendant supervisor] had actual knowledge of any risk at the time of the attack").

The Court agrees that allegations of prior lawsuits can speak to a longstanding, pervasive, well-documented history of violence if other supporting facts and/or case details are alleged and establish a pattern of conduct about which a defendant should have been on notice to rectify through updated policies. The AC, however, does not make this showing. As presently pleaded, Plaintiff's allegations state in conclusory fashion that Defendant Lee "knew or should have known about violent incidents" at Green Hill prior to May 27, 2013.[9] (AC ¶ 28.) Although Plaintiff's Opposition attempts to supplement these threadbare assertions, Plaintiff only identifies (with scant details) three lawsuits that were filed over the course of twelve years and either dismissed for failing to state a claim, *see, e.g.*, *Parris*, 947 F. Supp. 2d at 363; *Coronado*, 2000 WL 1372834 at *2-3, or dismissed on the merits, *see, e.g.*, *Warren*, 579 F. Supp. 2d at 497. Drawing all favorable inferences in Plaintiff's favor, the Court cannot conclude, without more, that a mere reference to three dismissed lawsuits over the course of twelve years establishes that Defendant Lee was aware of a longstanding history of prior inmate-on-inmate attacks like the one experienced by Plaintiff.

---

[9] Plaintiff identifies a June 14, 2013 grievance in which he provided details of the May 27, 2013 attack to Defendant Lee. (AC ¶ 29.) A post-hoc grievance about a prior incident, however, does not support an inference that Defendant Lee failed to remedy a pre-existing constitutional violation. *See Odom v. Calero*, No. 06 Civ. 15527 (LAK) (GWG), 2008 WL 2735868, at *7 (S.D.N.Y. July 10, 2008) ("The reference in case law to an official who 'fails to remedy' a violation logically applies only to ongoing, and therefore correctable, constitutional violations-not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded.").

In sum, Plaintiff's AC is devoid of facts supporting an inference that Defendant Lee would have known about an existing threat to Plaintiff or of a longstanding, pervasive, and well-documented history of similar attacks at Green Haven. Accordingly, as to Defendant Lee, Plaintiff's Second Cause of Action is dismissed, without prejudice.

### B. Deliberate Indifference to Medical Needs

"The Cruel and Unusual Punishments clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). But not every lapse in medical care is a constitutional violation. Rather, like a claim of failure to protect, an Eighth Amendment claim for inadequate medical care requires a "deliberate indifference to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must allege that "(1) <u>objectively</u>, the deprivation of adequate medical care was sufficiently serious, and (2) <u>subjectively</u>, defendants acted with deliberate indifference." *Jones v. Avanzato*, No. 14-cv-2044 (NSR), 2016 WL 183565, at *3 (S.D.N.Y. Jan. 13, 2016) (citing *Farmer*, 511 U.S. at 834).

"Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Salahuddin*, 467 F.3d at 279 (internal quotations omitted). Thus, when grappling with the objective prong of the deliberate indifference test related to medical care, courts will ask (1) whether the prisoner was "actually deprived of adequate medical care" and (2) "what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 279-80.

For the subjective prong, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety" that would result from his or her act or omission *Avanzato*, 2016 WL 183565 at *3-4. Medical malpractice "does not rise to the level of a constitutional violation

unless the malpractice involves culpable recklessness." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Stated differently, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (internal quotations and citation omitted).

Finally, it is well settled that there is no *respondeat superior* liability in § 1983 cases. *Martinez v. N.Y. State Dep't of Corr. Servs.*, No. 95-CV-91 (RSP/GJD), 1997 WL 129386, at *2 (S.D.N.Y. Mar. 21, 1997) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 91981)). Instead, to establish to § 1983 liability for a supervisor defendant, a plaintiff must allege one of the following categories of personal involvement:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[10]

A supervisor defendant's "mere 'receipt of a letter or grievance, without personally investigating or acting [thereon] is insufficient to establish personal involvement.'" *Alvarado*, 22 F. Supp. 3d at 215. However, a plaintiff can establish personal involvement where "a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002); *see also*

---

[10] As this Court previously explained in the 2018 Opinion, because courts in this Circuit are divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983 following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the most prudent approach is to conclude that in the absence of Second Circuit precedent suggesting otherwise, all five categories under *Colon* are still valid. *See e.g.*, *Matteo*, 2017 WL 4217142, at *4-5; *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *6 n.5 (S.D.N.Y. Feb. 13, 2018).

*Pugh v. Goord*, 571 F. Supp. 2d 477, 515 (S.D.N.Y. 2008) ("Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint"). Still, even if personal involvement of a supervisor is established, the supervisor's conduct must be "so egregious as to demonstrate 'deliberate indifference' to [plaintiff's] rights." *Lewis v. Cunningham*, No. 05 CIV. 9243 (GBD) (RLE), 2011 WL 1219287, at *4 (S.D.N.Y. Mar. 14, 2011) (quoting *Langley v. Coughlin*, 715 F. Supp. 522, 545 (S.D.N.Y. 1989)).

      **i.    Defendants Bernstein and Bentivegna**

      Plaintiff's Third Cause of Action alleges that Defendants Bernstein and Bentivegna, along with Jane and John Doe physicians, deprived Plaintiff of adequate medical treatment by denying him pain medication, sometimes giving him inadequate medication, and denying his requests to seek additional medical treatment. (AC ¶ 73.) Defendants argue that Plaintiff relies on "group pleading" and does not attribute what, if any, conduct Defendants Bernstein and Bentivegna engaged in to deprive Plaintiff of his Eighth Amendment rights. (Defs. Mem. of Law in Supp. of Their Partial Mot. to Dismiss ("Def. Mot."), ECF No. 46, 12-13.) The Court agrees that Plaintiff has not established Dr. Bernstein's personal involvement and fails to state a claim against Defendant Bentivegna.

      Regarding Defendant Bernstein, the AC states in conclusory terms that he was among numerous individuals who denied Plaintiff medication, treatment, and referrals (AC ¶¶ 44, 73), while the Exhibits show that Plaintiff wrote him letters about medical concerns (Pl. Aff. Opp. Ex. A at 5). Plaintiff, however, does not explain what Defendant Bernstein specifically did to deprive him of medical care. Without details about how Defendant Bernstein engaged in a constitutional violation, Plaintiff's claim against him must fail. *Jones v. Fischer*, No. 07-CV-7589(DC), 2008

WL 3174510, at *6 (S.D.N.Y. Aug. 7, 2008) (dismissing claims against defendants because the plaintiff "fail[ed] to allege [defendants'] personal involvement with sufficient specificity").[11]

Plaintiff's claims against Defendant Bentivegna are also deficient. To be sure, as an initial matter, the Court concludes that Plaintiff has sufficiently pleaded Defendant Bentivegna's personal involvement under *Colon*. Like the allegations against Defendant Bernstein, the AC contends that Defendant Bentivegna was among the individuals who denied Plaintiff of medication, treatment, and referrals. (AC ¶¶ 44, 73.)[12] Plaintiff's Exhibits, however, expand on Defendant Bentivegna involvement in Plaintiff's medical treatment. Specifically, the Exhibits show that Defendant Bentivegna consulted Plaintiff on medical issues, prescribed medication, and treated his wounds and stitches. (*See* Pl. Aff. Opp. Ex. A.) Taken together, the allegations and Exhibits make the requisite showing of personal involvement needed for Plaintiff's claims.

Notwithstanding the above conclusion, the Exhibits do not establish that any purported deprivations in medical care were objectively serious. For example, Plaintiff claims that "Dr. Bentivegna took [Plaintiff] off pain meds"—after he had complained of their ineffectiveness—and then three days later "put [him] back on pain meds that [did] not help" and were, as Plaintiff claims, "less strong." (Pl. Aff. Opp. Ex. A at 1-2.) Similarly, Plaintiff claims that Defendant Bentivegna did not provide him requested medication for his stitch wounds.[13] Plaintiff may have been suffering through painful ailments, per his allegations (AC ¶ 39), but there is no indication that

---

[11] Because the AC provides no details as to Defendant Bernstein's personal involvement, Plaintiff's claim based on qualified immunity is denied at this juncture. The AC contains insufficient factual allegations for the Court to determine at this stage whether Defendants Bernstein violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 493 (E.D.N.Y. 2011) ("In sum, while the Court again recognizes that the qualified immunity issue should be decided at the earliest juncture where possible, the County defendants' motion to dismiss plaintiff's claims on the basis of qualified immunity is denied, given the [insufficient] allegations in the complaint").

[12] The AC also states that Defendant Bentivegna admitted that "he would have treated [Plaintiff] differently if he were not in SHU," but gives no further details. (*Id.* ¶ 39.)

[13] According to Defendant Lee, "the medical records [did] not indicate that the grievant had requested" this medication. (*Id.* at 4.)

Defendant Bentivegna's response was constitutionally inadequate. Instead, it appears that Defendant Bentivegna did provide treatment, specifically by prescribing medication— "Ultram (50 mg 2x per day)" (Pl. Aff. Opp. Ex. A at 4)—for his pain. Though Plaintiff claimed this medication was less effective, Defendant Bentivegna's treatment decisions, without more alleged, do not establish a constitutional harm. *See Ortiz v. Westchester Cty.*, No. 18 CV 5344 (VB), 2019 WL 2514727, at *3 (S.D.N.Y. June 18, 2019) (explaining that the fact that "'a prisoner might prefer a different treatment does not give rise to a constitutional violation.' This includes the decision to prescribe one form of pain medication in place of another").

To further support his position, Plaintiff alleges that Defendant Bentivegna did not timely remove stitches out of his ear.[14] (Pl. Aff. Opp. Ex. A at 2.) But Plaintiff does not explain how this allegedly delayed treatment was "needlessly prolonged" or "caused extreme pain or exacerbated" his condition. *See Thurmond v. Thomas-Walsh*, No. 18-CV-409 (KMK), 2019 WL 1429559, at *7 (S.D.N.Y. Mar. 29, 2019) (concluding that a "skin rash or condition" was not a "medical condition that gives rise to an Eighth Amendment deliberate indifference claim, even where there are delays in treatment"); *LaPerre v. Cty. of Nassau*, No. CV 08-1642 (SJF) (ETB) 2009 WL 10670335, at *6 (E.D.N.Y. Nov. 13, 2009), *adopted by* 2010 WL 9093240 (S.D.N.Y. Jan. 12, 2020) (explaining that a "small cut" did not meet the criteria for a serious medical condition because the standard "contemplates a 'condition of urgency' that may result in 'degeneration' or 'extreme pain.'"). Without allegations of an urgent need to remove the stitches that was ignored, the Court cannot conclude that this delayed removal was an objectively serious deprivation.

Even if Plaintiff had met the objective prong, however, his allegations still fail to establish Defendant Bentivegna's conduct was deliberately indifferent to his medical concerns. Plaintiff

---

[14] The stitches were not removed until July 22, 2013, *i.e.* about two months after the May 23, 2013 attack. Plaintiff provides no explanation in his grievances about why Defendant Bentivegna delayed removal.

contends that his medical treatment was "cruel" and that Defendant Bentivegna seemingly ignored his complaints while providing treatment. (Pl. Aff. Opp. Ex. A at 1, 5; AC ¶ 89.) Yet the allegations and Exhibits do not establish Defendant Bentivegna was aware that his treatment would result in a substantial risk of harm to Plaintiff or that he deliberately ignored a significant ailment. Instead, they at worst support an inference that Defendant Bentivegna was simply negligent, and, at the very least, indicate that Plaintiff and Defendant Bentivegna merely had a difference of opinion regarding the type, timing, and necessity of treatment. Because neither mere negligence nor a difference of opinion between a doctor and patient generally establish a constitutional violation, Plaintiff has failed to sufficiently plead Defendant Bentivegna's deliberate difference. *See Hill*, 657 F.3d at 123; *Avanzato*, 2016 WL 183565, at *4 (no deliberate indifference when defendant, while "proactively treating Plaintiff," "reviewed Plaintiff's medical records and declined to order medical tests or send Plaintiff to an outside hospital," which delayed treatment and aggravated Plaintiff's condition, because the allegations revealed that any medical issues "[a]t most . . . amount[ed] to a difference of opinion with regards to [defendant's] course of treatment").

In sum, as to Defendants Bentivegna and Bernstein, the Third Cause of Action is dismissed, without prejudice.[15]

### ii. Defendant Lee

Plaintiff contends that Defendant Lee failed to ensure that Plaintiff received proper medical treatment, thus acting with deliberate indifference to his serious medical needs. (AC ¶¶ 75-76.) In support, Plaintiff relies on several grievance responses by Defendant Lee regarding Plaintiff's medical concerns. (Pl. Aff. Opp. Exs. A-B, D.) Defendants counter that the Exhibits reveal that

---

[15] Had Plaintiff sufficiently stated a claim against Defendant Bentivegna, Defendant Bentivegna would not be entitled to qualified immunity. There would have been fair warning that Defendant Bentivegna was violating a clearly established right. *See LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (explaining that prisoners have a clearly established right "to be free from deliberate indifference to serious medical needs").

Defendant Lee responded reasonably and without deliberate indifference. (Defs. Mem. of Law in Further Supp. of Their Partial Mot. to Dismiss, ECF No. 46, 7). The Court agrees with Defendants.

Because Plaintiff's Exhibits show that Defendant Lee reviewed and responded to each of Plaintiff's medical grievance, he has established Defendant Lee's "personal involvement" in Defendant's medical-care claims under *Colon*. Nevertheless, his responses do not rise to the requisite level of egregiousness necessary to demonstrate on the face of the AC that Defendant Lee, as a non-medical supervisor, acted with deliberate indifference. For example, in his August 5, 2013 response, Defendant Lee noted that he was relying on the medical record before him, which (1) indicated that Plaintiff was either receiving treatment as needed or (2) lacked information regarding the requests highlighted in Plaintiff's grievance. (Pl. Aff. Opp. Ex. A at 4.) Similarly, in his December 12, 2013 response to Plaintiff's request to be "re-tested" for alleged auditory issues, Defendant Lee "encouraged" Plaintiff to consult with SHU medical staff to assess if an "Audiology consult" was appropriate. (*Id.* Ex. B at 1.) Finally, in addressing Plaintiff's smoke-inhalation grievance, Defendant Lee detailed prison officials' response to, and assessment of, the incident, and explained that the record neither mentioned Plaintiff "feeling sick and throwing up," nor described a "medical need indicated[] at the time" that would have warranted "additional treatment." (*Id.* Ex. D at 1.)

None of these responses establish that Defendant Lee "failed to ensure [that Plaintiff] was adequately treated." (Pl. Opp. 17). Rather, as alleged, the Defendant Lee's responses show that he, as a non-medical official, was deferring to the "judgment of medical staff to properly treat" Plaintiff. *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 305 (S.D.N.Y. 2016). And where Plaintiff's medical grievances potentially amounted to a direct request for medical treatment from Defendant Lee, he did not fail to act. Instead, he delegated follow up to his subordinates to handle those

issues, relying on their expertise.  *See Lewis*, 2011 WL 1219287 at *10 (holding that defendant supervisor not deliberately indifferent when he delegated grievance responses to "subordinate staff").  Because the AC does not establish Defendant Lee's conscious disregarded of a substantial risk of serious harm to Plaintiff, the Third Cause of Action is dismissed against him.[16]

### C.  Conditions of Confinement[17]

In his Fifth Cause of Action, Plaintiff argues that Defendants Lee, Prack, and John and Jane Does violated his due process rights by subjecting him to numerous "atypical and substantial hardships" during his one-year SHU confinement.  (AC ¶¶ 88-96.)  Defendants contend that Plaintiff's Fifth Cause of Action is either (1) duplicative of Plaintiff's Fourth Cause of Action related to due process violations from his disciplinary hearing; or, critically, (2) an Eight Amendment "conditions of confinement" claim, which fails because Defendant Lee is not personally involved, and the conditions are not sufficiently serious.  (Def. Mot. 15-18.)

Given the underlying allegations, the Court concludes that Plaintiff's Fifth Cause of Action, although styled as a due process claim, in fact sets forth a conditions-of-confinement claim.  Accordingly, the Court will analyze this claim under the Eighth Amendment.

---

[16]  Even if Plaintiff stated a claim for deliberate indifference to medical needs, Defendant Lee would be entitled to qualified immunity.  A reasonable non-medical supervisory defendant would not have necessarily known that reliance on the recommendations of, as well as referrals to, subordinates and medical staff could violate a clearly established right.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (granting qualified immunity because, among other things, defendants' "failure to intercede in the medical treatment of an inmate was, if wrongful, not objectively unreasonable"); *Jones v. Rivera*, No. 16 Civ. 4495 (BMC), 2017 WL 2389591, at *4 (E.D.N.Y. June 1, 2017) ("[Defendant's] reliance on the medical department's direction that Jones was not permitted to ride the elevator entitles her to qualified immunity.").

[17]  Plaintiff does not include any facts (outside of a few conclusory assertions) tying Defendant Prack in his supervisory capacity to Plaintiff's conditions-of-confinement claims.  Defendants must have been personally involved in the alleged constitutional violation.  *See Marshall v. Annucci*, No. 16-cv-8622 (NSR), 2018 WL 1449522, at *10 (S.D.N.Y. Mar. 22, 2018).  As such, Plaintiff's condition-of-confinement claims should be dismissed against Defendant Prack for lack of personal involvement.  Similarly, Plaintiff makes a passing reference to Jane and John Doe Defendants, but does not state how, if at all, they were personally involved in causing Plaintiff's harms.  Accordingly, because Plaintiff "does not allege facts regarding Jane Doe or John Doe's personal involvement," Plaintiff's claims against those Defendants should also be dismissed. *See Donohue v. Manetti*, No. 15-CV-636 (JFB) (GRB), 2016 WL 740439, at *5 (E.D.N.Y. Feb. 24, 2016).

Under the Eighth Amendment, prison officials "must provide humane conditions of confinement." *Farmer*, 511 U.S. at 833. This includes ensuring that inmates "receive adequate food, clothing, shelter, and medical care." *Id.* "To state a claim, a plaintiff must show both that (1) objectively, the conditions resulted in unquestioned and serious deprivations of basic human needs or of the 'minimal civilized measure of life's necessities' and (2) subjectively, that the defendant acted with a sufficiently culpable state of mind, deliberate indifference, in imposing those conditions." *Dixon v. Fishkill Corr. Fac.*, No. 17-CV-1123 (NSR), 2019 WL 2866489, at *3 (S.D.N.Y. July 2, 2019) (citing *Wilson v. Seiter*, 501 U.S. 294, 308 (1991)). As explained above, a prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotations omitted).

    i.   **Deprivations of Basic Human Needs**

Plaintiff urges the Court to conclude that he has sufficiently pleaded "conditions that deprive him of a minimal civilized measure of life's necessities, especially when taken together." (Pl. Opp. 19.) Although all the alleged conditions certainly are unpleasant, the Court concludes Plaintiff has failed to establish a *constitutionally* inadequate deprivation at the pleading stage.

*a.Food and Food Tampering*

"The Eight Amendment requires 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Wiley v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). Any deprivation of food or nutrients must be enough to create a serious danger to the inmate's health. *Salgado v. DuBois*, No. 17-cv-6040 (NSR), 2019 WL 1409808, at *10 (S.D.N.Y. Mar. 28, 2019) (holding that *pro se* plaintiff established a sufficiently serious deprivation by pleading allegations of being served "inadequately small-

portioned and unsanitary meals which included rotting and insect-infested food").  Further, to establish a "food tampering" claim, a plaintiff "must allege that he suffered an actual injury." *Calvin v. Schmitt*, No. 15-CV-6584 (NSR), 2017 WL 4280683, at *5 (S.D.N.Y. July 7, 2017) (concluding that plaintiff failed to establish a connection between defendants and allegations of food tampering).  "[T]he mere allegation of food tampering alone [] is insufficient to establish a claim under the Eight Amendment."  *Harris v. Ashlaw*, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007).

In this case, one of Plaintiff's primary allegations is that he "received meals in his cell and found parts of the meal missing," while "[o]n other occasions, he found someone tampered with his food."  (AC ¶ 90.)  Plaintiff, however, does not provide any details about, *inter alia*, how the food was tampered with, what impact the "missing" portions of his meal had on the nutritional adequacy of the meal, or what were the conditions that Plaintiff received his food in general.  The allegations are ultimately conclusory and do not contain sufficient facts to state a cognizable claim.

Plaintiff's grievances and Defendant Lee's responses provide slightly more color about Plaintiff's claims.  The grievances establish that Plaintiff had complained that the food he received was "not the correct portion size" and "served cold" (Pl. Aff. Opp. Ex. C), leading Plaintiff to lose "close to 15 lbs in one month" and "26 lbs" over "59 days" (*id.* Ex. A at 2, 5).  Even taken as true and drawing all favorable inference, however, the Court cannot conclude from Plaintiff's AC or Exhibits that the meals that Plaintiff received—which, at most, are alleged as "tampered with," partially "missing," or "cold"—were nutritionally inadequate.

To be sure, at first glance, the allegations of missing food, although somewhat conclusory in nature, could arguably state a plausible a claim if drawing very favorable inferences.  *See, e.g.*, *Canales v. Sheahan*, No. 12-CV-693 (LJV) (HBS), 2017 WL 1164462, at * (W.D.N.Y. Mar. 28,

2017) (concluding that, by liberally construing his complaint, *pro se* plaintiff stated a plausible claim where he alleged that prison officials "knowingly imposed upon Plaintiff a diet that did not contain 'sufficient calories, vitamins, and nutrients to maintain his physical and mental health,' resulting in gastrointestinal problems for which he received prescribed medication"). However, when considering these allegations with Defendant Lee's grievance response, the facts indicate that Defendants adhered to a "modified menu" that provided specific guidelines for "portion size based upon [Plaintiff's] diet plan." (Pl. Aff. Opp. Ex. C.) Indeed, prison officials seemed to follow a prescribed diet plan rather than shirking their duty to provide nutritionally adequate food. *See Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001) (explaining that "assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents"). Furthermore, the allegations of weight loss do not, alone, support a claim that Plaintiff's health was in serious danger (particularly where Defendants appeared to take actions to "improve [food] services to SHU residents" (Pl. Aff. Opp. Ex. C at 1)). *See Bost v. Bockelmann*, No. 9:04-CV-0246 (GLS/DEP), 2007 WL 527320, at *8 (N.D.N.Y. Feb. 20, 2007) (determining that, although plaintiff lost 15 pounds in several days, no reasonable factfinder could conclude that "plaintiff's food intake and weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment diagnosis," especially when defendants responded with "health shakes" and a "thirty day high protein diet"). Taken together, none of the allegations establish a serious deprivation of human needs.

### b. Exposure to Urine and Feces

"A Section 1983 claim will not lie for prison conditions that are merely unpleasant." *Florio v. Canty*, 954 F. Supp. 2d 227, 234 (S.D.N.Y. 2013) (internal quotations and citations omitted). Although "chronic exposure to human waste will give rise to a colorable claim," intermittent or

limited exposure generally will not. *Ortiz v. Dep't of Corr. of City of New York*, 80 Civ. 2195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011), *adopted by* 2011 WL 2638140 (S.D.N.Y. July 5, 2011) ("The Eighth Amendment is generally not violated . . . where unsanitary conditions are temporary." (quoting *Kee v. Hasty*, 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *26 n.24 (S.D.N.Y. Apr. 14, 2004)). Courts have regularly held that exposure to human waste for periods of less than 24 hours, although unpleasant, does not give rise to a constitutional violation. *See, e.g.*, *Myers v. City of New York*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *6-7 (S.D.N.Y. Aug. 29, 2012) (holding that there was no Eighth Amendment violation were plaintiff was confined to holding cell for 16-hours with a "urine and filth laden floor" and no air conditioning); *Ortiz*, 2011 WL 2638137 at *8 (holding that exposure to human waste for 24 hours, although unpleasant, did not support a cause of action under the Eighth Amendment); *Evans v. Fogg*, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) (holding that there was no Eighth Amendment violation where plaintiff was "kept in a refuse-strewn cell for 24 hours").

Here, Plaintiff alleges that Defendants "allowed urine and feces from other inmates to remain in the hallway immediately outside" his cell for "extended periods without cleaning it up." (AC ¶ 92.) Plaintiff's Exhibits clarify that this "extended period" was for "over 20 hours." (Pl. Aff. Opp. Ex. E at 1.) The Court acknowledges that these conditions, caused by another inmate, are undoubtedly unpleasant and unsanitary. The Eighth Amendment, however, demands more. Plaintiff has failed to establish that his temporary exposure to urine and feces while in SHU was a serious deprivation of his constitutional rights.

### c. Smoke Inhalation

As previously noted, a plaintiff must plead facts that establish that the "conditions of his [or her] confinement violate contemporary standards of decency." *Phelps v. Kapnolas*, 308 F.3d

180, 185 (2d Cir. 2002).  Plaintiffs can state a conditions-of-confinement claim by showing that

he or she was exposed to "unreasonable levels of smoke" impacted the "minimal civilized measure

of clean air."  *Gumora v. City of New York*, No. 17 Civ. 2300 (LGS), 2018 WL 736018, at *5

(S.D.N.Y. Feb. 5, 2018) (holding that allegations that Plaintiff was exposed to smoke inhalation

when inmates had "set fires . . . every day—sometimes multiple times a day" and "NYDOC staff

never successfully extinguished the fires" were sufficiently serious); *see also Jones v. Goord*, 435

F. Supp. 2d 221, 249 (S.D.N.Y. 2006) ("To satisfy the objective requirement, plaintiffs must show

that inmates are exposed to 'unreasonably high levels' of secondhand smoke.").  A plaintiff,

however, must allege that the smoke exposure posed "an unreasonable risk of serious damage to

[his or her] future health.'"  *Garcia v. Fischer*, No. 13 CV 8196 (VB), 2016 WL 297729, at *6

(S.D.N.Y. Jan. 22, 2016) (quoting *Phelps*, 308 F.3d at 185) (exposure to smoke for two hours

satisfied objective prong of the deliberate indifference test).

In this case, Plaintiff contends that he was "subjected . . . to smoke inhalation from a fire

set by an inmate in his cell block," which caused him to suffer "lung problems."  (AC ¶ 91.)

Defendant Lee, however, had noted that the fire was "not of significant size," "did not generate

much smoke," and was extinguished "promptly."  (Pl. Aff. Opp. Ex. D).  Considering Plaintiff's

allegations and Exhibits together, the Court cannot infer that the smoke he was exposed to, if any,

had reached unreasonable levels or lasted for an unreasonable duration.  Though Plaintiff alleges

that he suffered adverse effects related to the smoke, the AC and Exhibits simply do not establish

that this isolated incident to which he was exposed created unreasonable risk of serious harm to

his health.  As such, Plaintiff's smoke-inhalation allegations fail to support an Eighth Amendment

conditions-of-confinement claim.

### d. Medical Care

As explained in detail above, Plaintiff has failed to satisfy the objective prong of the conditions-of-confinement claim related to his medical care in the SHU. *See supra* Part I.B.i.

### ii. Deliberate Indifference[18]

Even if Plaintiff had sufficiently established a serious deprivation related to the other above-referenced conditions, Plaintiff still fails to satisfy the subjective prong as to those conditions of confinement.[19] Plaintiff contends that he "repeatedly advised Defendant Green Haven Superintendent Lee and his subordinates, through grievances, appeals, letters, and verbally about, inter alia" Defendants' alleged constitutional deprivations. (AC ¶ 93.) In support, Plaintiff points to Defendant Lee's grievance responses to argue that he caused Plaintiff to suffer various improper conditions of confinement. Plaintiff's attempt to establish Defendant Lee's deliberate indifference is unavailing.

Defendant Lee's responses to the conditions-of-confinement claims do not establish that he ignored an excessive risk to Plaintiff's health. Instead, they reveal that he (1) considered Plaintiff's grievances and the responses of his subordinates; (2) addressed certain grievances when he determined that doing so was warranted (*see, e.g.*, Pl. App. Opp. Ex. A at 4 (scheduling regular weigh ins in response to Plaintiff's concerns about weight loss)); (3) explained when his subordinates had already addressed Plaintiff's issues (*see, e.g.*, *id.* Ex. C (noting that "Food Service Administrator" had spoken with Plaintiff regarding his meal portion concerns)); *id.* Ex. D (explaining that issues related to fire were immediately dressed by prison staff)); and, if needed,

---

[18] Aside from Defendants Prack, Jane Does, and John Does, whom Plaintiff has not established personal involvement, and Defendant Bentivegna, whom the Court concluded did not act with deliberate indifference to Plaintiff's medical claims, Plaintiff does not point to any other Defendant that engaged in unconstitutional conduct. Accordingly, the Court's following analysis focuses solely on Defendant Lee's purported deliberate indifference to the various alleged conditions of confinement.

[19] As explained above, Plaintiff failed to establish Defendant Lee's deliberate indifference to medical claims.

(4) forwarded Plaintiff's complaints for further investigation by appropriate entities (*id.* Exs. E-F (forwarding concerns regarding unsanitary conditions to the Inspector General for further action)). These Exhibits leave no doubt that, in each case, Defendant Lee adequately considered and addressed each grievance, or deferred to medical professionals where necessary.

Plaintiff, of course, may not have been satisfied with one or more of Defendant Lee's responses. But unsatisfactory responses do not, on their own, constitute a deliberate disregard for conditions of confinement. *See Salgado*, 2019 WL 1409808 at *7 ("Although Plaintiff may have not agreed with these officials' decisions, there is no suggestion [defendant] disregarded his grievances."). The Court accordingly dismisses the Fifth Cause of Action against Defendant Lee.

## II. Fourteenth Amendment Procedural Due Process Claims[20]

To state a claim for procedural due process, a plaintiff must show that a defendant "deprived [him or her] of a cognizable interest in 'life, liberty, or property, [] without affording [him or her] constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The plaintiff must first establish that he or she has been deprived of a protected interest before a court assesses whether the defendant deprived that protected interest "without sufficient process." *See Booker v. Griffin*, No. 16-cv-00072 (NSR), 2018 WL 6715559, at *3 (S.D.N.Y. Dec. 21, 2018).

### A. Liberty Interest

"A prisoner's liberty interest is implicated by prison discipline, such as [SHU] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate

---

[20] In the 2018 Opinion, the Court dismissed, on qualified immunity grounds, Plaintiff's Fourth Cause of Action as it pertained to Defendant Prack. *Constant*, 2018 WL 1684411 at *6. As such, to the extent that Plaintiff reasserts a due process claim against Defendant Prack based on his affirmance of the hearing officer's determination and sentence, that claim is dismissed. The Court notes that Plaintiff's Opposition, however, "acknowledge[d] the Court dismissed one of his due process claims, i.e. Plaintiff Fourth Claim [sic]." (Pl. Opp. 17 n.4.) The Court does not construe this footnote to be a general withdrawal of the Fourth Cause of Action in the AC.

in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In assessing whether a disciplinary method imposes an "atypical and significant hardship," courts must consider "'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Bunting v. Nagy*, 452 F. Supp. 2d 447, 455 (S.D.N.Y. 2006) (quoting *Palmer*, 364 F.3d at 64). Courts will "examine the circumstances of a confinement and [] identify with specificity the facts upon which [their] conclusion[s] [are] based." *Kalwasinski v. Morse*, 201 F.3d 103, 106 (2d Cir. 1999) (quoting *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998)).

"Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999). "A confinement longer than an intermediate one, and under 'normal SHU conditions,' is 'a sufficient departure from the ordinary incidents of prison life to require procedural due process protections.'" *Palmer*, 364 F.3d at 65. To this end, courts have held that SHU confinements lasting approximately one year create a protected liberty interest. *See, e.g.*, *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (SHU confinement of 305 days constitutes 'a significant departure from the ordinary incidents of prison life' to suggest a protected liberty interest."); *Lee v. Coughlin*, 26 F. Supp. 2d 615, 635-36 (S.D.N.Y. 1998) (SHU confinement of 376 days qualified as an atypical and significant hardship "in terms of both duration and degree of restrictedness").

Here, Plaintiff was subjected to a SHU confinement of one year. As such, although neither Plaintiff nor Defendants argue this in their respective briefs, Plaintiff has sufficiently pleaded a protected liberty interest at stake during his disciplinary hearings, given the confinement's length.

## B. Procedural Defects

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution.'" *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). For example, there is no right to counsel or to confrontation. *Id.* Nor is there a right to a speedy hearing. *See Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) ("[T]he violation of 7 N.Y.C.R.R. § 251–5.1(a) [regarding the timing of a disciplinary hearing] alone would not be enough generally to establish a constitutional claim."); *see also Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) ("Due process for an inmate disciplinary hearing does not encompass a right to a speedy hearing."). Prison inmates nevertheless are entitled to certain procedural protections, including (1) advance written notice of charges against him, (2) a "reasonable opportunity to call witnesses and present documentary evidence," (3) a fair and impartial officer, and (4) a written statement of the disposition. *Id.*

There are, of course, certain limitations to these procedural protections. For example, the right to call witnesses must be balanced "against the needs of the prison." *Colon v. Annucci*, 344 F. Supp. 3d 612, 634 (S.D.N.Y. 2018). Specifically, officers may deny a request to call a witness "on the basis of irrelevance[,] lack of necessity, or 'futility,'" which includes "situations in which 'witness will not testify if called.'" *Id.* (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). Further, regarding hearing recordings and transcripts, "although New York state law 'requires that an electronic record of a disciplinary hearing be maintained, such a record is not constitutionally required.'" *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502-03 (S.D.N.Y. 20120) (citing *Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002)) (explaining that there is "no due process right to having a disciplinary ruling reviewed with the aid of perfect audio recording or complete transcript").

At bottom, Plaintiff's alleges three procedural defects in the hearing process: (1) Plaintiff's disciplinary hearing took two months, which violated New York regulations;[21] (2) the hearing officer improperly failed to preserve audio recordings of witness testimony; and (3) the hearing officer improperly denied Plaintiff's requests to call witnesses. (AC ¶¶ 81-84.) As presently pleaded, none of these alleged defects support a cognizable due process violation. Indeed, two of these defects—the delay in completing the hearing process and failure to record certain days' proceedings—are not constitutional violations at all, even if they may violate state regulations.

The closest Plaintiff comes to a due process violation is his allegation that the hearing officer denied his requests to call witnesses, including "inmates," "correction officers," and "his hearing assistant." (*Id.* ¶ 83.) But, although the denial of witnesses without a proper basis—or even no stated basis at all in the record—could give rise to a due process claim, *see, e.g.*, *Thomas v. Calero*, 824 F. Supp. 2d 488, 502 (S.D.N.Y. 2011) (denying motion to dismiss where defendants did not provide documentation suggesting the reasoning for denying plaintiff's request to call certain witnesses because the court "cannot presume any valid reason, either related to personal safety, irrelevance or waste of time"), Plaintiff has not pleaded sufficient facts to survive a motion to dismiss. The AC contains no allegations about, "for instance, the hearings in which the deprivation occurred, the nature of the infractions at issue, how the witnesses he sought to call were relevant, the hearing officers who precluded him from calling witnesses, and the reasons given, if any, for the denials."[22] *Pinero v. Casey*, No. 10 Civ. 4803 (JSR) (JCF), 2012 WL 832509, at *12 (S.D.N.Y. Mar. 13, 2012), *adopted by* 2012 WL 1059674 (S.D.N.Y. Mar. 29, 2012).

---

[21] Plaintiff appears to be referring to Section 251-5.1.1 of Title 7 of the Compilation of Codes, Rules, and Regulations of the State of New York, which states: "The disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee." *See* 7 N.Y.C.R.R. 251-5.1.

[22] Nor has Plaintiff alleged that the purported due process violation was committed by a Defendant in the case, as none of the named Defendants appear to be the alleged hearing officer. *See Pinero*, 2012 WL 832509 at *11 ("The plaintiff must also identify the individuals responsible for any deprivation he may have suffered.").

Because the AC lacks "sufficient factual matter" to plausibly support due process claim, *see Iqbal*, 556 U.S. at 678, Plaintiff's Fourth Cause of Action is dismissed, without prejudice.

### C. Defendant Lee's Personal Involvement

Plaintiff's sole allegation about Defendant Lee in the context of the disciplinary hearing is that he "knew about and/or authorized Reyes to be released to the general public." (AC ¶ 34.) This assertion is, at best, conclusory (if not irrelevant), and the AC lacks any other facts connecting Defendant Lee to the alleged due process violations stemming from Plaintiff's disciplinary hearing. As such, even if Plaintiff had sufficiently pleaded a due process violation, he fails to establish Defendant Lee's personal involvement with it. *See Jamiel*, 2019 WL 2491596 at *3. Therefore, Plaintiff's Fourth Cause of Action is dismissed as applied to Defendant Lee.

**CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED. Plaintiff may seek leave of the Court within thirty days of this decision to amend the Complaint's Second, Third, Fourth, and Fifth Causes of Action. As there are no remaining claims against them, Defendants William Lee, Frederick Bernstein, Robert Bentivegna, and Albert Prack are dismissed from the case and the Clerk of the Court is respectfully requested to remove those Defendants from the caption at this time.

The Clerk is further directed to terminate the motion at ECF No. 44. Parties are directed to complete a Civil Case Discovery Plan and Scheduling Order and to submit it to the Court.

Dated:     July 19, 2019                                         SO ORDERED:
           White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge