UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
WILLIAM CONSTANT,              :
                                   :
                Plaintiff,      :
                                     :
       -against-               :                  16-CV-3985(PMH)
                                     :
N. DAPCEVIC, et al.,         :
                                     :
               Defendants.    :
--------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


LETITIA JAMES
Attorney General
State of New York
<u>Attorney for Defendants</u>
28 Liberty Street, 18th Floor
New York, NY 10005
Tel.: (212) 416-8906


DEANNA L. COLLINS
Assistant Attorney General
    <u>of Counsel</u>

Dated:  April 2, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................................... 3

STANDARD OF REVIEW ..............................................................................................10

ARGUMENT ...................................................................................................................12

POINT I          SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE
CLAIM MUST BE GRANTED BECAUSE THE EVIDENCE
ESTABLISHES THAT DAPCEVIC'S USE OF FORCE WAS
REASONABLE AND THAT ALBAN AND STURTEVENT DID
NOT STRIKE PLAINTIFF...................................................................12

POINT II        SUMMARY JUDGMENT MUST BE GRANTED FOR THE
REMAINING EIGHTH AMENDMENT CLAIMS BECAUSE THERE
IS NO EVIDENCE THAT WOULD ALLOW A REASONABLE
JUROR TO CONCLUDE THAT DEFENDANTS FAILED TO
INTERVENE OR WERE DELIBERATELY INDIFFERENT .........................15

    A.  Summary Judgment Must Be Granted For Any Claim Involving the Slashing..........17

    B.  Summary Judgment Must Be Granted For Any Claim Involving The Fight
Between Plaintiff And Reyes ..................................................................20

    C.  Summary Judgment Must Be Granted On Any Claim That Alban And
Sturtevent Failed To Protect Plaintiff From Dapcevic's Use of Force ......................22

POINT III      IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO
QUALIFIED IMMUNITY...................................................................23

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

Anderson v. Branen,
    17 F.3d 552 (2d Cir. 1994) ..................................................................16, 18, 23

Allen v. Cuomo,
    100 F.3d 253 (2d Cir. 1996) ..................................................................11

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..............................................................................10

Barboza v. D'Agata,
    676 F. App'x 9 (2d Cir. 2017) (summ. order)....................................24

Brown v. Chambers,
    No. 92-cv-7622, 1995 WL 234681 (S.D.N.Y. Apr. 20, 1995), aff'd 99 F.3d
    402 (2d Cir. 1995) ........................................................................16, 19, 21-22

Campbell v. Prue,
    No. 16-cv-0004, 2018 WL 4635708 (N.D.N.Y. July 3, 2018) (Rep. &
    Recommendation), adopted by 2018 WL 3574871 (N.D.N.Y. July 25, 2018)................ 18-19

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..............................................................................10

Curley v. Vill. of Suffern,
    268 F.3d 65 (2d Cir. 2001) ..................................................................18

Davis v. New York,
    316 F.3d 93 (2d Cir. 2002) ..................................................................11

Desulma v. City of New York,
    No. 98-cv-2078, 2001 WL 798002 (S.D.N.Y. July 6, 2001) (Rep. &
    Recommendation), adopted by No. 98-cv-2078 (ECF 59) (S.D.N.Y. Dec. 11,
    2001)........................................................................................................19

Davidson v. Bartholome,
    460 F. Supp. 2d 436 (S.D.N.Y. 2006) ...............................................11

Duse v. IBM,
    151 F.3d 151 (2d Cir. 2001) .............................................................10-11

Estelle v. Gamble,
    429 U.S. 97 (1976)................................................................................12

Farmer v. Brennan,
    511 U.S. 825 (1994) ............................................................................. 16-17, 22

Ford v. Phillips,
    No. 05-cv-6646, 2007 WL 946703 (S.D.N.Y. Mar. 27, 2007) ............................... 14

Garcia v. Witkowski,
    988 F. Supp. 2d 360 (W.D.N.Y. 2013) ........................................................ 19-20

Goldstick v. The Hartford, Inc.,
    No. 00-cv-8577, 2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ...................... 6, 8-9

Green v. Leubner,
    No. 07-cv-1035, 2009 WL 3064749 (N.D.N.Y. Sept. 22, 2009) ........................... 22

Griffin v. Crippen,
    193 F.3d 89 (2d Cir. 1999) ......................................................................... 13

Hudson v. McMillian,
    503 U.S. 1 (1992) ................................................................................. 12-13

Jeffreys v. Rossi,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003), aff'd 426 F.3d 549 (2d Cir. 2005) ...................... 16, 18

Jimenez v. Big M., Inc.,
    86 F. Supp. 2d 236 (S.D.N.Y. 2000) ......................................................... 11-12

Jones v. Parmley,
    465 F.3d 46 (2d Cir. 2006) ......................................................................... 14

Kulak v. City of New York,
    88 F.3d 63 (2d Cir. 1996) .......................................................................... 11

McCarthy v. Dun & Bradstreet,
    482 F.3d 184 (2d Cir. 2007) ...................................................................... 11

Nielsen v. Rabin,
    746 F.3d 58 (2d Cir. 2014) ........................................................................ 17

Patterson v. Cnty. of Oneida,
    375 F. 3d 206 (2d Cir. 2004) ..................................................................... 11

Romano v. Howarth,
    998 F.2d 101 (2d Cir. 1993) ....................................................................... 12

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006) .................................................................. 11, 17

Santana v. City of Hartford,
    283 F. Supp. 2d 270 (D. Conn. 2003) ...............................................................23

Scott v. City of White Plains,
    No. 10-cv-1887, 2013 WL 1313774 (S.D.N.Y. Mar. 18, 2013) .....................................22-23

Stubbs v. Dudley,
    849 F.2d 83 (2d Cir. 1988) ..............................................................................21-22

Tennessee v. Garner,
    471 U.S. 1 (1985) ...............................................................................................14

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010) ..............................................................................14-15

Universal Calvary Church v. City of New York,
    Nos. 96-cv-4606, 99-cv-9228, 99-cv-9227, 99-cv-12193, 99-cv-12247, 99-cv-
    9230, 2000 WL 1538019 (S.D.N.Y. Oct. 17, 2000) ..............................................23

Vasquez v. Klie,
    513 F. App'x 85 (2d Cir. 2013) (summ. order), cert. denied 569 U.S. 1022
    (2013) ...............................................................................................................12

Velasquez v. Bankich,
    No. 97-cv-8424, 2000 WL 1568326 (S.D.N.Y. Oct. 19, 2000) ...................17, 19-20, 22

Walczyk v. Rio,
    496 F.3d 139 (2d Cir. 2007) ...............................................................................24

Whitley v. Albers,
    475 U.S. 312 (1986)............................................................................................13

Wright v. Goord,
    554 F.3d 255 (2d Cir. 2009) ..............................................................................12-13

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) ..................................................................................16

Wright v. Yacovone,
    No. 12-cv-27, 2014 WL 1165834 (D. Vt. Mar. 21, 2014) ..........................................12

**U.S. CONSTITUION**

Eighth Amendment.......................................................................................... passim

**FEDERAL STATUTES**

42 U.S.C. § 1983 ...............................................................................1, 16, 20, 24

**RULES**

Federal Rule of Civil Procedure 56..............................................................1, 3, 10-11

S.D.N.Y. Local Rule 56.1 ................................................................. passim

**MISCELLANEOUS**

Hon. Philip M. Halpern's Individual Practices in Civil Cases R. 4(E)(ii).....................................6

## PRELIMINARY STATEMENT

Remaining Defendants Correction Officer ("CO") Nedzad Dapcevic ("Dapcevic"), CO Antonio Alban ("Alban"), and CO Brian Sturtevent ("Sturtevent") (collectively, "Defendants"), by their attorney, LETITIA JAMES, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983. On July 19, 2019, the Court granted Defendants' partial motion to dismiss, which left the excessive force and failure to intervene claims against Defendants in their individual capacities as the only remaining claims (ECF 49).[1]

Plaintiff alleges that on May 27, 2013, he was attacked by another inmate with a razor-like object while in the E&F Yard (the "Yard") at Green Haven Correctional Facility ("Green Haven"). Plaintiff was slashed repeatedly on the face and head. Plaintiff alleges that Defendants failed to protect him from this assault. (Am. Compl. ¶ 63 (ECF 40).) Following this attack, while bleeding profusely, Plaintiff picked a rock up off the ground and pursued inmate William Reyes ("Reyes"), whom Plaintiff believed was his perpetrator. Plaintiff followed Reyes through the Yard as Reyes eventually approached an area where Defendants were standing. Plaintiff continued his pursuit, reached Reyes, and the two inmates fell to the ground, exchanging punches, with Plaintiff landing on top of Reyes. Plaintiff used the rock he carried to strike Reyes in the head with. The inmates eventually stopped fighting and were restrained by staff.

Plaintiff alleges "Dapcevic and/or other defendant officers" used excessive force by striking him twice on the head with a baton, in violation of his Eighth Amendment rights. (Id.

---

[1] On March 19, 2021, Plaintiff voluntarily dismissed all claims against Sergeant Ronald Cabral ("Cabral"), CO Bryan Hess ("Hess"), CO Jonathan Markwick ("Markwick"), and CO Michael Vennero ("Vennero"). (See ECF 103.)

¶ 51.) Defendants deny this, but Dapcevic admits that he struck Plaintiff on Plaintiff's arm and shoulder area in order to get Plaintiff to drop the rock he still carried in his hand, and to comply with orders to get on the ground. Plaintiff admits that the only reason he dropped the rock from his hand was due to Dapcevic's use of the baton. Plaintiff also alleges that Defendants allowed Plaintiff and Reyes to come into contact with each other and failed to prevent the two from fighting. (See id. ¶ 62.) Defendants dispute this and maintain that they responded reasonably to an ongoing incident in which the inmates were not complying with their direct orders.

Notwithstanding these immaterial disputed issues of fact, which are discussed in more detail below, summary judgment in this matter should be granted. First, the law is well-established that summary judgment is appropriate—even when the parties offer conflicting accounts—when, accepting the non-moving party's account as true, there is no viable claim. Here, even accepting Plaintiff's version of facts as true, Dapcevic was authorized to use, and did use, reasonable and necessary force—up to and including deadly force—in the defense of Reyes (whom Plaintiff was admittedly striking in the head with a rock), in self-defense, and in the defense of all others in the Yard at that time. Additionally, to the extent the Amended Complaint alleges that all Defendants used excessive force, there is no evidence that anyone other than Dapcevic struck Plaintiff.

Second, even if Plaintiff's version of the evidence is accepted as true, summary judgment on all remaining Eighth Amendment claims against Defendants is warranted. With respect to Plaintiff's claim that Defendants failed to protect Plaintiff, or were deliberately indifferent to Plaintiff's safety, by failing to prevent Plaintiff from getting cut by another inmate, the undisputed evidence shows that Defendants were not in Plaintiff's vicinity and had no prior knowledge that any inmate was planning on assaulting him. Regarding any failure to protect or deliberate indifference claim concerning the fight between Plaintiff and Reyes, summary judgment is

warranted because the evidence shows that Defendants did not have a realistic opportunity intervene and, in any event, under Plaintiff's version of events, it was reasonable for Defendants to get away from the inmates after Reyes assaulted Alban. Additionally, summary judgement is warranted on any claim that Alban and Sturtevent failed to protect Plaintiff from Dapcevic's use of force. Preliminarily, the force used by Dapcevic was reasonable and, in any event, the evidence establishes that Alban and Sturtevent did not see Dapcevic use his baton and had no knowledge he would do so, which eliminates any realistic opportunity they had to intervene.

Finally, summary judgment is warranted on the basis of qualified immunity.

## STATEMENT OF RELEVANT FACTS

Plaintiff was an inmate incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Green Haven Correctional Facility ("Green Haven") on May 27, 2013. (Defs.' Statement of Material Facts Pursuant to Fed. R. Civ. P. 56 & Local R. 56.1 With Pl.'s Am. Resp., & Pl.'s Add'l Material Facts With Defs.' Resp. ("56.1") ¶ 1; see DOCCS Inmate Information (attached to Decl. of Deanna L. Collins ("Collins Decl.") at Ex. A); Unusual Incident Report (attached to Collins Decl. at Ex. B) at 1 (identifying facility where Plaintiff was incarcerated on May 27, 2013).) That evening, while it was still daylight, Plaintiff was in the Green Haven E&F Yard (the "Yard") sitting at a table and playing cards with another inmate. (56.1 ¶ 2; see Pl.'s Dep. Tr. (attached to Collins Decl. at Ex. C) 34:16—35:5, 68:20—69:5.)

The Yard is large, approximately 100-110 yards by 100-110 yards, and contains several features such as weight benches, a basketball court, showers, tables, televisions, and phones. (56.1 ¶ 3; see Decl. of Antonio Alban ("Alban Decl.") ¶ 6; Decl. of Ron Cabral ("Cabral Decl") ¶ 6; Decl. of Nedzad Dapcevic ("Dapcevic Decl.") ¶ 6; Decl. of Bryan Hess ("Hess Decl.") ¶ 5; Decl. of Brian Sturtevent ("Sturtevent Decl.") ¶ 6; Decl. of Michael Vennero ("Vennero Decl.") ¶ 5;

Pl.'s Dep. Tr. 65:2-7;  see also Cabral Decl. ¶ 6 & Ex. A (Google Maps satellite image of Green Haven and indicating where the Yard is located).)

The table at which Plaintiff was sitting was located in the corner of the Yard, diagonal from the F&G Corridor door. (56.1 ¶ 4; see Pl.'s Dep. Tr. 41:19—47:3 (Plaintiff describing the Yard and the area in which he was located, identifying with a red "X" the area where he was playing cards, and stating he was near the "bathroom"); id. 59:2-5 (Plaintiff testifying he was playing cards with another inmate in that area); see also 56.1 ¶ 11; Pl.'s Dep. Tr. 34:16—37:6 (Plaintiff testifying that as he played cards, an inmate cut him, and then Plaintiff and Reyes left the card-playing area, walked through the Yard, and ended up "across the whole Yard" in front of the correction officers); 56.1 ¶ 14; Pl.'s Dep. Tr. 34:16—37:6, 60:4-24, 62:14—68:5, 69:6—70:16, 70:22—73:13 (Plaintiff testifying where he and Reyes went throughout the Yard until they ended up near the area near where the officers were located, which was near the "corridor door," marking with a blue "R2" on the diagram of the Yard as the area where Reyes stopped near the officers, marking with black "Y"'s on the diagram the area where the officers were positioned near that door); Alban Decl. ¶ 9 (identifying this area as near the "F&G Corridor door"); Dapcevic Decl. ¶ 8 (same); Sturtevent Decl. ¶ 7 (describing the area where Plaintiff was playing cards as in the corner of the Yard "diagonal" from the F&G Corridor door); Pl.'s Dep. at Defs.' Ex. A (attached to Collins Decl. at Ex. D), at p. 2 (diagram of the Yard which depicts as a red "X" in the upper right hand corner of the document near the word "Bathroom" the area where Plaintiff was sitting at a table playing cards, depicting the Blue "R2" as the area where Reyes stopped near the officers, and depicting black "Y"'s as the area where the officers were positioned near the F&G Corridor door).)

Defendants were working in the Yard during this time. (56.1 ¶ 5; see Alban Decl. ¶ 4; Dapcevic Decl. ¶ 4; Sturtevent Decl. ¶ 4.) There are generally only two to three officers physically

4

inside the Yard during recreation periods, although additional officers are sometimes assigned. (56.1 ¶ 5; see Alban Decl. ¶ 5; Cabral Decl. ¶ 5; Dapcevic Decl. ¶ 5; Hess Decl. ¶ 4; Sturtevent Decl. ¶ 5; Vennero Decl. ¶ 4; see also Dep. Sup't of Sec. Edward Burnett Dep. Tr. ("Burnett Dep. Tr.") 44:12—45:5 (attached to Collins Decl. at Ex. E).) On May 27, 2013, there were between approximately 300 and 600 inmates in the Yard during this recreation period. (56.1 ¶ 10; see Alban Decl. ¶ 6; Cabral Decl. ¶ 6; Dapcevic Decl. ¶ 6; Hess Decl. ¶ 5; Sturtevent Decl. ¶ 6; Vennero Decl. ¶ 5; see also Pl.'s Dep. Tr. 102:4-9.) On May 27, 2013, there were, at most, between only 3 and 7 officers inside the Yard at any point. (56.1 ¶ 5.)[2]

Officers in the Yard are responsible for ensuring the safety and security of all inmates as well as each other in the Yard. (56.1 ¶ 6; see Alban Decl. ¶ 7; Cabral Decl. ¶ 7; Dapcevic Decl. ¶ 7; Sturtevent Decl. ¶ 7; Burnett Dep. Tr. 45:10-17, 46:14-19.) The Yard is also overseen by one or two officers stationed to the East Roof, which overlooks the Yard, and which is approximately 40 feet (or three stories) high. As part of their assigned duties, the Roof Officers are equipped with firearms and their duties also include ensuring the safety and security of the inmates and officers in the Yard. (See 56.1 ¶¶ 7-8; Cabral Decl. ¶ 5; Hess Decl. ¶¶ 4-5; Vennero Decl. ¶¶ 4-5; see also Alban Decl. ¶ 5; Dapcevic Decl. ¶ 5; Sturtevent Decl. ¶ 5.)

While Plaintiff was sitting at a table in the corner of the Yard diagonal from the F&G Corridor door playing cards, another inmate came up from behind him and cut him in the face, head, and ear with a razor-like object. This incident lasted for approximately one second until Plaintiff spun out of the inmate's grasp and fell to the ground. He then stood up and picked up a rock from the ground. (56.1 ¶¶ 11, 26; see Pl.'s Dep. Tr. 34:16—37:6, 41:9—47:3, 59:2-15,

---

[2] Plaintiff maintains that, in addition to the three defendants, there were 3 to 4 additional officers in the Yard at the time relevant to this litigation. (See Pl.'s Resp. 56.1 ¶ 5.) Although Defendants dispute that there were other officers in the Yard at the time of the incident involving Plaintiff, this factual dispute is not material to Defendants' motion because in either scenario, the officers were substantially outnumbered by inmates.

59:24—60:3, 61:25—62:13;  Pl.'s Dep. Tr. at Defs.' Ex. A, at p. 2 (depicting as a red "X" in the upper right hand corner of the document near the word "Bathroom" the area where Plaintiff was playing cards); Use of Force Report – Part B (attached to Collins Decl. at Ex. F); Photos of Plaintiff following the incident (attached to Collins Decl. at Ex. G); see also Alban Decl. ¶ 10; Dapcevic Decl. ¶ 8; Sturtevent Decl. ¶ 10.) The rock measured approximately 3 inches by 4 inches. (56.1 ¶ 13; see Alban Decl. ¶ 14 & Ex. A (photographs of rock).)[3]

Defendants did not observe Plaintiff getting cut by the other inmate and had no prior knowledge that any inmate intended to assault Plaintiff. (56.1 ¶ 12; see Alban Decl. ¶¶ 10, 15; Dapcevic Decl. ¶¶ 8, 14; Sturtevent Decl. ¶¶ 10, 15; Pl.'s Dep. Tr. 123:24—124:12.)[4]

When Plaintiff stood up, with the rock in hand, he saw Reyes. Plaintiff approached Reyes and Reyes backed away. Plaintiff followed Reyes around the Yard, ending up near where Defendants were standing in the vicinity of the F&G Corridor door. Plaintiff continued to carry the rock in his hand this entire time. (56.1 ¶¶ 11, 14; see Pl.'s Dep. Tr. 34:16—37:6, 59:16-23, 60:4-24, 62:14—68:5, 69:6—70:16, 70:22—73:13; Alban Decl. ¶¶ 9-10; Dapcevic Decl. ¶¶ 8-9; Sturtevent Decl. ¶¶ 10-11; Vennero Decl. ¶¶ 7-8.)[5]

---

[3] Plaintiff's response to 56.1 ¶ 13 states that Defendants did not provide Exhibit A to Alban's Declaration. However, the photographs of the rock were previously produced to Plaintiff during discovery. See Hon. Philip M. Halpern's Individual Practices in Civil Cases R. 4(E)(ii). Notwithstanding, after Plaintiff served his response to Defendants' 56.1 Statement, Defendants provided the photos to Plaintiff again, marked as "Exhibit A" to Alban's Declaration.

[4] Plaintiff's response to 56.1 ¶ 12 is insufficient to establish that the material facts within this paragraph are in dispute. The officers stated that they did not observe Plaintiff get slashed and had no prior knowledge that an inmate was going to assault Plaintiff that evening. The evidence cited by Plaintiff is his testimony that the Defendants were not near Plaintiff at the time of the assault—they were near the F&G Corridor door, which is on the other side of the Yard, which does not dispute Defendants' version. Plaintiff offers no affirmative evidence to dispute Defendants' evidence that they did not see the slashing or know in advance that it would occur. S.D.N.Y. Local R. 56.1(d). Moreover, Plaintiff does not have personal knowledge of what Defendants observed.

[5] Plaintiff's Response to 56.1 ¶ 14 does not establish that that any of the information in Defendants' ¶ 14 is in dispute, but instead attempts to add additional facts, which is not appropriate under Local Civil Rule 56.1. See S.D.N.Y. Local R. 56.1 (b); see also Goldstick v. The Hartford, Inc., No. 00-cv-8577 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (56.1 response which "adds argumentative and often lengthy narrative . . . the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make" does not comply with the Local Rule).

Defendants noticed Plaintiff when he was somewhere between 10 and 70 feet away from them. They noticed he was bleeding and carrying something in his hand, but they did not know what it was at that point. They approached him. (56.1 ¶ 15; see Pl.'s Dep. Tr. 71:25—75:16; Alban Decl. ¶¶ 10-11; Dapcevic Decl. ¶¶ 8-9; Sturtevent Decl. ¶¶ 10-11; see also Vennero Decl. ¶ 9.)[6] One of the officers called on his radio for other officers to respond to an incident in the Yard. (Defs. 56.1 ¶ 16; see Alban Decl. ¶ 14; Cabral Decl. ¶ 8; Dapcevic Decl. ¶ 13; Hess Decl. ¶ 9; Markwick Decl. ¶ 5; Sturtevent Decl. ¶ 10.)

Plaintiff testified at his deposition that after he was cut with the razor-like object, he was in a "fight for [his] life." He testified that when he approached the officers, the officers "semi" surrounded him, but inmate Reyes then grabbed CO Alban by Alban's shoulders and stood behind Alban, such that Alban was in between Reyes and Plaintiff. Plaintiff testified that Reyes held onto Alban with both of his hands on Alban's shoulders and "thr[ew] him around like a rag doll." He testified that a few seconds later, another officer then grabbed Alban away from Reyes' grasp and the officers backed away, which allowed the inmates to contact each other and physically fight, which they did. Plaintiff testified he still had the rock in his hand at this time and Reyes was holding the weapon allegedly used to cut Plaintiff earlier. (56.1 ¶ 19; see Pl.'s Dep. Tr. 34:22—37:6; 75:25—85:11.)

The inmates went to the ground exchanging blows. Plaintiff punched Reyes in the head and used the rock he continued to carry to hit Reyes on the head. (56.1 ¶¶ 20-21; see Pl.'s Dep. Tr.

---

[6] Plaintiff's Response to 56.1 ¶ 15 does not establish that that any of the information in Defendants' ¶ 15 is in dispute. Plaintiff does not cite to admissible evidence that disputes this information, see S.D.N.Y. Local R. 56.1(d), and, in any event, Plaintiff does not have personal knowledge of what Defendants saw or when they saw it.

34:16—37:6, 67:21-23, 73:11-13, 81:12-23, 82:18-25, 87:14—89:22; Alban Decl. ¶ 13, Dapcevic

Decl. ¶¶ 11-12; Hess Decl. ¶ 8; Sturtevent Decl. ¶¶ 12-14; Vennero Decl. ¶ 8.)[7]

Dapcevic struck Plaintiff with a baton. (Defs.' 56.1 ¶ 22; see Pl.'s Dep. Tr. 90:14—91:7;

Dapcevic Decl. ¶ 13.)[8] Dapcevic maintains that Plaintiff ignored numerous orders to stop fighting

Reyes and then stood up, appeared agitated and angry, and moved around in multiple directions,

including in Dapcevic's direction. Dapcevic continued to order Plaintiff to stop, drop the rock that

Plaintiff still carried, and get onto the ground. However, Plaintiff refused. Because Plaintiff

ignored Dapcevic's repeated orders, Dapcevic used his baton to strike Plaintiff twice on Plaintiff's

right shoulder area, which caused Plaintiff to immediately drop the rock. (See Dapcevic Decl. ¶

13.) Plaintiff, however, maintains that Dapcevic struck him on the head with a baton, and that

Dapcevic did so at the point in which Plaintiff was on the ground, either actively striking Reyes or

otherwise trying to get space to get away from Reyes. (See Pl.'s Dep. Tr. 90:14—91:11, 92:18—

93:23, 94:6-22.) Under either scenario, Plaintiff maintains that he and Reyes were still engaged in

some type of fight at the point in time in which he was struck by the baton, and that Plaintiff

stopped fighting because Plaintiff was struck by the baton. (See 56.1 ¶ 23; Pl.'s Dep. Tr. 94:17-

---

[7] Plaintiff's Response to 56.1 ¶ 20 does not establish that any of the material facts in Defendants' ¶ 20 are in dispute, but instead, inappropriately attempts to add additional facts, without disputing the fact that the inmates fought and Plaintiff admittedly carried and used a weapon against Reyes. See Goldstick, 2002 WL 19062029, at *1; S.D.N.Y. Local R. 56.1(b).

[8] Although Plaintiff's Response to 56.1 ¶ 22 states that this material fact is in dispute, Plaintiff's "response" does not actually dispute it, and cites no admissible evidence to the contrary. Instead, the "response" inappropriately attempts to add additional facts, without disputing the fact described. See Goldstick, 2002 WL 19062029, at *1; S.D.N.Y. Local R. 56.1(b)-(d).

22; see also id. at 105:17-21, 107:19—108:2.)[9] Alban and Sturtevent did not see Dapcevic strike Plaintiff. (56.1 ¶ 22; see Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15.)[10]

Plaintiff and Reyes' fight on the ground and Dapcevic's use of the baton happened very quickly, at the most, one to three minutes. (56.1 ¶ 24; see Pl.'s Dep. Tr. 72:14-22; Hess Decl. ¶ 9; Vennero Decl. ¶¶ 8, 10; see also Pl.'s Resp. to 56.1 ¶ 24.)

After Plaintiff was struck with the baton, he laid on the ground and did not resist being placed into handcuffs. (56.1 ¶ 25; see Pl.'s Dep. Tr. 108:6-11; Dapcevic Decl. ¶ 13.) Plaintiff was then escorted to the medical clinic by Markwick, who responded to the response called over the radio. Plaintiff was then transported to a local hospital. (56.1 ¶ 26; see Cabral Decl. ¶ 8; Dapcevic Decl. ¶ 13; Markwick Decl. ¶ 5; Pl.'s Dep. Tr. 118:19—119:5.) Plaintiff was diagnosed with four lacerations to his head/face/ear area with the following descriptions: (1) a 10-centimeter laceration to his right temple, vertical, skull deep (to the bone), open with an approximate ½ centimeter gap, and bleeding profusely; (2) an approximate 3-centimeter superficial cut to his right cheek; (3) an approximate 1-centimeter laceration to the top of his head; and (4) an approximate 6-centimeter laceration to the right ear and back of head, very deep, which bisected the ear. (56.1 ¶ 26; see Use of Force Report – Part B (attached to Collins Decl. at Ex. F); Photos of Plaintiff following the incident (attached to Collins Decl. at Ex. G).) Plaintiff received approximately 65 sutures to close the lacerations. (56.1 ¶ 26; see Pl.'s Dep. Tr. 121:25—122:7.)

---

[9] Plaintiff's Response to 56.1 ¶ 23 does not establish that any of the material facts in Defendants' ¶ 23 are in dispute, but instead, inappropriately attempts to add additional facts that do not dispute the fact that Plaintiff testified at his deposition that he stopped fighting Reyes only after Dapcevic used force. See Goldstick, 2002 WL 19062029, at *1; S.D.N.Y. Local R. 56.1(b).

[10] Plaintiff's response to 56.1 ¶ 22 does not cite to any evidence to support his contention that the issue of whether Alban and Sturtevent did not see Dapcevic is disputed and accordingly, this fact is deemed admitted. See S.D.N.Y. Local R. 56.1 (b)-(d). Moreover, Plaintiff has no personal knowledge of what Alban and Sturtevent witnessed.

DOCCS Directive 4944 governs the use of physical force whereby physical action is taken by correctional staff to resolve an incident. (56.1 ¶ 27; <u>see</u> Directive 4944 at Parts I-II (attached to Collins Decl. at Ex. H).) Such physical force includes, but is not limited to, the use of batons and firearms. (56.1 ¶ 27; <u>see</u> Directive 4944 at Part II.) "Where it is necessary to use physical force, only such degree of force as is reasonably required shall be used." (56.1 ¶ 27; <u>see</u> Directive 4944 at Part III(B).) Physical force may not be used without prior approval from the Superintendent of the facility "[u]nless there is an immediate danger to safety, security or property." (56.1 ¶ 27; <u>see</u> Directive 4944 at Part III(D).) Further, physical force may not be used "unless the employee reasonably believes that the physical force to be used is reasonably necessary: for self-defense; to prevent a serious assault or gross destruction of property; to quell a disturbance; or to prevent an escape." (56.1 ¶ 27; <u>see</u> Directive 4944 at Part III(E).) A baton may be used "only when and to the extent that the employee reasonably believes such use is necessary: for self-defense; to prevent a serious assault or gross destruction of property; to quell a disturbance; or to prevent an escape." (56.1 ¶ 27; <u>see</u> Directive 4944 at Part III(F).)

## <u>STANDARD OF REVIEW</u>

Defendants are entitled to summary judgment where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Defendants moving for summary judgment on the merits of a substantive claim are not required to submit evidence negating plaintiff's claim, but to make a prima facie case by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-25 (1986); <u>see</u> <u>Duse v. IBM</u>, 252 F.3d 151, 158 (2d Cir. 2001) (defendant entitled to summary judgment if undisputed material facts reveal absence of sufficient

proof as to any essential element of a claim). Defendants' motion "must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

"[W]here there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial and cannot defeat a motion for summary judgment." Salahuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006).

"[C]onclusory statements, conjecture, or speculation by the party resisting the motion" will not defeat a motion for summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source and "set forth such facts as would be admissible in evidence." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). Evidence that would be inadmissible at trial will not suffice to defeat a summary judgment motion. Id. at 219.

As reflected by the language of Rule 56(a), to avoid summary judgment, there must be "genuine" disputes of "material" facts. "An issue of fact is genuine if evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet, 482 F.3d 184, 202 (2d Cir. 2007) (quotations marks omitted). Where the parties offer conflicting versions of the facts, and "[i]f, assuming the plaintiff's version of the disputed facts to be true, the defendants are nonetheless entitled to judgment as a matter of law, a court is free to grant their motion for summary judgment." Davidson v. Bartholome, 460 F. Supp. 2d 436, 444 (S.D.N.Y. 2006); accord, Jimenez v. Big M., Inc., 86 F. Supp. 2d 236, 240 n.5 (S.D.N.Y. 2000) ("As this is a motion for summary judgment, I must accept plaintiff's version of the facts rather than defendant's. Whether plaintiff was terminated or resigned is immaterial, however, as the decision

to discontinue plaintiff's employment with Big M was not discriminatory[.]"); Wright v. Yacovone, No. 12–cv–27, 2014 WL 1165834, at *6 (D. Vt. Mar. 21, 2014) ("Although there are several contested facts in this case, they are not material in a summary judgment determination because, even accepting Plaintiff's version of these facts as true, they do not preclude judgment as a matter of law in Defendants' favor."). In affirming summary judgment for defendants on qualified immunity grounds, the Court of Appeals has held that "[r]elying on plaintiff's version of the facts and drawing all reasonable inferences therefrom, it was objectively reasonable for defendant Klie to use additional force under the circumstances." Vasquez v. Klie, 513 F. App'x 85, 86 (2d Cir. 2013) (summ. order), cert. denied 569 U.S. 1022 (2013).

## ARGUMENT

### POINT I

**SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIMS MUST BE GRANTED BECAUSE THE EVIDENCE ESTABLISHES THAT DAPCEVIC'S USE OF FORCE WAS REASONABLE AND THAT ALBAN AND STURTEVENT DID NOT STRIKE PLAINTIFF**

Plaintiff maintains that Defendants used excessive force by striking him with a baton. (See Am. Compl. ¶¶ 50-54.) However, as discussed below, summary judgment must be granted because the evidence establishes that Dapcevic's use of force was reasonable under the circumstances in order to stop Plaintiff from using deadly force on Reyes, and there is no evidence that either Alban or Sturtevent struck Plaintiff.

The Eighth Amendment's prohibition against cruel and unusual punishment confers upon inmates a "right to be free from the 'unnecessary and wanton infliction of pain' at the hands of prison officials." Romano v. Howarth, 998 F.2d 101, 104 (2d Cir.1993) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); see Hudson v. McMillian, 503 U.S. 1, 5 (1992). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one

subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). The inmate must show that, objectively, "the alleged wrongdoing was . . . 'harmful enough' to establish a constitutional violation." Id. (quoting Hudson, 503 U.S. at 8). This inquiry is "context specific, turning upon contemporary standards of decency." Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir.1999) (internal quotation omitted). "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 321-22 (1986)). To evaluate this claim, the Court should "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat, 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley, 475 U.S. at 321). "[E]qually relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321. The Court should also be mindful that "[w]hen the 'ever-present potential for violent confrontation and conflagration ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight." Id. (internal quotation marks and citations omitted).

Here, taking as true the undisputed facts and Plaintiff's version of the events where there is a conflict, it is clear that Dapcevic's use of force was objectively reasonable and therefore not excessive because Plaintiff was using deadly force on Reyes. Plaintiff admits that he was punching and hitting Mr. Reyes in the head with a rock that measured three by four inches, as he and Reyes fought on the ground. (56.1 ¶¶ 20-21; see Pl.'s Dep. Tr. 34:16—37:6, 67:21-23, 73:11-13, 81:12-

23, 82:18-25, 87:14—89:22;  Alban Decl. ¶ 13; Dapcevic Decl. ¶¶ 11-12; Hess Decl. ¶ 8; Sturtevent

Decl. ¶¶ 12, 14; Vennero Decl. ¶ 8; see also 56.1 ¶ 13; Alban Decl. ¶ 14 & Ex. A; supra n.6.) Under

Plaintiff's version of events, Plaintiff did not stop fighting  Reyes—and did not stop using the rock

to hit Reyes on the head with—until  Dapcevic used the baton. Although  Dapcevic disputes that he

struck Plaintiff  on the head, even if he had, under Plaintiff's  version of events, Dapcevic was

authorized  to make a split-second  decision  to use a baton in this manner  to stop the deadly force

that Plaintiff  was incurring  on Reyes by using the rock as a weapon  to hit Reyes in the head with.

(56.1 ¶ 27; see Directive  4944 at Part III(G)(1).) Indeed, "[w]hen an individual  attacks with a

deadly weapon, . . . correction officers may respond with commensurate force." Ford v. Phillips,

No. 05-cv-6646,  2007 WL 946703, at *5 (S.D.N.Y. Mar. 27, 2007) (citation omitted).  Plaintiff's

fists and the rock constituted  deadly weapons,  and Plaintiff  was therefore  clearly an imminent

threat to Reyes' safety. "Given this use of potentially  lethal force, and given that [Dapcevic] had

to react quickly  to save" Reyes, Ford, 2007 WL 946703, at *7, which Dapcevic did, (see 56.1 ¶

24; Pl.'s Dep. Tr. 72:14-22;  Hess Decl. ¶ 9; Vennero Decl. ¶¶ 8-10; see also Pl.'s Resp. to 56.1 ¶

24)—as well as to protect Plaintiff,  as both inmates were in a "fight for [their] li[ves]," (Pl.'s Dep.

Tr. 35:13)—Dapcevic  was "legally  authorized  to respond . . .  with significant  force of [his] own,

perhaps including  deadly force," Ford, 2007 WL 946703, at *7 (citing Tennessee v. Garner, 471

U.S. 1, 11-12 (1985)); see also, e.g., Tracy v. Freshwater,  623 F.3d 90, 96 (2d Cir. 2010) (quoting

Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006)) (internal quotation marks omitted) (court must

"'make allowance  for the fact that . . . officers are often forced to make split-second  judgments—

in circumstances that are tense, uncertain, and rapidly  evolving—about  the amount of force that is

necessary in a particular  situation'"); id. at 97 (force not excessive where officer struck plaintiff

with metal flashlight  where, inter alia, plaintiff  made a sudden movement  and actively resisted

14

arrest, officer did not have assistance, and it was objectively reasonable that risk to officer's safety was real and imminent). Indeed, Plaintiff offers no reason for ceasing hitting Reyes other than being struck with the baton. (See Pl.'s Resp. 56.1 ¶ 23.) Accordingly, in order to stop the violence from continuing, Dapcevic's use of force was therefore both effective and reasonable.

Accordingly, because no reasonable jury could find that Dapcevic's use of force was unreasonable under the circumstances identified by Plaintiff's presentation of evidence, summary judgment on this claim must be granted.

Additionally, although the Amended Complaint alleges that all Defendants physically assaulted Plaintiff by striking him on the head with a baton, (Am. Compl. ¶ 51), there is no evidence that either Alban or Sturtevent did so. Instead, the undisputed evidence shows that only Dapcevic used his baton. (See 56.1 ¶ 22; see also Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15; supra nn.8-10.) Accordingly, because there is no evidence that Alban or Sturtevent struck Plaintiff, summary judgement on any excessive force claim against them must be granted.

### POINT II

### SUMMARY JUDGMENT MUST BE GRANTED FOR THE REMAINING EIGHTH AMENDMENT CLAIMS BECAUSE THERE IS NO EVIDENCE THAT WOULD ALLOW A REASONABLE JUROR TO CONCLUDE THAT DEFENDANTS FAILED TO INTERVENE OR WERE DELIBERATELY INDIFFERENT

The Amended Complaint alleges that all Defendants failed to protect Plaintiff from getting slashed by another inmate. (Am. Compl. ¶ 61.) However, summary judgment is warranted because the evidence shows that the officers were not in Plaintiff's vicinity and had no prior knowledge that any inmate was planning on assaulting him. Additionally, the Amended Complaint alleges that all Defendants failed to protect Plaintiff and Reyes from fighting. (See id. ¶ 62.) However, the evidence shows that Defendants did not have a realistic opportunity to so and, in any event, under Plaintiff's version of events, it was reasonable for the officers to get away from the inmates after

Reyes assaulted Alban. Finally, summary judgement is warranted on any claim that Alban and Sturtevent failed to protect Plaintiff from Dapcevic's use of force. As discussed above, the force was reasonable and, in any event, the evidence shows that Alban and Sturtevent did not see Dapcevic use his baton or know that he would do so, and therefore did not have a realistic opportunity to intervene.

It is well-settled that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), aff'd 426 F.3d 549 (2d Cir. 2005). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused . . . . is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Under the Eighth Amendment, prison officials must "ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation omitted). "This duty subsumes the protection of inmates from violence at the hands of other inmates." Brown v. Chambers, No. 92-cv-7622, 1995 WL 234681, at *2 (S.D.N.Y. Apr. 20, 1995), aff'd 99 F.3d 402 (2d Cir. 1995) (citing Farmer, 511 U.S. at 832). However, "[n]ot every inmate on inmate assault translates into a constitutional violation . . . . [P]rison officials do not violate the Eighth Amendment unless they are deliberately indifferent to the inmate's safety." Id.

16

To make out such a deliberate indifference claim, an inmate must establish two components. First, objectively, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id.

Second, he must establish that the prison official had "a sufficiently culpable state of mind," id. (internal quotation omitted), which is established where the inmate shows the defendant, subjectively, "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result," Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (quoting Salahuddin, 467 F.3d at 280). In other words, the plaintiff must show the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Actual knowledge may be established where "the perceived risk of harm was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" Velasquez v. Bankich, No. 97-cv-8424, 2000 WL 1568326, at *2 (S.D.N.Y. Oct. 19, 2000) (quoting Farmer, 511 U.S. at 842-43). However, "[a] one-time altercation between two inmates, even one recorded in the daily log, is not sufficient. The likelihood that other inmates will join a fight does not satisfy the subjective component of a deliberate indifference inquiry." Id. (citation omitted).

A. **Summary Judgment Must Be Granted For Any Claim Involving the Slashing**

Here, the record shows that Plaintiff cannot establish an Eighth Amendment claim against any Defendant with respect to his contention that Defendants failed to protect him from getting

17

slashed. First, the undisputed evidence shows that Defendants were not in Plaintiff's vicinity at the time Plaintiff was assaulted with the razor-like object. Instead, the evidence shows that the Yard is large, approximately 100-110 yards by 100-110 yards and, at the time of the incident, was full of individuals, as there were anywhere from 300 to 600 inmates therein. (See 56.1 ¶¶ 3, 10; see also Alban Decl. ¶¶ 6, 9; Cabral Decl. ¶ 6 & Ex. A; Dapcevic Decl. ¶¶ 6, 8; Sturtevent Decl. ¶¶ 6-7; Vennero Decl. ¶ 5; Pl.'s Dep. Tr. 65:2-7, 102:4-9.) The evidence also shows that Plaintiff was sitting at a table at one area of the Yard and Defendants were on the other side near the F&G Corridor door. (See 56.1 ¶¶ 2, 4, 11, 14; see also Pl.'s Dep. Tr. 34:16—37:6, 41:19—47:3, 59:2-5, 60:2-24, 62:14—68:5, 69:6—70:16, 70:22—73:13; Pl.'s Dep. Tr. Ex. A at p. 2.)

Further, the evidence also shows that this event happened very quickly, approximately one second, (56.1 ¶ 11; see also Pl.'s Dep. Tr. 62:7-13), and that Defendants did not witness Plaintiff get cut, (56.1 ¶ 12; see also Alban Decl. ¶¶ 10, 15; Dapcevic Decl. ¶¶ 8, 14; Sturtevent Decl. ¶¶ 10, 15; Venenro Decl. ¶¶ 11-12; Pl.'s Dep. Tr. 123:24—124:12; supra n.4). Accordingly, there is no evidence that Defendants had a reasonable opportunity to intervene before Plaintiff was cut by an inmate. "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (citing Anderson, 17 F.3d at 557); see also Jeffreys, 275 F. Supp. 2d at 474. For this reason, summary judgment on this claim should be granted. See, e.g., Campbell v. Prue, No. 16-cv-0004, 2018 WL 4635708, at *8 (N.D.N.Y. July 3, 2018) (Rep. & Recommendation), adopted by 2018 WL 3574871 (N.D.N.Y. July 25, 2018) (summary judgment appropriate where defendant did not witness assault and was not near location of assault when it occurred).

To the extent Plaintiff maintains that Defendants are liable due to their alleged knowledge of, and disregard for, a substantial risk of harm to Plaintiff due to prior assaults that occurred in

the Yard, any such argument must be rejected. The undisputed evidence shows that Defendants had no prior knowledge that any inmate was planning on attacking Plaintiff that day. (See 56.1 ¶ 12; see also Alban Decl. ¶¶ 10, 15; Dapcevic Decl. ¶¶ 8, 14; Sturtevent Decl. ¶¶ 10, 15; supra n.4.) Without more, Plaintiff fails to establish the subjective prong of any deliberate indifference claim for this incident. See, e.g., Campbell, 2018 WL 4635708, at *8 (where defendant had no knowledge of any threat to plaintiff made by an inmate, defendant could not have inferred plaintiff would be assaulted); Brown, 1995 WL 234681, at *3 (prison officials not deliberately indifferent where plaintiff was stabbed by another inmate without prior knowledge of attack); see also Velasquez, 2000 WL 1568326, at *2 (actual knowledge of risk required); c.f., e.g., Desulma v. City of New York, No. 98-cv-2078, 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (Rep. & Recommendation), adopted by No. 98-cv-2078 (ECF 59) (S.D.N.Y. Dec. 11, 2001) (subjective prong not established where defendant witnessed inmates verbally telling plaintiff to get away from them and plaintiff would "pay a price," which he did not believe posed a substantial risk to plaintiff's safety).

Moreover, Plaintiff offers no evidence to suggest that Defendants' alleged failure to be nearer to Plaintiff at the time of the attack created a substantial risk to his safety. For example, there is no evidence that, had Defendants been in a different location, the inmate (who has never been identified) would not have still attacked Plaintiff. See Campbell, 2018 WL 4635708, at *6-8 (citations omitted); Desulma, 2001 WL 798002, at *6-7 (plaintiff failed to show substantial risk or a serious threat to his safety where the evidence showed that he had had no prior altercations with the inmates who attacked him and where he had been threatened with a knife by the inmates on one prior occasion); see also Garcia v. Witkowski, 988 F. Supp. 2d 360, 362-63 (W.D.N.Y. 2013) (granting summary judgment for defendants where plaintiff alleged, inter alia, that

19

defendants were deliberately indifferent to a substantial risk to his safety by failing to adequately monitor yard, where plaintiff was attacked by other inmates with a knife, because there was no evidence that defendants had "actual knowledge of any specific threat," and defendants could not have foreseen the attack on plaintiff, and defendants were not personally involved); Velasquez, 2000 WL 1568326, at *2 (actual knowledge required). At most, Plaintiff's claim amounts to mere negligence, which is insufficient for a § 1983 claim. See Garcia, 988 F. Supp. 2d at 362 ("the most that can be said is that defendants were negligent, in not taking sufficient steps to prevent assaults in the recreational yard generally," which is insufficient to establish constitutional liability).

Plaintiff's contention that defendants should be responsible for the assault on him by another inmate because the Yard is a dangerous place seeks the creation of a no-fault standard that is incompatible with Eighth Amendment principles requiring subjective deliberate indifference to a substantial risk of serious harm. Accordingly, summary judgment with respect to the claim regarding the slashing Plaintiff received by another inmate must be granted for Defendants.

**B. Summary Judgment Must Be Granted For Any Claim Involving The Fight Between Plaintiff And Reyes**

Similarly, the evidence fails to establish an Eighth Amendment claim with respect to the fight between Plaintiff and Reyes. Plaintiff maintains that Defendants were somehow deliberately indifferent when Plaintiff approached them, bleeding, and that they then stepped away, which enabled the inmates to connect and fight. (See Am. Compl. ¶¶ 62, 64.)

However, Defendants will testify at trial that they did not know, at this point, that Plaintiff and Reyes were going to fight each other, as they did not see Reyes or understand what exactly was going on until Plaintiff ran away from them and toward Reyes, caught up with Reyes, and attacked Reyes. (See Alban Decl. ¶¶ 10-11, 15; Dapcevic ¶¶ 8-11, 14; Sturtevent Decl. ¶¶ 9-12, 15.) Accordingly, under Defendants' version of events, judgment as a matter of law would be

appropriate, as Defendants had no knowledge that a fight would occur and therefore did not have the requisite subjective mental state to have acted deliberately indifferent to a risk that Plaintiff would be harmed by such a fight.

Under Plaintiff's version of events, however, summary judgment is still appropriate. Plaintiff testified at his deposition that when he approached Defendants, the officers "semi-surrounded him and then Reyes physically grabbed Alban and "threw him around like a ragdoll." Plaintiff testified that Reyes then grabbed Alban's shoulders from behind Alban and held onto Alban with both of his hands, "throwing him around like a rag doll." He then testified that a few seconds later, another officer grabbed Alban from Reyes' grasp and the officers backed away from the inmates, which consequentially enabled the inmates to contact each other and physically fight. The evidence also shows that throughout this event, Plaintiff still carried the rock in his hand. Although Defendants did not know that it was a rock, they were aware that he carried something in his hand, and were also aware that something had happened—although they were not sure what—due to Plaintiff's physical and agitated state. (See 56.1 ¶¶ 15, 19; see also Alban Decl. ¶¶ 10-11; Dapcevic Decl. ¶¶ 8-9; Sturtevent Decl. ¶¶ 10-11; Pl.'s Dep. Tr. 34:22—37:6, 71:25—75:16, 75:25—85:11; supra n.6.) They had also called for backup on the radio. (See 56.1 ¶ 16; see also Alban Decl. ¶ 14; Dapcevic Decl. ¶ 13; Sturtevent Decl. ¶ 10.)

In such immediate circumstances, it was reasonable for an officer to grab Alban away from Reyes' grasp, and for all of the officers, as Plaintiff alleges, to step away in order to get themselves away from the direct danger posed by the inmates, while awaiting backup. Indeed, "[p]rison officials have no duty to put their own safety at risk to stop an altercation between inmates – prison officials only are required to act reasonably to protect the inmates." Brown, 1995 WL 234681, at *4. "It would be unreasonable as a matter of law to expect that an unarmed guard would intervene

physically between two fighting inmates." Id. (citations omitted); cf. id. (quoting Stubbs v. Dudley, 849 F.2d 83, 86-87 (2d Cir. 1988)) ("prison official's failure to prevent assault actionable because defendant had 'fair opportunity to afford [inmate] protection at no risk to himself or the security of the prison'" where defendant had sufficient time to allow plaintiff to pass through a gate along with him in order to protect themselves from attacking inmates, but instead, defendant passed through gate by himself and locked it behind him, thereby preventing plaintiff from passing through). "Correction officers are not required to risk their own welfare in order to protect an inmate since 'the constitution imposes a standard of human decency, not superhuman courage.'" Velasquez, 2000 WL 1568326, at *3 (quoting Stubbs, 849 F.2d at 86-87); see also Farmer, 511 U.S. at 844 ("Prison officials who actual knew of a substantial risk to inmate health or safety may be found free from liability if they respond reasonably to the risk, even if the harm ultimately was not averted."); see also Green v. Leubner, No. 07-cv-1035, 2009 WL 3064749, at *7-8 (N.D.N.Y. Sept. 22, 2009) (collecting cases and holding officer acted objectively reasonably for purposes of deliberate indifference to safety claim where officer called for backup after becoming aware of situation and did not attempt to intervene); Velasquez, 2000 WL 1568326, at *3 (no deliberate indifference where officers did not "risk their personal safety by jumping into the midst of a riot to assert order before needed reinforcements could arrive").

Accordingly, summary judgment must be granted.

## C. Summary Judgment Must Be Granted On Any Claim That Alban And Sturtevent Failed To Protect Plaintiff From Dapcevic's Use Of Force

To the extent Plaintiff maintains that Alban and Sturtevent were deliberately indifferent in failing to protect Plaintiff from Dapcevic's use of the baton, summary judgment must be granted.

Preliminarily, as discussed in Point I, supra, Dapcevic's use of force was not excessive. Accordingly, Alban and Sturtevent cannot be liable for failing to intervene to stop Dapcevic. See,

e.g., <u>Scott v. City of White Plains</u>, No. 10-cv-1887, 2013 WL 1313774, at *8 (S.D.N.Y. Mar. 18, 2013) (citing <u>Anderson</u>, 17 F.3d at 557) ("defendants were under no obligation to intervene where the underlying use of force was not excessive"); <u>Santana v. City of Hartford</u>, 283 F. Supp. 2d 720, 728 (D. Conn. 2003) (where first officer did not use excessive force, second officer did not have a constitutional duty to intercede).

In any event, the undisputed evidence establishes that neither Alban nor Sturtevent witnessed Dapcevic use the baton, and there is no evidence that either officer knew Dapcevic would do so. (<u>See</u> 56.1 ¶ 22; <u>see also</u> Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15; <u>supra</u> n. 10.) "[A]n officer is not liable for preventable harm caused by another officer unless the officer <u>observes</u> and <u>has reason to know</u> that . . . excessive force is being used; . . . or a constitutional violation has been committed; and . . . the officer had a realistic opportunity to intervene and protect the harm from occurring." <u>Universal Calvary Church v. City of New York</u>, Nos. 96-cv-4606, 99-cv-9228, 99-cv-9227, 99-cv-12193, 99-cv-12236, 99-cv-12247, 99-cv-9230, 2000 WL 1538019, at *9 (S.D.N.Y. Oct. 17, 2000) (emphasis added) (citing <u>Anderson</u>, 17 F.3d at 557).

Without knowing that Dapcevic was using a baton, it cannot be said that Alban or Sturtevent had a reasonable opportunity to stop such an action or acted with the requisite mental state for any deliberate indifference claim.

Accordingly, summary judgment must be granted.

## POINT III

## IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO QUALIFIED INDEMNITY

As discussed in Points I-II, <u>supra</u>, summary judgment should be granted for Defendants because the evidence establishes that Dapcevic's use of force was reasonable, Defendants did not assault Plaintiff, and Defendants did not fail to intervene or act with deliberate indifference to

Plaintiff's safety. In any event, in the alternative, summary judgment should be granted because Defendants are entitled to qualified immunity.

"Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." Barboza v. D'Agata, 676 F. App'x 9, 12 (2d Cir. 2017) (summ. order). To determine whether qualified immunity applies, courts employ a two-step analysis: "First, do the facts show that the officer's conduct violated plaintiff's constitutional rights? Second, if there was a constitutional violation, was the right clearly established at the time of the officer's actions?" Id. "[E]ven if the right at issue was clearly established[,] . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." Id. (quoting Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)) (alterations omitted).

Here, even under Plaintiff's version of the events, officers of reasonable competence could disagree as to whether Dapcevic's actions to stop Plaintiff from repeatedly punching Reyes and hitting Reyes in the head with a rock were necessary. By Plaintiff's own account, Plaintiff was throwing multiple punches and hitting Plaintiff in the head with a rock as Reyes lay on the ground. Although Plaintiff maintains he did not hear the officers' verbal commands to stop, he admits that he did not stop attacking Reyes until Dapcevic used the baton. Accordingly, reasonable officers may disagree as to whether a baton strike was necessary to protect Reyes, as well as Dapcevic and the other officers and inmates in the Yard during this rapidly-evolving situation. For this reason as well, qualified immunity is warranted with respect to the other Defendants' failure to prevent or stop Dapcevic from utilizing this force.

Further, no reasonable officer could find that Defendants' failure to prevent an inmate from cutting Plaintiff was unlawful. No officer can be in every location in a yard that is the size of the Yard, and no officer can see every single inmate inside the Yard and what each inmate is doing during every second of a recreation period, particularly when there are between 300 and 600 inmates inside.

Finally, qualified immunity is warranted for any claim that Defendants failed to protect Plaintiff from the fight with Reyes. Defendants were not aware of what was going to happen; although it appeared that something had happened based on Plaintiff's physical appearance and agitated state, it was not evident that a fight would occur. Moreover, officers of reasonable competence could believe that, under Plaintiff's version of events, Defendants' actions in taking steps away from the inmates after Reyes grabbed Alban and threw him around were reasonable.

Accordingly, because reasonable officers could disagree as to whether Defendants' actions were justified, qualified immunity must be granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety and the claims against Defendants dismissed.

Dated: Westchester County, New York
        April 2, 2021

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
By:
 /s/ Deanna L. Collins
Deanna L. Collins
Assistant Attorney General
28 Liberty Street - 18th Floor
New York, New York 10005
Tel. (212) 416-8906
Deanna.Collins@ag.ny.gov

25