UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
WILLIAM CONSTANT,                              :
                                                                        :     16-CV-3985 (PMH)
                   Plaintiff,                      :
                                                                        :     **DECLARATION OF**
     -against-                                           :     **MICHAEL VENNERO**
                                                                        :
N. DAPCEVIC, et al.,                              :
                                                                        :
                   Defendants.               :
-------------------------------------------------------X

       MICHAEL VENNERO, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

       1.     I am a defendant in this action and submit this declaration based upon my personal knowledge and a review of documents prepared by New York State Department of Corrections and Community Supervision ("DOCCS") personnel in the ordinary course of business and maintained by DOCCS in the ordinary course of business, in support of defendants' partial motion for summary judgment.

       2.     I am employed as a Correction Officer ("CO") by DOCCS and currently at Marcy Correctional Facility. I have been employed by DOCCS since on or about July 19, 2010. From on or about September 2010 to on or about June 2013, I worked at Green Haven Correctional Facility.

       3.     I understand Plaintiff filed this lawsuit alleging that CO Dapcevic struck him on his head with a baton and that correctional staff including myself failed to protect him from various assaults on the evening of May 27, 2013 in the E&F recreation yard. I deny these allegations.

       4.     On May 27, 2013, CO Hess and myself were assigned as the East Side Roof Officers. Our duties included overlooking the two recreation yards on the East side, which included the E&F Yard, and ensuring the safety of the inmates and officers therein. We are equipped with

firearms. There are generally three officers physically inside the E&F Yard during recreation periods.

5. E&F Yard is quite large, approximately 100 yards by 100 yards. The roof upon which Roof Officers are stationed is approximately 40 feet in high, or three stories high. The E&F Yard has several features, including weight benches, a basketball court, showers, tables, televisions, and phones. On May 27, 2013, there were approximately 300 inmates in the E&F Yard for the evening recreation period. As Roof Officers, CO Hess and I constantly monitored the Yard for signs of suspicious activity and violence.

6. Roof Officers are authorized to use force, up to and including deadly force, by firing weapons when we reasonably believe such force is necessary to protect the lives of the individuals in the Yard. We are also equipped to drop CS gas canisters (commonly known as tear gas), which would be done when there is a riot or similar large-scale event occurring. The consequences of dropping gas include temporary blinding of individuals in the yard, including officers and inmates, which can be extremely dangerous to those in the Yard in that they cannot see to defend themselves.

7. When I first noticed the inmate whom I have come to learn is Plaintiff in the Yard on May 27, 2013, I observed him walking very fast after another inmate, whom I also later learned was William Reyes. They were moving very quickly through the weight court area. Because of the suspicious nature of their movements, I immediately notified my partner of the situation and we both grabbed our weapons and continued to monitor the inmates' actions. I was equipped with the gas gun and CO Hess was equipped with the rifle.

8. Plaintiff pursed Mr. Reyes around the yard for approximately 25-30 seconds. When Plaintiff caught up with Mr. Reyes, the inmates squared off for a split second with their fists up in

a fighting stance, and then Plaintiff took Mr. Reyes to the ground, got on top of him, and began punching him several times. From my position on the roof, I was approximately 75 to 100 yards away.

9. I did not observe what others in the yard were doing while Plaintiff was pursuing Mr. Reyes, as I was focused on Plaintiff and Mr. Reyes. When the inmates squared off for a split second, I observed two officers approach the inmates. Although from my position on the roof I could not hear what anyone was saying, it appeared that at least one of the officers was giving the inmates verbal orders and using hand gestures indicating the inmates should stop fighting. The orders were not followed.

10. Within seconds of the inmates going to the ground, one of the officers grabbed Plaintiff from behind him and tried to get him off Mr. Reyes but was initially unsuccessful. Another officer then assisted. Other officers then arrived, and the inmates separated and were handcuffed.

11. I understand that Plaintiff was slashed with a sharp, razor-like object in his face shortly before he began to chase Mr. Reyes around, but I did not observe this incident and could not see whether any inmate had injuries.

12. I did not strike Plaintiff and I did not see anyone else strike Plaintiff in any way. I did not see Dapcevic use his baton. I did not see Plaintiff get cut with the razor-like object and I had no knowledge that this event was going to occur. I did not know that Plaintiff and Mr. Reyes were going to fight each other. I did not intentionally allow Plaintiff to be assaulted by any individual and I did not see any other officer do anything to allow Plaintiff to be assaulted. At no point did I reasonably believe that firing my weapon was necessary and so I did not fire my weapon. I did not leave my station on the roof because my duties at that post required me not to. Although Plaintiff alleges that I failed to protect him, there was nothing I could no to prevent the

inmate from cutting him, and nothing that I could do to prevent the fight between Plaintiff and Mr. Reyes.

13. Accordingly, the claims against me in this lawsuit should be dismissed.

Dated: Oneida, New York  
October 14, 2020

_____  
Michael Vennero