UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
 WILLIAM CONSTANT,

                                        Plaintiff,

                                                                        Docket No. 16 Civ. 3985 (PMH)

        -against-


 Corrections Officers N. DAPCEVIC, R. CABRAL, A.
 ALBAN, B. STURTEVANT, J. MARKWICK, B. HESS,
 M. VENNERO, and JOHN and JANE DOES 1-20, all
 Individual Defendants in their Individual and Official
 Capacities,

                                        Defendants.

--------------------------------------------------------------------X



PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



SOKOLOFF STERN LLP
*Attorneys for Plaintiff*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 130065

*Of Counsel:*
        Mark A. Radi
        Vernée C. Pelage

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................................ 10

ARGUMENT .............................................................................................................................. 12

    POINT I:    DEFENDANT OFFICER DAPCEVIC IS NOT ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S EXCESSIVE FORCE CLAIM ............................................................................ 12

    POINT II:    DEFENDANT OFFICERS ALBAN AND STURTEVENT ARE NOT ENTITLED TO
SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO INTERVENE CLAIM ................................. 17

    POINT III:    THE DEFENDANT OFFICERS ARE NOT ENTITLED TO SUMMARY JUDGEMENT
FOR THEIR FAILURE TO PROTECT PLAINTIFF FROM FURTHER ASSAULT BY INMATE REYES..... 19

    POINT IV:    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ................................. 23

CONCLUSION............................................................................................................................ 25

## TABLE OF AUTHORITIES

CASES

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ..................................................................................... 23, 24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...................................... 10, 11

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ........................................................................................... 23

*Barnes v. Harling*,
    368 F. Supp. 3d 573 (W.D.N.Y. 2019)................................................................. 16

*Bateman v. Permanent Mission of Chad to the United Nations in New York*,
    2021 WL 964272 (S.D.N.Y. Mar. 15, 2021)........................................................ 10

*Bonilla v. Brancato*,
    2002 WL 31093614 (S.D.N.Y. Sept. 18, 2002) .................................................... 24

*Brown v. Correction Officer Shon Chambers*,
    1995 WL 234681 (S.D.N.Y. Apr. 20, 1995) ........................................................ 23

*Cartier v. Lussier*,
    955 F.2d 841 (2d Cir. 1992) ............................................................................... 24

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................... 10

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ..................................................................................... 20, 21

*Ford v. Miller*,
    2007 WL 946703 (S.D.N.Y. Mar. 27, 2007)........................................................ 17

*Gardner v. Robinson*,
    2018 WL 722858 (S.D.N.Y. Feb. 6, 2018) ............................................................ 3

*George v. Burton*,
    2001 WL 12010 (S.D.N.Y. Jan. 4, 2001) ............................................................ 20

*Gibson v. Brooks*,
    335 F. Supp. 2d 325 (D. Conn. 2004)................................................................. 24

*Gillard v. Hamel*,
    2012 WL 967064 (N.D.N.Y. Feb. 24, 2012).......................................................................... 16

*Graham v. Kohl's Dep't Stores, Inc.*,
    2005 WL 2256603 (D. Conn. Sept. 8, 2005)......................................................................... 19

*Griffin v. Crippen*,
    193 F.3d 89 (2d Cir. 1999) ...................................................................................................... 13

*Hope v. Pelzer*,
    536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ....................................................... 24

*Hudson v. McMillian*,
    503 U.S. 1 (1992) ............................................................................................................ 13, 14

*Jean-Laurent v. Wilkinson*,
    540 F. Supp. 2d 501 (S.D.N.Y. 2008) .................................................................................... 18

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) .................................................................................................... 19

*King v. Department of Corr.*,
    1998 WL 67669 (S.D.N.Y.1998) ............................................................................................ 20

*Knowles v. New York City Dep't of Corrections*,
    904 F. Supp. 217 (S.D.N.Y. 1995) ......................................................................................... 20

*Lewis v. Siwicki*,
    944 F.3d 427 (2d Cir. 2019) .................................................................................................... 21

*Pugni v. Reader's Dig. Ass'n, Inc.*,
    2007 WL 1087183 (S.D.N.Y. Apr. 9, 2007) ............................................................................ 4

*Randle v. Alexander*,
    960 F. Supp. 2d 457 (S.D.N.Y. 2013) .................................................................................... 20

*Randolph v. Griffin*,
    816 F. App'x 520 .................................................................................................................... 12

*Rodriguez v. McGinnis*,
    1 F. Supp. 2d 244 (S.D.N.Y. 1998) ....................................................................................... 23

*Rodriguez v. Mercado*,
    2002 WL 1997885 (S.D.N.Y. Aug. 28, 2002)................................................................... 13, 14

*Romano v. Howarth*,
   998 F.2d 101 (2d Cir. 1993) ............................................................. 13, 14

*Rule v. Brine, Inc.*,
   85 F.3d 1002 (2d Cir.1996) ............................................................. 19

*Sutton v. Rodriguez*,
   2020 WL 5504312 (S.D.N.Y. Sept. 8, 2020) ...................................... 20

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ............................................................................ 17

*Usavage v. Port Auth. of New York & New Jersey*,
   932 F. Supp. 2d 575 (S.D.N.Y. 2013) ............................................. 10, 11

*Vacold, LLC v. Cerami*,
   545 F.3d 114 (2d Cir.2008) ............................................................. 10

*Vasquez v. Klie*,
   513 F. App'x 85 (2d Cir. 2013) ......................................................... 11

*Warren v. Goord*,
   476 F. Supp. 2d 407 (S.D.N.Y. 2007) ......................................... 19, 20, 21

*Whitley v. Albers*,
   475 U.S. 312 (1986) ..................................................................... 12, 13

*Wright v. Goord*,
   554 F.3d 255 (2d Cir. 2009) ............................................................. 13

*Zimmerman v. Macomber*,
   2001 WL 946383 (S.D.N.Y. Aug. 21, 2001) ...................................... 20

RULES

Fed.R.Civ.P. 56 .......................................................................... 2, 10

PRELIMINARY STATEMENT

Plaintiff William Constant submits this memorandum of law in opposition to defendants' motion for summary judgment. His complaint relates to a May 27, 2013 incident, where while in New York State Department of Corrections and Community Supervision custody, he was slashed by an inmate, abandoned by the Defendant Officers, required to defend himself from further attack, and later struck in his head by one of the Defendant Officers.

Defendant Dapcevic is not entitled to summary judgment on Plaintiff's excessive force claim because there are genuine issues of material facts regarding the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. Defendants look to gloss over the genuine issues, but a reasonable jury could find Officer Dapcevic acted wantonly when striking Plaintiff–who had been brutally attacked and was severely injured–in his head with a baton, an allegation the officer denies. A jury could also reasonably discredit Officers Alban and Sturtevent's claims they did not see the use of force–as evidence shows they were responding to the incident and in the vicinity–and find them liable for failing to prevent Officer Dapcevic from striking Plaintiff in his head with a baton. The Court should therefore allow a jury to hear the evidence and make the relevant findings of fact.

The Court should also permit a jury to hear evidence regarding the Defendant Officers' failure to protect Plaintiff from further attack from the inmate who had slashed him minutes earlier. The Officers had the opportunity to protect Plaintiff but instead, moved and created a clear path to him, which his attacker took advantage of, prompting a physical altercation. Defendants should not be granted summary judgment on this claim.

Nor are the Defendants entitled to qualified immunity. Officer Dapcevic testified it would not have been reasonable to strike Plaintiff in the head, yet he did so anyway. And no reasonable

1

officer would believe it reasonable to step away and allow an injured inmate to defend himself against additional physical attack. As set forth below, the Court should deny the Defendants' motion.

### STATEMENT OF FACTS

On May 27, 2013, Plaintiff William Constant was in New York State Department of Corrections and Community Supervision ("DOCCS") custody and housed at Green Haven Correctional Facility ("Green Haven"). (Defs.' Statement of Material Facts Pursuant to Fed. R. Civ. P. 56 & Local R. 56.1 with Pl.'s Am. Resp., & Pl.'s Add'l Material Facts with Defs.' Resp. ("56.1") at ¶ 1[1] ; Collins Decl. at Ex. A, Ex. B[2].)

Plaintiff was playing cards with another inmate at a table in the E&F recreation yard (the "E&F Yard" or the "Yard"). (56.1 at ¶ 2; Defs.' Ex. C at 34:16-35:5, 68:20-69:5.) It was approximately 7:45 p.m., and still daylight. (56.1 at ¶ 2; Defs.' Ex. C at 68:20-69:5.) The table at which Plaintiff sat was located in the far corner of the E&F Yard, on a diagonal from the F&G Corridor door. (56.1 at ¶ 4; Defs.' Ex. C at 41:19-53:8.)

Officers assigned to the Yard are responsible for ensuring the safety and security of all inmates and one another. (Defs.' MOL at p. 5; 56.1 at ¶ 6; Alban Decl. ¶ 7; Cabral Decl. ¶ 7; Dapcevic Decl. ¶ 7; Sturtevent Decl. ¶ 7.) Defendants and their agents have inconsistently asserted the number of officers typically assigned to supervise the Yard. (*See* 56.1 at ¶ 5 ("generally only three"); Alban Decl. ¶ 5(same); Cabral Decl. ¶ 5 (same); Dapcevic Decl. ¶ 5 ("There *are* three officers physically inside the E&F Yard during recreation periods."); Hess Decl. ¶ 4 ("generally three"); Sturtevent Decl. ¶ 5 (same); Vennero Decl. ¶ 4. (same); Ex. 1 at 44:12-45:5 (two officers)[3];

---

[1] Unless otherwise indicated, references to paragraphs in the 56.1 statement include the responsive paragraphs.
[2] Hereinafter, exhibits attached to the Collins Declaration will be referred to as "Defs.' Ex.__."
[3] Exhibits in this format, i.e., with a number designation, are attached to the Pelage Declaration.

Ex. 2 at 32:19-21, 38:4-8 (four officers).) However, on May 27, 2013, there were six or seven officers present in the Yard. (Defs.' Ex. C at 71:6-9; Ex. 3 at 221:10-222:13.)[4] And an officer in training at the time, Officer Gomez, worked the 3:00 p.m. to 11:00 p.m. shift in the E&F Yard, and may have therefore been present during the subject incident. (Ex. 4.)

It is typical for one Yard officer to remain stationed outside of a shack in the Yard (near the concrete walkway halfway between the F&G Corridor Door and the E-Block Yard Door), near a communication post near the door, or in the watch chair near where Plaintiff was initially attacked as described below. (56.1 at ¶ 6 Resp.; Ex. 5 at 21:12-24:14; Ex. 1 at 45:18-46:13; Defs.' Ex. C at 46:17-47:15, 123:5-23, 165:14-166:7; *see also* Defs.' Ex. C at 51:21-53:8; Ex. 32.A (taken together, indicating where the F&G Corridor Door and E-Block Yard Door are each located in the Yard).) On May 27, 2013, no officers were stationed at any of the aforementioned stations. (56.1 at ¶ 6 Resp.; Defs.' Ex. C at 123:5-23.)

That day, Defendant Officers Nedzad Dapcevic, Antonio Alban, and Brian Sturtevent were working in the E&F Yard and tasked with supervising the inmates present in the Yard. (56.1 at ¶ 5; Alban Decl. at ¶ 4; Dapcevic Decl. at ¶ 4; Sturtevent Decl. at ¶ 4.) The officers stood near the Yard door speaking with one another; they were not engaged in supervisory duties. (56.1 at ¶ 6 Resp.; Defs.' Ex. C at 123:24-124:12; Ex. 6 at 20:11-18.)

There were also two officers assigned to and stationed at the East Side Roof post, overlooking the E&F Yard on May 27, 2013. (56.1 at ¶ 7; Hess Decl. at ¶ 4; Vennero Decl. at ¶ 4.) The officers are equipped with weapons and tasked with ensuring inmate and officer safety.

---

[4] Defendants contend, without authority, the number of officers present in the Yard at the time of the complained of incident is not material to their motion because in any event, the officers were outnumbered. *See* Defs' MOL at p. 5, n. 2. This is not so, as the amount of manpower available is a viable factor to consider in determining whether the force applied was necessary to subdue a plaintiff. *Gardner v. Robinson*, No. 16-CIV-1548 (GBD) (RWL), 2018 WL 722858, at *5 (S.D.N.Y. Feb. 6, 2018) (finding even if the plaintiff threw the "proverbial first punch," a jury could find the defendant officers exercised excessive force because, *inter alia*, they had one another for back-up.)

3

(56.1 at ¶¶ 8, 9; Vennero Decl. at ¶¶ 4, 6; Hess Decl. at ¶¶ 4, 6.) They are authorized to use force, "up to and including deadly force," when justified and necessary, that is, when they reasonably believe such force is necessary to protect the lives of individuals inside the Yard. (56.1 at ¶¶ 8, 9; Vennero Decl. at ¶¶ 4, 6; Hess Decl. at ¶¶ 4, 6.)

As Plaintiff sat playing cards, another inmate suddenly approached from behind and repeatedly slashed him on the forehead, face/cheek, and right ear with a razor-like object, causing Plaintiff to bleed profusely. (56.1 at ¶ 11[5]; Defs.' Ex. C at 34:16-37:6, 59:2-7, 61:24-62:6, 100:2-3.) Plaintiff was able to spin out of his attacker's grip and fell to the ground. (56.1 at ¶ 11; Defs.' Ex. C at 34:16-37:6, 59:2-15.) When he stood, another inmate, William Reyes was standing a few feet in front of Plaintiff, looking at him. (56.1 at ¶ 14; Defs.' Ex. C at 34:16-37:6, 59:2-23.) Plaintiff picked up a rock from the ground. (56.1 at ¶ 11; Defs.' Ex. C at 34:16-37:6, 59:2-60:3) (Plaintiff testifying he picked up a rock after he saw Reyes standing in front of him after his attack[6]).)

Plaintiff began walking in Reyes' direction, and as the pair traveled the Yard, Reyes attempted to strike Plaintiff a number of times. (56.1 at ¶ 14 Resp.[7], Defs.' Ex. C at 34:16-37:6, 62:14-68:5; Ex. 6 at 11:4-13:4, 22:11-23:13.) As they traversed the Yard, the pair began walking toward the F&G Corridor door, where Defendant Officers Dapcevic, Alban, and Sturtevent, and

---

[5] Plaintiff's response to 56.1 at ¶ 11 contains a typo and should read "Disputed. The cited evidence does not support that Plaintiff was cut in the *head*. Plaintiff was cut in the forehead, face/cheek, and right ear. (Pl. Dep. Tran. at 62:4-6; 100:2-3.) The remaining alleged facts are undisputed."

[6] In their moving papers, Defendants indicate, "When Plaintiff stood up, with the rock in hand, he saw Reyes." Defs' MOL at p. 6. This is incorrect; Plaintiff testified he stood up after being attacked, saw Reyes standing a few feet in front of him, and then he picked up the rock. (*See* Defs.' Ex. C at 34:16, 59:2-60:3.) Defendants, who indicate they did not see Plaintiff and Reyes' initial encounter, have no personal knowledge about when Plaintiff acquired the rock he was later observed carrying.

[7] Defendants contend Plaintiff's response to ¶ 14 of the 56.1 fails to comply with the Local Rule, alleging it "adds argumentative and often lengthy narrative in almost every case the object of which is to "spin" the impact of the admissions plaintiff has been compelled to make." (*See* Defs' MOL at p. 6, n. 5.) Plaintiff's response does not seek to add additional facts, but to dispute that inmate Reyes simply "backed away." (*See* 56.1 at ¶ 14.) In any event, the Court has broad discretion, both to overlook any failure to comply with the local rules, and to consider "what the parties fail to point out in their Local Rule 56.1 at statements…" *Pugni v. Reader's Dig. Ass'n, Inc*., No. 05-CIV-8026 (CM), 2007 WL 1087183, at *2 (S.D.N.Y. Apr. 9, 2007) (reviewing record for evidence the defendant failed to address in its Rule 56.1 at statement).

three or four other unidentified officers stood speaking with one another. (56.1 at ¶ 15 Resp.; Defs.'
Ex. C at 69:6-71:9, 123:24-124:12; Ex. 3 at 221:10-222:13; Ex. 7 at 21:5-15, 22:2-17, 24:12-26:11;
Ex. 5 at 27:17-24; Ex. 6 at 25:12-26:4.) Defendant Officer Alban brought Plaintiff to Defendant
Officer Sturtevent's attention, and the Defendants ran toward Plaintiff. (56.1 at ¶ 15 Resp.; Ex. 7
at 22:2-17, 24:12-26:11; Ex. 5 at 27:17-24.[8])

Plaintiff was bleeding profusely and screaming, "Look at what he did to me!" over and
over, while moving toward the officers. (56.1 at ¶ 18 Resp.; Ex. 7 at 23:2-24:10; 41:25-43:11;
Alban Decl. at ¶ 10.) Plaintiff was surrounded by officers, who were able to get in between the
inmates and formed a semi-circle in front of Plaintiff, who had a wall behind him. (56.1 at ¶¶ 19,
20; Defs.' Ex. C at 34:22-37:6, 78:13-79:17; Ex. 32.A; Ex. 6 at 11:8-15:19, 22:11-24:4, 30:9-15;
Ex. 8 at 8:18-10:14; 21:17-22:15; Ex. 3 at 241:25-244:17.) He was not given any orders. (56.1 at
¶ 18; Exhibit 9; Ex. 13 at 77:10-78:23; Ex. 6 at 11:8-15:19, 22:11-24:4, 25:12-26:4.)

The other inmate, William Reyes, grabbed Defendant Officer Alban and used him as a
shield between himself and Plaintiff. (56.1 at ¶ 19; Defs.' Ex. C at 34:22-37:6, 75:25-82:4; Ex. 6
at 11:8-13:4, 20:11-24:4, 26:7-27:9.) After another officer pulled Officer Alban away, the
remaining officers backed away, Reyes lunged at plaintiff, and the two inmates began physically
fighting and exchanging blows. (56.1 at ¶¶ 19, 20; Defs.' Ex. C at 34:22-37:6, 75:25-82:17; Ex. 6
at 11:8-13:4, 22:11-24:4, 26:7-27:9, 30:9-15; Ex. 8 at 8:18-10:14, 14:2-15:8, 21:17-22:15.)

---

[8] Defendants' purport Plaintiff's response to 56.1 at ¶ 15 fails to establish that the information in Defendants' ¶ 15 is
in dispute. For starters, if Defendants must rely upon a 60-foot margin of error regarding where Plaintiff was when
they first noticed him, this is clearly not an undisputable fact but a very broad estimation. Furthermore, Plaintiff does
not claim to have personal knowledge of what Defendants saw or when; he instead cites to an exhibit and Defendants'
own testimony, which contradict the remaining allegations set forth in ¶ 15. *See* 56.1 at ¶ 15. Defendant Officer
Sturtevent's testimony disputes that the Defendants saw Plaintiff carrying an item when they first noticed him. (*See*
Ex. 5 at 29:15-31:3.) And Defendant Officer Alban's testimony disputes that the officers "walked" toward Plaintiff.
(Ex. 7 at 24:11-26:8; Alban Decl. at ¶ 11.)

Plaintiff testified he defended himself from Reyes because the Officers moved and left. (56.1 at 20 Resp.; Defs.' Ex. C at 78:13-80:11, 81:12-23.)

Plaintiff struck Reyes with the rock he had been carrying. (56.1 at ¶ 21; Defs.' Ex. C 67:21-23, 73:11-13.). Reyes was not seriously injured; he was later examined by a medical professional and only found to have "small abrasions" on his head and left knee and lacerations on his left knuckles. (56.1 at ¶ 21 Resp., ¶ 38; Ex. 5 at 63:8-19; Ex. 7 at 42:12-14; Ex. 10; Ex. 11.) At least one Defendant officer never saw any fighting between the two inmates. (56.1 at ¶ 20 Resp.; Ex. 7 at 31:19-24.)

Defendant Officer Dapcevic struck Plaintiff in the head with his baton, (56.1 at ¶ 22 Resp., ¶ 34; Defs.' Ex. C at 29:7-11; 36:20-37:2; 90:14-92:17; 94:17-22, 96:14-98:15, 101:2-12, 124:13-125:9, Ex. 32.B at DEF PHOTO 4; Ex. 6 at 11:8-13:4; 13:16-15:19; 16:4-22; 31:9-32:3; Hurley Aff. at ¶ 8; Ex. 9; Ex. 12,) although he testified, pursuant to his training, it would have been unreasonable to do so under the circumstances of the situation. (56.1 at ¶ 22 Resp., ¶ 37; Ex. 13 at 106:19-25.) In fact, DOCCS Officers are trained never to strike in the head or neck with a baton and to use as the minimum force required to stop the action they are responding to. (56.1 at ¶ 22 Resp., ¶ 28 Resp.; Ex. 2 at 12:19-13:13; Ex. 5 at 12:13-13:14; Ex. 1 at 38:3-8; Ex. 14 at 16:4-17:7; Ex. 7 at 12:23-13:11; Ex. 15 at 15:21-16:12; Ex. 13 at 32:5-33:11, 37:8-38:9, 43:11-20, 48:12-49:4.) Plaintiff was injured and still bleeding profusely when Officer Dapcevic struck him with his baton. (56.1 at ¶ 35; Ex. 13 at 165:14-22.)

Defendant Officer Dapcevic claims he used his baton to strike Plaintiff twice on Plaintiff's right shoulder area, because Plaintiff ignored Officer Dapcevic's repeated orders to drop the item and get on the ground.[9] (56.1 at ¶ 22; Dapcevic Decl. ¶ 13.) He has reported (i) that Plaintiff

---

[9] At least one officer present during the May 27, 2013 incident thought Plaintiff was not comprehending the officers' directions due to the injuries sustained during the razor blade attack. (56.1 at ¶ 31; Ex. 3 at 241:25-242:17.)

separated from Reyes willingly, in compliance with a direct order, and then he struck him, because Plaintiff would not drop the rock, (56.1 at ¶ 23 Resp.; Ex. 11; Ex. 16; Dapcevic Decl. at ¶ 13; Ex. 13 at 92:19-94:15,) (ii) that he and Officers Alban and Sturtevent separated the two inmates, then Plaintiff refused to drop rock, so he struck Plaintiff with his baton, (56.1 at ¶ 23 Resp.; Ex. 17,) and (iii) that neither inmate complied with orders to stop fighting and lay on the ground, so he struck Plaintiff to gain compliance. (56.1 at ¶ 23 Resp.; Ex. 18; Ex. 13 at 141:17-142:5; Ex. 10; *see also* Ex. 19.). Notably, he has also reported the reason he struck Plaintiff was that Plaintiff advanced toward him aggressively. (56.1 at ¶ 22 Resp.; Ex. 1 at 30:23-31:15; Ex. 11; Ex. 15 at 56:58:16; Ex. 10 at p. 1; Ex. 20; Ex. 13 at 131:13-20, 178:10-25; Ex. 3 at 144:15-145:2.)

Plaintiff did not in fact lunge at, advance toward, or threaten Officer Dapcevic or any other Officer present. (56.1 at ¶ 22 Resp., ¶ 32; Defs.' Ex. C at 83:14-84:3; Ex. 2 at 44:19-45:6; Ex. 6 at 28:21-29:4; Ex. 8 at 27:9-11; Ex. 14 at 49:6-10; Ex. 7 at 51:24-52:6, 57:9-15; Ex. 21; Ex. 22; Hurley Aff. at ¶ 7; Ex. 5 at 70:23-71:1.)

Defendant Officers Alban and Sturtevent claim they did not see Officer Dapcevic strike Plaintiff. (56.1 at ¶ 22, ¶ 23 Resp., ¶ 36; Alban Decl. ¶ 15; Ex. 7 at 40:12-15; Sturtevent Decl. ¶ 15; Ex. 5 at 71:2-5.) And Officer Sturtevent testified the inmates separated when they fell, that is, without officer intervention. (56.1 at ¶ 23 Resp.; Sturtevent Decl. at ¶¶ 11-15; Ex. 5 at. 57:21-58:23, 71:2-5.) Officers Hess and Vennero likewise reported they did not see any use of force involving a baton and each testified the inmates were separated when Plaintiff was physically removed, or grabbed, off of Reyes. (56.1 at ¶ 23 Resp.; Hess Decl. at ¶ 11; Ex. 14 at 42:2-17, 43:2-4, 51:21-25; Vennero Decl. at ¶¶ 4, 9-12; Ex. 2 at 35:23-36:22, 44:5-7.) The Roof Officers were each authorized to use deadly force by firing their weapons when they reasonably believed deadly force was necessary to protect the lives of those in the Yard. (56.1 at ¶ 33; Hess Decl. ¶ 6; Vennero

Decl. ¶ 6.) Neither thought it necessary to apply deadly force by firing their weapons, so they did not do so. (56.1 at ¶ 33; Hess Decl. at ¶ 11; Vennero Decl. at 12.)

Under the circumstances as they existed during the May 27, 2013 incident, a baton strike to the head was unnecessary and unreasonable. (56.1 at ¶ 46; Ex. 1 at 50:21-51:12.)

After being struck with the baton, Plaintiff laid on the ground and was handcuffed without further incident. (56.1 at 25; Defs.' Ex. C at 108:6-11; Dapcevic Decl. ¶ 13.) He was then escorted to the medical clinic and later transported to a local hospital. (56.1 at ¶ 26; Cabral Decl. ¶ 8; Dapcevic Decl. ¶ 13; Markwick Decl. ¶ 5; Defs.' Ex. C at 118:19-119:5.) Plaintiff sustained four lacerations to his head/face/ear area with the following descriptions: (i) a 10-centimeter laceration to his right temple, vertical, deep, open with an approximate .5-centimeter gap, and bleeding profusely; (ii) an approximately 6-centimeter laceration from the right ear to the back of head, very deep, with a bisected ear; (iii) an approximately 3-centimeter superficial cut to his right cheek; and (iv) an approximately 1-centimeter laceration to the top of his head. (56.1 at ¶ 26; Defs.' Ex. F; Defs.' Ex. G.) Plaintiff received approximately 65 sutures to close the lacerations. (56.1 at ¶ 26; Defs.' Ex. C at 121:25-122:7.)

A baton strike will leave a bruise, especially if one is struck with enough force that they are knocked to the ground. (56.1 at ¶ 39; Ex. 2 at 14:9-21; Ex. 5 at 14:11-25; Ex. 23 at 26:21-27:10; Ex. 15 at 16:23-17:2; Ex. 13 at 107:21-108:2.) Officer Dapcevic reported Plaintiff "fell" to the ground after Officer Dapcevic struck him with the baton. (56.1 at 40; Ex. 16; Ex. 10.) Plaintiff, however, did not sustain any bruising or other injury to his upper right front shoulder. (56.1 at ¶ 41; Ex. 16; Ex. 24; Ex. 32.B at DEF PHOTOS 11, 12; Ex. 25 at 16:17-22, 19:24-22:8, 23:2-24:3, 26:8-11.)

Baton strikes may cause lacerations. (56.1 at ¶ 42; Ex. 26 at 29:2-6; Ex. 23 at 30:3-6; Ex. 13 at 49:23-50:23; 107:2-20; Ex. 27.) Plaintiff sustained a laceration on his head where Officer Dapcevic struck him with the baton. (56.1 at ¶ 43; Ex. 16; Ex. 24; Ex. 32.B at DEF PHOTOS 3,4; Ex. 25 at 22:9-15, 24:8-24.) He repeatedly complained of headaches, vertigo, and vision changes and blurry vision, after the May 27, 2013 incident. (56.1 at ¶ 44; Ex. 26 at 20:8-21:7; Ex. 23 at 23:13-24:3, 24:16-25, 25:6-19; Ex. 27.) Each of these conditions are consistent with blunt force trauma to the head and can be caused by a baton strike to the head. (56.1 at ¶ 45; Ex. 26 at 27:7-28:25; Ex. 23 at 30:7-21.)

Each of the Defendant Officers have received training in the use of force and of a baton. (56.1 at ¶ 29; Ex. 1 at 33:2-40:11; Ex. 13 at 40:3-8, 29:3-33:11, 35:19-38:9; Ex. 5 at 10:2-25, 11:1-13:14; Ex. 7 at 10:11-13:24; Ex. 15 at 14:6-17, 15:2-11; 15:18-20; Ex. 28; Ex. 29; Ex. 30.) As per their formal training, DOCCS Corrections Officers are instructed not to strike inmates in the head with batons. (56.1 at ¶ 30; Ex. 5 at 12:13-13:14; Ex. 1 at 38:3-8; Ex. 7 at 12:23-13:11; Ex. 15 at 15:21-16:12; Ex. 13 at 32:5-33:11, 37:8-38:9, 43:11-20, 48:12-49:4.)

Officer Dapcevic was aware that "a [DOCCS] employee may use a weapon other than a firearm (e.g., a baton or a chemical agent) only when and to the extent that the employee reasonably believes such use is necessary for self-defense, to prevent *serious* assault or gross destruction of property, to quell a disturbance, or to prevent an escape. Where it is necessary to use such a weapon, the employee should take due care to avoid, to the best of his or her ability in the circumstances, the infliction of serious physical injury." (*emphasis added*) (56.1 at ¶ 47; Ex. 31 at § 9.2(f); Ex. 13 at 115:11-22; Defs.' Ex. H at § III (F).) Before he struck Plaintiff with his baton, Plaintiff's altercation with inmate Reyes–which Officer Dapcevic regarded as a disturbance–had already ended; Plaintiff never attempted to strike Officer Dapcevic; the nearest inmate was 25 feet

away from Plaintiff; Plaintiff did not strike any other inmates; Plaintiff was not destroying property; and Plaintiff was not attempting to escape. (56.1 at ¶ 48; Ex. 13 at 117:5-118:7, 118:12-119:16, 119:23-120:19, 121:13-16.)

## STANDARD OF REVIEW

Summary judgment is only appropriate in cases where the evidence, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 589 (S.D.N.Y. 2013) (*citing* Fed.R.Civ.P. 56(a); *Vacold, LLC v. Cerami,* 545 F.3d 114, 121 (2d Cir.2008)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the burden of establishing there are no genuine issues of material fact. *Usavage,* 932 F. Supp. 2d at 589.

Material facts are those that impact the outcome of the suit under governing law. *Bateman v. Permanent Mission of Chad to the United Nations in New York*, No. 18-CV-00416 (PMH), 2021 WL 964272, at *1 (S.D.N.Y. Mar. 15, 2021); *see also Usavage,* 932 F. Supp. 2d at 589 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). And there is a genuine issue of fact where a reasonable jury could return a verdict for the non-movant. *Bateman,* 2021 WL 964272, at *1; *see also Anderson,* 477 U.S. at 249 (the non-movant is not required to assert the issue of material fact will be resolved in his favor; "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a

directed verdict." *Anderson,* 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

To determine whether genuine issues of material facts exist, courts are required to resolve all ambiguities and draw all permissible inferences in favor of the non-moving party. *Usavage,* 932 F. Supp. 2d at 589; *see also Vasquez v. Klie,* 513 F. App'x 85, 86 (2d Cir. 2013) (upholding application of qualified immunity because, unlike here, reliance "on plaintiff's version of the facts *and drawing all reasonable inferences therefrom*, it was objectively reasonable for defendant Klie to use additional force under the circumstances.")."[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A non-moving party will defeat a motion for summary judgment where they have presented evidence sufficient to create a genuine issue of material fact. *Usavage,* 932 F. Supp. 2d at 589.

11

ARGUMENT

**POINT I:      DEFENDANT OFFICER DAPCEVIC IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM**

In their statement of material facts, Defendants omit material facts regarding the nature of the use of force Plaintiff complains of, that is, whether Officer Dapcevic struck Plaintiff in the head or the shoulder. Alternatively, they argue, even accepting Plaintiff's version of the facts and drawing all reasonable inferences therefrom, Officer Dapcevic's use of force was reasonable and justified, based upon Plaintiff's actions allegedly taken against inmate William Reyes. This argument likewise omits an important element of this case–that Officer Dapcevic testified it would have been unreasonable to strike Plaintiff in the head under the circumstances of the subject incident.

Viewing the disputed facts in a light most favorable to Plaintiff, a reasonable jury could find that Defendant Officer Dapcevic's use of force against Plaintiff was objectively serious, and that Officer Dapcevic acted maliciously or in bad faith. *See Randolph v. Griffin*, 816 F. App'x 520, 523, 524 n. 3 (2d Cir. 2020) ("Even assuming Randolph's evidence is less than compelling, the district court was not permitted to weigh the evidence and resolve the factual disputes.") Defendant Officer Dapcevic is therefore not entitled to summary judgment dismissal of Plaintiff's excessive force claim.

The language of the Eighth Amendment of the United State Constitution evinces legislative intent to limit the power of those entrusted with the criminal law function of government and to protect those convicted of crimes from cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In *Whitley,* the Supreme Court set forth the core judicial inquiry regarding whether physical force applied against a prisoner constitutes cruel and unusual punishment, pursuant to the Eighth Amendment, basing its finding on the settled rule that the unnecessary and

12

wanton infliction of pain constitutes cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Whitley,* 475 U.S. at 320–21. The Supreme Court has also determined that an Eighth Amendment excessive force claim comprises an objective and subjective component. *Romano v. Howarth*, 998 F.2d 101, 104–05 (2d Cir. 1993) (*citing cases*); *Rodriguez v. Mercado*, No. 00 CIV. 8588 (JSR) (FM), 2002 WL 1997885, at *10 (S.D.N.Y. Aug. 28, 2002).

Objectively, a plaintiff claiming excessive force must show the deprivation alleged is "sufficiently serious," or "harmful enough," to reach constitutional dimensions. *Id.* at 105. The subjective element analyzes the state of mind of the defendant, who's liability is premised upon whether the jury finds the defendant acted wantonly. *Id.* Wantonness turns upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.; Hudson,* 503 U.S. at 6, 7; *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). When determining whether a defendant acted maliciously, a jury must consider the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. *Romano,* 998 F.2d at 105; *Hudson,* 503 U.S. at 7.

The Second Circuit has reversed summary judgment dismissals of Eight Amendment excessive force claims, where the plaintiff prisoner's allegations and evidentiary proffers allow rational factfinders to find the defendant corrections officers used force maliciously and sadistically. *Wright,* 554 F.3d at 269 (this has been so, even where a plaintiff's evidence of injury is slight, and the proof of excessive force was weak). In *Griffin v. Crippen,* 193 F.3d 89, 92 (2d Cir. 1999), cited by Defendants, the court reinstated the plaintiff's previously dismissed excessive force claim because although his admission that he assaulted the defendant correction officers cast

doubt on his Eighth Amendment claim, it did not preclude a reasonable jury from finding that excessive force was used against him. In *Rodriguez,* the Southern District denied summary judgement because it could not resolve the dispute between the plaintiff's allegation that he was assaulted with the defendants' allegations that the plaintiff had disobeyed an order and that they had not uses any unnecessary force. 2002 WL 1997885, at 11.

For starters, the evidence in the light most favorable to Plaintiff demonstrates genuine issues of material fact such that the Court should deny Defendants' motion for summary judgment. Presently before the Court are several genuine issues of material facts that impact evaluation of the subjective component, including: (i) the contradicting testimony as to the extent of Plaintiff's injuries, which Defendants' deny causing; (ii) the need for the application of force, that is, whether it was necessary to strike Plaintiff, who was bleeding profusely and appeared dazed, ostensibly suffering physical effects from the slashing, in the head with a baton; (iii) the relationship between the need for force and the amount used, as Defendants maintain and Plaintiff denies Officer Dapcevic's use of force was necessary in light of the circumstances and Plaintiff's conduct; (iv) the nature and amount of force used, i.e., whether Defendant Officer Dapcevic struck Plaintiff in the head or shoulder and how hard Officer Dapcevic struck Plaintiff; (v) and whether the Defendant Officers made efforts to temper the severity of the force against Plaintiff. (56.1 at ¶¶ 22, 31, 34, 40; *see also Romano,* 998 F.2d at 105; *Hudson,* 503 U.S. at 7.)

The objective element of Plaintiff's excessive force claim is also in dispute, as there are differing accounts as to the harm resulting from Officer Dapcevic striking Plaintiff. Where there are differing accounts regarding the degree of force used and whether it was justified, as is the case here, summary judgment is improper. *See Rodriguez*, 2002 WL 1997885, at *11. A jury should make the appropriate findings to determine whether the use of force was excessive.

14

Furthermore, Defendants' contention that Officer Dapcevic was justified *if* he applied deadly force due to the nature of Plaintiff's conduct and his alleged use of deadly force against inmate William Reyes is directly contradicted by Officer Dapcevic's own testimony that striking Plaintiff in the head would have been unreasonable (and therefore unnecessary) under the circumstances as they existed during the subject incident. (56.1 at ¶¶ 22, 34.) Furthermore, Plaintiff's evidentiary showing does not prompt a finding that he was engaged in the use of deadly force against inmate William Reyes when he was struck in his head by Defendant Officer Dapcevic. Plaintiff's evidence shows, while he was bleeding profusely and ostensibly in a daze, as indicated by one of the Defendant Officers, he was surrounded by Officers who failed to issue any orders and then stepped away, allowing an inmate who had just brutally slashed him to lunge at him and initiate a physical altercation. (56.1 at ¶¶ 18-20 Resp.; Ex. 7 at 23:2-24:10; 41:25-43:11; Alban Decl. at ¶ 10; Defs.' Ex. C at 34:22-37:6, 75:25-82:17; Ex. 32.A; Ex. 6 at 11:8-15:19, 22:11-24:4, 25:12-26:4, 26:7-27:9, 30:9-15; Ex. 8 at 8:18-10:14; 14:2-15:8, 21:17-22:15; Ex. 9; Ex. 13 at 77:10-78:23.) Plaintiff testified he defended himself from Reyes because the Officers moved and left. (56.1 at ¶ 20 Resp.; Defs.' Ex. C at 78:13-80:11, 81:12-23.) In any event, when the pair fought, Plaintiff was injured and still bleeding, and after the pair was separated, Reyes was only found to have "small abrasions" on his head and left knee and lacerations on his left knuckles, a far cry from what one would expect had deadly force been exercised upon him. (56.1 at ¶ 21 Resp., ¶ 35, ¶ 38; Ex. 5 at 63:8-19; Ex. 7 at 42:12-14; Ex. 10; Ex. 11; Ex. 13 at 165:14-22.)

Viewing the evidence in the light most favorable to Plaintiff, the extent of his injuries made him much less of a physical threat than Defendants suggest. This is even further supported by Officer Dapcevic's admission that striking Plaintiff in the head would not have been reasonable under the circumstances. In arguing that Plaintiff's conduct constituted deadly force, the

Defendants are requesting that the Court improperly weigh the evidence, i.e., whether the Court believes Plaintiff's conduct constituted deadly force.

The Court cannot weigh the evidence and must instead defer to Officer Dapcevic's adoption and execution of prison policies and practices he believed necessary to preserve internal order and discipline and to maintain institutional security. *Barnes v. Harling,* 368 F. Supp. 3d 573, 593 (W.D.N.Y. 2019) (this deference extends to security measures taken in response to actual confrontations and requires that neither judges nor juries freely substitute their judgment for that of officials who have made a considered choice). In other words, Officer Dapcevic did not believe a baton strike to the head would have been necessary to preserve internal order and discipline and to maintain institutional security; in fact, he says it would have been unreasonable. The Court must credit his admission. *See Id.* (granting summary judgment where evidence established the defendant correction officer used a single knee strike on the plaintiff's back in order to restore security after an inmate fight, because the court deferred to the officer's adoption and execution of prison policies, and because, unlike here, the officer used only the force necessary to remove the threat).

Also, in *Gillard v. Hamel*, an inmate alleged he was fighting another inmate on the ground when prison officials used excessive force to break up the fight. No. 09-CV-0431 (TJM)(DEP), 2012 WL 967064, at *6 (N.D.N.Y. Feb. 24, 2012), *report and recommendation adopted*, No. 09-CV-0431 (TJM)(DEP), 2012 WL 960967 (N.D.N.Y. Mar. 21, 2012). The court dismissed the inmate's claims, not because he was being violent, but because the force the officials applied was de minimis and insufficient to implicate the Eighth Amendment protections against cruel and unusual punishment. *Id.* Here, Officer Dapcevic may have been "faced with [the] situation of two inmates fighting and the need to restore discipline and to apply the amount of necessary force to

accomplish that end," *see id.,* but he far exceeded the force necessary to subdue Plaintiff in his freshly slashed, bloody, and confused condition.

Lastly, Defendants' reliance upon *Ford v. Miller*, is improper. There, an inmate threw hot oil on an officer and then repeatedly stabbed him with an approximately 9-inch homemade shank. No. 05 CIV. 6646 (NRB), 2007 WL 946703 (S.D.N.Y. Mar. 27, 2007). The inmate-plaintiff's attack was brutal and not at all comparable to Plaintiff's decision to protect himself from further attack from inmate Reyes; an altercation which resulted in insignificant injuries to the other inmate.[10] Moreover, in *Ford*, the defendant officers still did not apply deadly force against the plaintiff. And, in a case referenced in *Ford, Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985), the Supreme Court, which was tasked with determining whether an officer's use of force was reasonable, held the officer, who shot a burglar, could not have reasonably believed the suspect, who was young and of slight build, posed a threat of physical harm. There is no way Officer Dapcevic believed Plaintiff, in his condition, posed a serious threat of physical harm. *See* 56.1 at ¶ 31; Ex. 3 at 242:6-17 (Officer Alban testifying that he would not say Plaintiff was aggressive toward the officers and that Plaintiff was bleeding and looked like he "wasn't there."). The Court should allow a jury to determine the nature and the reasonableness of Officer Dapcevic's use of force against Plaintiff on May 27, 2013.

**POINT II:    DEFENDANT OFFICERS ALBAN AND STURTEVENT ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO INTERVENE CLAIM**

Officers Alban and Sturtevent are likewise not entitled to summary judgement of Plaintiff's claims that each failed to intervene and protect him from Defendant Officer Dapcevic's use of

---

[10] The Court should also note, although Defendants reportedly accept Plaintiff's evidentiary showing as true for the purpose of their argument that force used against him was not excessive because Plaintiff was engaged in deadly force, Defendant Officer Dapcevic claims he struck Plaintiff, not to save inmate Reyes from deadly force, but "because Plaintiff was not obeying direct orders to drop the object that he just used to hit Reyes with and get on the ground." (56.1 at ¶ 22.)

excessive force. For starters, Defendants' argument that Officers Alban and Sturtevent had no duty to intervene because Officer Dapcevic did not apply excessive force must fail simply because, as set forth in Point I, *supra*, Officer Dapcevic did apply unreasonably excessive force against Plaintiff when he struck him in the head with a baton. Furthermore, a reasonable jury could find Officers Alban and Sturtevent observed Officer Dapcevic's excessive force, had the opportunity to intervene, and failed to satisfy their duty, making them liable pursuant to their obligations.

A law enforcement official is liable for his failure to intervene in a situation where another officer is using excessive force where: the officer had a realistic opportunity to intervene and prevent the harm; a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; the officer failed to take reasonable steps to intervene; and the officer's failure permitted a fellow officer to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012) (*citing cases*).

Here, Officers Alban and Sturtevent claim they did not observe any use of force by Officer Dapcevic involving his baton. However, the evidence shows, the officers were all in the vicinity when Plaintiff and Reyes fought just before Officer Dapcevic struck Plaintiff with his baton. (Ex. 19 (Defendant Alban indicating he witnessed Plaintiff and Reyes fighting and refusing orders to cease); Ex. 5 at 56:4-58:22 (Sturtevent testifying he was 10 feet from the inmates when they began fighting, had a clear view of Plaintiff during the fight, and issued orders to stop fighting).) And, Officer Alban signed an Inmate Misbehavior Report Officer Dapcevic drafted, indicating he struck Plaintiff with his baton. (*See* Ex. 18.) A jury should be given the opportunity to weigh the evidence and determine whether the Officers' claims that they did not observe the use of force are credible

given that they were nearby and ostensibly paying attention to the events unfolding before them. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (*quoting Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996); *see also Graham v. Kohl's Dep't Stores, Inc.,* No. 3:04CV949 (MRK), 2005 WL 2256603, at *2 (D. Conn. Sept. 8, 2005) ("When, as in this case, the credibility of witnesses may be an important issue, such credibility issues are normally resolved by a jury based on the in-court testimony of witnesses, not by the [c]ourt as a matter of law based solely on affidavits and depositions.") (*citing Rule*, 85 F.3d at 1011.)

A reasonable jury could find Officers Alban and Sturtevent, having been nearby, had a realistic opportunity to intervene and prevent Officer Dapcevic's excessive force; that reasonable officers in their positions would have known the force was excessive; and that Officers Alban and Sturtevent failed to take reasonable steps to intervene, therefore permitting Officer Dapcevic to violate Plaintiff's clearly established Eighth Amendment right to be free from cruel and unusual punishment, of which a reasonable person would have known.

**POINT III:    THE DEFENDANT OFFICERS ARE NOT ENTITLED TO SUMMARY JUDGEMENT FOR THEIR FAILURE TO PROTECT PLAINTIFF FROM FURTHER ASSAULT BY INMATE REYES**

In construing the evidence in a light most favorable to Plaintiff, there is a genuine dispute of the material facts making summary judgment dismissal of Plaintiff's Eight Amendment failure to protect claim improper. That is, there is evidence, contradictory to Defendants' contentions, upon which a reasonable jury could conclude the Defendant Officers could have, but did not, prevent the physical altercation between Plaintiff and inmate Reyes.

As discussed, it is well established that the Eighth Amendment imposes a duty to take reasonable measures to guarantee inmate safety upon prison officials. *Warren v. Goord*, 476 F.

Supp. 2d 407, 410 (S.D.N.Y. 2007); *Randle v. Alexander,* 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013). This duty obligates prison officials to protect inmates from violence at the hands of one another. *See Warren*, 476 F. Supp. 2d at 410; *Randle,* 960 F. Supp. 2d at 471. To state a failure to protect claim under § 1983, a plaintiff need only demonstrate that: (i) "he is incarcerated under conditions posing a substantial risk of serious harm" and (ii) "prison officials acted with deliberate indifference to the safety of the inmate." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Warren*, 476 F. Supp. 2d at 410*; see also Sutton v. Rodriguez*, No. 18-CV-01042 (PMH), 2020 WL 5504312, at *7 (S.D.N.Y. Sept. 8, 2020).

Plaintiff was the victim of a violent attack that resulted in several wounds to his forehead, face, and ear, requiring over sixty-five stitches. His evidentiary proffer establishes after his attack and when the Defendant officers refused intervene, Plaintiff, who was injured and bleeding profusely, had to defend himself from further attack. Allegations involving Plaintiff's attacks (both the slashing and the subsequent fight) and the manner in which each occurred sufficiently demonstrate Plaintiff was subject to a substantial risk of serious harm. *Warren*, 476 F. Supp. 2d at 410; *see e.g., Knowles v. New York City Dep't of Corrections*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (sudden violent slashing attack by another inmate, which resulted in cut to face requiring sixty stitches, satisfied plaintiff's substantial risk requirement); *King v. Department of Corr*., No. 95 Civ. 3057, 1998 WL 67669, at *5 (S.D.N.Y.1998) (inmate who received 13 stitches for cuts to the face, neck, and shoulder, due to attack by another inmate, fulfilled requirement); *Zimmerman v. Macomber,* No. 95 Civ. 0882 (DAB), 2001 WL 946383, at *4 (S.D.N.Y. Aug. 21, 2001) (inmate who had been repeatedly stabbed by another inmate met substantial risk requirement); *see also George v. Burton,* No. 00-Civ-143 (NRB), 2001 WL 12010, at * 3 (S.D.N.Y. Jan. 4, 2001) ("the pervasive risk of harm requirement is met when prison guards simply stand by and permit an attack

to proceed."); *Lewis v. Siwicki*, 944 F.3d 427, 433 (2d Cir. 2019) (threat of future assault constituted risk of serious harm). A reasonable juror could find Plaintiff was subject to a substantial risk of serious harm.

A reasonable juror could also find Defendants were deliberately indifferent to Plaintiff's safety. The Supreme Court has held deliberate indifference can be demonstrated by showing either that prison officials failed to respond to a particularized threat to the plaintiff or by showing a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and circumstances suggest the defendant had been exposed to information about the risk. *Warren,* 476 F. Supp. 2d at 411 (*citing Farmer,* 511 U.S. at 842).

Here, Defendants had actual or constructive knowledge that their failure to separate the inmates would lead to additional injury to Plaintiff. Defendants claim they will testify they did not know Plaintiff and Reyes were going to fight one another, as they did not see Reyes or understand what exactly was going on until Plaintiff ran away from them and toward Reyes, caught up with Reyes, and attacked Reyes. Defs.' MOL at p. 20 (*citing* Alban Decl. ¶¶ 10-11, 15; Dapcevic ¶¶ 8-11, 14; Sturtevent Decl. ¶¶ 9-12, 15.) But a reasonable jury could find the Defendants, under the circumstances they faced, should have gathered that a fight was going to occur and acted to prevent it when they were given the opportunity to do so.

Neither Defendant Officer Alban nor Defendant Officer Dapcevic include in their declarations that Plaintiff ran away from them, toward Reyes. Officer Alban declares, Plaintiff was walking toward the Defendants, bleeding heavily from his head, screaming someone had done something to him, and holding a then-unidentified object. (Alban Decl. ¶ 10.) Officer Alban proceeds to say he then ran toward Plaintiff who ignored orders to drop the item and get onto the ground. (*Id.* at ¶ 11.) He does not indicate Plaintiff changed direction or ran away from the Officers;

and he should not have indicated as much, since doing so would have contradicted his prior assertions that he was in between Plaintiff and Reyes, "trying to create a wall between" them and that Plaintiff appeared to be "looking right through us at, going toward Reyes." *See* Ex. 3 at 241:25-244:17. In any event, a reasonable jury could find that Officer Alban should have known a further attack on Plaintiff was inevitable and that he had the opportunity to prevent it when he created a wall between the inmates.

Officer Dapcevic's declaration indicates, as he walked toward Plaintiff (although Officer Alban declares the officers "ran" toward Plaintiff, *see* Alban Decl. 11), something caught Plaintiff's attention and Plaintiff began walking quickly toward the wall where he struck Reyes with the item he was carrying. *See* Dapcevic Decl. ¶¶ 9-11. A reasonable jury could also find Officer Dapcevic should have known a further attack on Plaintiff was inevitable and that he had the opportunity to prevent it before the inmates made contact with one another.

Defendant Officer Sturtevent's declaration is the only one that supports the Defendants' contentions. Given that his allegations are not entirely consistent with the other two Yard officers, a jury should be able to weigh the evidence and make its own credibility findings. In any event, a jury could find the officers unlawfully failed to intervene before an already severely injured Plaintiff and Reyes fought.

Defendants also argue that alternatively, Plaintiff's deposition testimony that inmate Reyes grabbed Defendant Officer Alban before another officer grabbed Alban out of the way supports the propriety of summary judgment dismissal.[11] They claim it was reasonable to step away from

---

[11] The record supports Plaintiff's testimony. Officer Alban testified he was in between the inmates before they fought. (Ex. 3 at 241:25-244:17.) Another inmate, Davon Gwin, witnessed Reyes grab hold of a Correction Officer. (56.1 at ¶ 19 Resp.; Ex. 6 at 11:8-13:4; 20:11-21:5, 21:6-22:3.) He and a second inmate, Joseph Foster, witnessed another Officer pull the first Officer out of the way when Reyes lunged at Plaintiff. (56.1 at ¶ 19 Resp.; Ex. 6 at 11:8-13:4, 22:11-24:4, 26:7-27:6; Ex. 8 at 8:18-10:14; 21:17-22:15.)

the inmates while they awaited backup, because they were unarmed.[12] Defendants rely upon *Brown v. Correction Officer Shon Chambers*, No. 92 CIV. 7622 (LAP), 1995 WL 234681, at *4 (S.D.N.Y. Apr. 20, 1995), *aff'd sub nom. Brown v. Chamber*, 99 F.3d 402 (2d Cir. 1995), and assert they only needed to act reasonably and that they had no responsibility to intervene physically between two fighting inmates. Their reliance is misplaced because the inmates were not yet fighting when the officers had and refused the opportunity to intervene. A reasonable jury can find it was wholly unreasonable for the Defendants, who were accompanied by three or four other unknown officers, to step away and allow two inmates, one who was severely injured, to physically fight because one of the inmates grabbed, not struck, one of the six or seven officers. The Court should not grant summary judgment.

POINT IV:     DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity does not protect those who are plainly incompetent or knowingly violate the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 740. (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 248–49 (S.D.N.Y. 1998) (*citing cases*) ("Whether a reasonable correctional officer would have believed that defendants' conduct was lawful depends upon plaintiff's conduct, defendants' conduct, and the surrounding circumstances."). This does not suggest an official action is protected under the doctrine unless the specific act has been previously held unlawful. *Anderson v. Creighton*, 483

---

[12] Defendants apparently do not rely on Plaintiff's version of events for this portion of their argument, as Plaintiff has consistently alleged there were six of seven officers in the vicinity. *See* 56.1 at ¶ 14 Resp. The Court should also note the Defendants were not unarmed; at least one officer had a baton.

U.S. at 640. It merely provides that in light of the pre-existing law, the unlawfulness of the action must be apparent. (*Id.*) "The pertinent inquiry is how a reasonable official in the defendant's position would respond." *Bonilla v. Brancato*, No. 99 CIV. 10657 (LTS) (JCF), 2002 WL 31093614, at *8 (S.D.N.Y. Sept. 18, 2002) (*citing Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir. 1992)).

Officer Dapcevic cannot reasonably allege he is entitled to qualified immunity for striking Plaintiff over the head with his baton. For starters, he himself testified it would not have been reasonable to strike Plaintiff in the head and that he had been trained not to do so. (56.1 at ¶ 22 Resp., ¶ 37.) "An official cannot benefit from the doctrine of qualified immunity if he had 'fair warning' that his conduct deprived his victim of a constitutional right." *Gibson v. Brooks*, 335 F. Supp. 2d 325, 335 (D. Conn. 2004) (*citing Hope v. Pelzer,* 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Dapcevic cannot now be heard to say that if he did strike Plaintiff in his head with a baton, he did not know he was violating Plaintiff's right to be free of unreasonable and excessive force.

The remaining Defendants are likewise not entitled to qualified immunity. Plaintiff's right to be free of assault was clearly established and the Officers had reason to know they could not be deliberately indifferent to Plaintiff's constitutional right. *See Gibson,* 335 F. Supp. 2d at 335. Reasonable officers would agree it was unreasonable to leave the bloody and dazed Plaintiff to fend for himself shortly after he had been brutally attacked, by stepping out of the way so that his attacker could attack again.

And, since there remain disputes of material fact regarding plaintiff's conduct, defendants' conduct, and the surrounding circumstances, qualified immunity should not be considered at this stage. *See Bonilla,* 2002 WL 31093614, at *8 ("The pertinent inquiry is how a reasonable official

24

in the defendant's position would respond. Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.") (*internal citations omitted*).

The Court should not apply the doctrine of qualified immunity.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment, together with such other and further relief as this Court deems just and proper.

Dated: Carle Place, New York
      April 30, 2021

SOKOLOFF STERN LLP
*Attorneys for Plaintiff*

By:    Mark A. Radi
       Vernée C. Pelage
       179 Westbury Avenue
       Carle Place, New York 11514
       (516) 334-4500
       File No. 130065

25
