UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM CONSTANT,

                Plaintiff,

-against-

ALBERT PRACK, Director of Special Housing and Inmate Disciplinary Programs, DDOCS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

16-CV-03985 (PMH)

PHILIP M. HALPERN, United States District Judge:

    William Constant ("Plaintiff") brings this action in connection with an incident that occurred in a recreation yard at Green Haven Correctional Facility, a maximum security prison, in Fishkill, New York ("Green Haven"), on May 27, 2013. (Doc. 40, "Am. Compl."). Following motion practice before Judge Román—to whom this matter was assigned before it was transferred to this Court on April 13, 2020—and a stipulation signed by counsel on March 20, 2021 and "so ordered" by this Court on March 22, 2021, Plaintiff proceeds against only three known Corrections Officers ("COs") employed by the New York State Department of Corrections and Community Supervision: (1) Nedzad Dapcevic ("Dapcevic"); (2) Antonio Alban ("Alban"); and (3) Brian Sturtevent ("Sturtevent," and collectively, "Defendants"). (Doc. 49 (dismissing claims for relief against William Lee, Frederick Bernstein, Robert Bentivegna, and Albert Prack); Doc. 103 (dismissing claims for relief against COs Jonathan Markwick ("Markwick"), Bryan Hess ("Hess"), Michael Vennero ("Vennero"), and Sergeant Ronald Cabral ("Cabral")))[1] Only two claims for relief proceed against Defendants: (1) Eighth Amendment excessive force; and (2) Eighth

---

[1] Judge Román's prior decisions in this case are available on commercial databases. *See Constant v. Prack*, No. 16-CV-03985, 2019 WL 3287818 (S.D.N.Y. July 19, 2019); *Constant v. Annucci*, No. 16-CV-03985, 2018 WL 1684411 (S.D.N.Y. Apr. 5, 2018).

Amendment failure to protect. (Am. Compl. ¶¶ 50-69).[2] Defendants assert eight affirmative defenses in their Answer, filed on June 20, 2018. (Doc. 43).

The Court held a pre-motion conference by telephone regarding Defendants' anticipated motion for summary judgment on February 2, 2021. (Feb. 2, 2021 Min. Entry). The parties, in accordance with the briefing schedule set by the Court, filed all their motion papers on May 14, 2021. (*See* Doc. 104; Doc. 105, "Def. Br."; Doc. 106; Doc. 107, "Collins Decl."; Doc. 108, "Alban Decl."; Doc. 109, "Cabral Decl."; Doc. 110, "Dapcevic Decl."; Doc. 111; Doc. 112, "Markwick Decl."; Doc. 113, "Sturtevent Decl."; Doc. 114; Doc. 115, "Reply Br."; Doc. 116; Doc. 117, "Pelage Decl."; Doc. 118, "Hurley Aff."; Doc. 119, "Opp. Br."; Doc. 120-1, "Rev. 56.1 Stmt.").[3]

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

---

[2] Plaintiff also proceeds against "John and Jane Does 1-20." (*See generally* Am. Compl.). There is no indication that these individuals have been identified or served, but they remain parties to this action. Any claims against these unknown actors must, at this juncture, be—and are hereby—dismissed without prejudice for failure to prosecute. "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, No. 07-CV-02027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010); *see also Vanderwoude v. City of New York*, No. 12-CV-09046, 2014 WL 2592457, at *8 (S.D.N.Y. June 10, 2014) ("Discovery in this case has now closed, and the record does not reflect any attempts by Plaintiff to identify and/or serve this defendant. Indeed, neither party has mentioned this defendant in the summary judgment briefing. Based on this record, the Court *sua sponte* dismisses Plaintiff's claims against Defendant Police Officer Jane Doe Number 1 without prejudice for failure to prosecute.").

[3] Defendants, alongside their motion for summary judgment, filed a document entitled "Defendants' Statement of Material Facts Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 with Plaintiff's Amended Response, and Plaintiff's Additional Material Facts with Defendants' Response." (Doc. 106). Plaintiff served a revised copy of this document with his opposition papers. (Rev. 56.1 Stmt.). According to Plaintiff, "[t]he only changes . . . are to Plaintiff's citations. The citations have been updated so that they correspond with exhibit designations" in Plaintiff's supporting declaration. (Doc. 120 at 1). This modification, Plaintiff explains, was done for the Court's convenience because his citations previously corresponded to Bates Numbers used during discovery. (*Id.*). Defendants, in a footnote in their reply brief, object and insist that Plaintiff's changes "alter[] evidence previously cited in the original 56.1." (Reply Br. at 1 n.1). As Defendants do not explain how Plaintiff's changes prejudiced them and their objection was voiced only in a footnote in a legal brief, the Court considers the revised submission in adjudicating the extant motion. *Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-00119, 2019 WL 3083045, at *5 n.6 (W.D.N.Y. July 15, 2019) ("[I]t is well-established that the Court need not consider arguments made only in footnotes.").

## BACKGROUND

The Court draws the undisputed material facts from the pleadings, the Revised 56.1 Statement of Material Facts, the Declarations of Deanna L. Collins, Vernee C. Pelage, Antonio Alban, and Ron Cabral, together with exhibits, the Declarations submitted by Dapcevic, Hess, Markwick, Sturtevent, Vennero, and the Affidavit of Michael Hurley.

Plaintiff was an inmate incarcerated at Green Haven on May 27, 2013. (Rev. 56.1 Stmt. ¶ 1; *see also* Collins Decl., Ex. A; *id*., Ex. B). Around 7:00 p.m. that evening—about an hour before sunset—Plaintiff sat at a table in the recreation yard playing cards with Michael Hurley, another inmate. (Rev. 56.1 Stmt. ¶ 2; *see also* Collins Decl., Ex. C at 34:16-35:5, 68:20-69:5). Anywhere from 300 to 600 inmates were present in the recreation yard, which measures approximately 100-110 square feet, as Plaintiff played cards. (Rev. 56.1 Stmt. ¶¶ 3, 10; *see also* Collins Decl., Ex. C at 102:4-9; Alban Decl. ¶ 6; Dapcevic Decl. ¶ 6; Sturtevent Decl. ¶ 6; Pelage Decl., Ex. 14 at 56:9-16). Defendants were assigned to supervise inmates in this recreation yard. (Rev. 56.1 Stmt. ¶ 5; *see also* Alban Decl. ¶ 4; Dapcevic Decl. ¶ 4; Sturtevent Decl. ¶ 4).[4] The total number of COs in the recreation yard at this time is unclear. (Rev. 56.1 Stmt. ¶ 5; *see also* Collins Decl., Ex. C at 71:6-9; Alban Decl. ¶ 5; Dapcevic Decl. ¶ 5; Sturtevent Decl. ¶ 5; Pelage Decl., Ex. 1 at 44:12-45:5; *id*., Ex. 2 at 32:7-21, 38:4-8; *id*., Ex. 3 at 221:10-222:13).

As Plaintiff was playing cards, another inmate came up from behind and cut him on his forehead, cheek, and right ear with a sharp object. (Rev. 56.1 Stmt. ¶ 11; *see also* Collins Decl., Ex. C at 35:4-7, 61:24-62:6, 99:24-100:3; Opp. Br. at 4 n.5 (clarifying that Plaintiff disputed only the claim that he was cut in the head)). Plaintiff, in response, spun out of his attacker's grasp, and

---

[4] Plaintiff disputes any suggestion that Defendants were actually "supervising" inmates at this time. (Rev. 56.1 Stmt. ¶ 5). Plaintiff does not challenge that Defendants were expected to supervise inmates in the recreation yard as part of their duties. (*Id*.).

fell to the ground. (Rev. 56.1 Stmt. ¶ 11; *see also* Collins Decl., Ex. C at 35:7-8, 59:8-12). As Plaintiff stood, he picked up a rock measuring about three by four inches. (Rev. 56.1 Stmt. ¶¶ 11, 13; *see also* Collins Decl., Ex. C at 35:10-11, 59:24-60:3; Alban Decl. ¶ 14, Ex. A). The attack was instantaneous, lasting approximately one second. (Rev. 56.1 Stmt. ¶ 11; *see also* Collins Decl., Ex. C at 62:7-13). Defendants did not witness the attack and had no reason to anticipate it. (Rev. 56.1 Stmt. ¶ 12; *see also* Collins Decl., Ex. C at 69:24-70:3, 124:6-12; Alban Decl. ¶¶ 10, 15; Dapcevic Decl. ¶ 14; Sturtevent Decl. ¶¶ 10, 15).[5] As Plaintiff came to his feet, he saw another inmate, William Reyes ("Reyes"). (Rev. 56.1 Stmt. ¶ 14; *see also* Collins Decl., Ex. C at 35:8-10).

Believing that Reyes was the assailant, Plaintiff followed Reyes—with rock in hand—as Reyes backpedaled away, retreating. (Rev. 56.1 Stmt. ¶ 14; *see also* Collins Decl., Ex. C at 35:13-16, 60:4-61:9, 69:6-11). Plaintiff and Reyes tried to strike each other as the men made their way around the recreation yard. (Rev. 56.1 Stmt. ¶ 14; *see also* Collins Decl., Ex. C at 35:13-17, 65:13-16). The pursuit ended near Defendants. (Rev. 56.1 Stmt. ¶ 14; *see also* Collins Decl., Ex. C at 35:17-20, 69:17-70:3). When Defendants saw Plaintiff approaching, they saw that he was bleeding and carrying something in his hand. (Rev. 56.1 Stmt. ¶ 15; *see also* Alban Decl. ¶ 10; Dapcevic Decl. ¶¶ 8-9; Sturtevent Decl. ¶ 10). Sturtevent, upon seeing Plaintiff, called for backup. (Rev.

---

[5] Plaintiff disputes this fact, claiming that Defendants "knew or should have known Plaintiff and/or other inmates were at risk of being slashed or otherwise injured . . . because it was not an uncommon occurrence" in the recreation yard. (Rev. 56.1 Stmt. ¶ 12). The basis for this objection is premised on a portion of Markwick's deposition where he testified that he could not recall this specific fight because "things like this happen[ed]" in the yard. (Pelage Decl., Ex. 34 at 18:6-19:5). As there is no dispute that Defendants did not see the initial attack, it appears Plaintiff intends to "demonstrate 'a substantial risk of inmate attacks [which were] longstanding, pervasive, well-documented, or expressly noted by prison officials . . . and that the officials being sued were exposed to information concerning the risk and thus, must have known about it.'" *Fisher v. Miller*, No. 16-CV-01175, 2018 WL 4610679, at *5 (N.D.N.Y. Apr. 30, 2018) (quoting *Sullivan v. Graham*, No. 09-CV-01211, 2011 WL 4424355, at *6 (N.D.N.Y. Aug. 6, 2011) (alterations in original)), *adopted by* 2018 WL 3854000 (N.D.N.Y. Aug. 14, 2018); *see also Stephens v. Venettozzi*, No. 13-CV-05779, 2016 WL 929268, at *21 (S.D.N.Y. Feb. 24, 2016), *adopted sub nom. Stephens v. Venetozzi*, 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016). Generalized testimony about how frequently inmate fights break out, without specific information about those events or linking Defendants to those events, cannot create a genuine issue of material fact as to Defendants' knowledge about the surprise attack.

56.1 Stmt. ¶ 16; *see also* Alban Decl. ¶ 14; Dapcevic Decl. ¶ 13; Sturtevent Decl. ¶ 10). Defendants insist that Plaintiff was given direct orders at this juncture to drop the object in his hand, but failed to do so. Plaintiff counters, however, that no such order was given. (Rev. 56.1 Stmt. ¶ 18; *see also* Collins Decl., Ex. C at 103:5-16; Alban Decl. ¶¶ 11-12; Sturtevent Decl. ¶¶ 11-12; Pelage Decl., Ex. 6 at 14:5-22; *id.*, Ex. 9 at 3; *id.*, Ex. 13 at 78:12-23).

As Plaintiff approached Defendants, they formed a semi-circle around him and Reyes grabbed Alban—placing Alban between himself and Plaintiff like a human shield. (Rev. 56.1 Stmt. ¶ 19; *see also* Collins Decl., Ex. C at 35:21-36:7, 76:3-77:10; Pelage Decl., Ex. 6 at 11:17-22, 20:25-21:5). Another CO grabbed Alban away from Reyes, clearing the way for Plaintiff and Reyes to fight. (Rev. 56.1 Stmt. ¶ 19; *see also* Collins Decl., Ex. C at 36:7-12, 79:19-80:8; Pelage Decl., Ex. 8 at 9:13-23, 21:17-22:5). As Plaintiff and Reyes fought, Plaintiff hit Reyes in the head with the rock. (Rev. 56.1 Stmt. ¶ 20; *see also* Collins Decl., Ex. C at 36:11-19, 82:22-25, 89:11-90:7; Alban Decl. ¶ 13; Dapcevic Decl. ¶¶ 11-12; Sturtevent Decl. ¶ 13).

The parties dispute precisely when and how, but they agree that at some point Dapcevic hit Plaintiff with a baton. (Rev. 56.1 Stmt. ¶ 22; *see also* Collins Decl., Ex. C at 29:7-11, 36:20-37:2, 90:14-92:17, 96:14-98:15, 101:2-12, 124:13-125:9 (Plaintiff testifying that Dapcevic used the baton to hit him in the head while he was on top of Reyes); Dapcevic Decl. ¶¶ 13-14 (stating that, after Plaintiff stood up and stopped hitting Reyes, Dapcevic hit Plaintiff with the baton in the shoulder because Plaintiff did not comply with orders to drop the rock); Pelage Decl., Ex. 11 (Cabral's report stating that "[w]hen [Plaintiff] started to advance towards Dapcevic in a[n] aggressive manner, CO Dapcevic struck [Plaintiff] twice . . . [in] the upper right shoulder area with his baton"); *id.*, Ex. 13 at 92:24-93:22 (Dapcevic's testimony that he struck Plaintiff after Plaintiff stopped hitting Reyes and approached without dropping the rock); *id.*, Ex. 17; *id.*, Ex. 18

5

(inmate misbehavior report written by Dapcevic indicating that he struck Plaintiff "on the upper right side of his body" because Plaintiff failed to drop the rock); Hurley Aff. ¶¶ 7-8 (inmate statement that he did not see Plaintiff make an aggressive motion toward any Defendant and saw Defendant get struck in the "head and/or neck area")). Neither Alban nor Sturtevent saw Dapcevic hit Plaintiff. (Rev. 56.1 Stmt. ¶ 36; Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15; Pelage Decl., Ex. 5 at 71:2-5; *id*., Ex. 7 at 40:12-15).

After being struck with the baton, Plaintiff was handcuffed without incident. (Rev. 56.1 Stmt. ¶ 25; *see also* Collins Decl., Ex. C at 108:6-11; Dapcevic Decl. ¶ 13). Plaintiff was then escorted to the medical clinic and transported to a local hospital for treatment. (Rev. 56.1 Stmt. ¶ 26; *see also* Collins Decl., Ex. C at 118:19-119:5; Cabral Decl. ¶ 8; Dapcevic Decl. ¶ 13; Markwick Decl. ¶ 5). Plaintiff presented with: (1) a 10-centimeter vertical laceration to his right temple, which was deep, open, with an approximate ½-centimeter gap, and bleeding profusely; (2) an approximately 3-centimeter superficial cut to his right cheek; (3) an approximately 1-centimeter laceration to the top of his head; and (4) an approximately 6-centimeter laceration to the right ear and back of head, which was very deep and bisected the ear. (Rev. 56.1 Stmt. ¶ 26; *see* Collins Decl., Ex. F; *id*., Ex. G). Plaintiff received approximately 65 stitches to close the cuts. (Rev. 56.1 Stmt. ¶ 26; *see also* Collins Decl., Ex. C at 121:25-122:7).

This litigation followed.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference

could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

Defendants seek summary judgment on all theories undergirding both of the remaining claims for relief. The Court addresses these claims *seriatim*.

I. First Claim for Relief: Excessive Force

The first claim for relief, excessive force, complains that "Dapcevic and/or other defendant officers subjected plaintiff to potentially deadly physical force by brutally attacking him physically, including striking him on the head twice with a baton, without provocation from plaintiff and without any justification whatsoever." (Am. Compl. ¶ 51). The Court considers the claim for relief as stated against Dapcevic before considering the theories of liability as to Alban and Sturtevent.

A.  The Excessive Force Claim Against Dapcevic

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)).

"The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted). The Court, in assessing this component, must determine whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

As for the subjective element, that "component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id*. (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). Factors considered at this step include "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Castro v. City of New York*, No. 16-CV-08147, 2020 WL 6782000, at *10 (S.D.N.Y. Nov. 18, 2020) (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). In short, "determining whether officers used

9

*excessive* force necessarily turns on the need for the force used." *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016) (emphasis in original). Given this naturally fact-intensive inquiry, while there are situations where summary judgment dismissing such a claim for relief is proper, *see, e.g.*, *Torres*, 2019 WL 4784756, at *4-5, *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *14-15 (S.D.N.Y. July 18, 2019), determinations in this context are usually left for the jury to decide, *Thompson v. Booth*, No. 16-CV-03477, 2021 WL 918708, at *6 (S.D.N.Y. Mar. 10, 2021).

The Court, in this case, is presented with a credibility dispute. The parties have put forth opposing evidence pertaining to (at least): (1) where Dapcevic struck Plaintiff; (2) why Dapcevic struck Plaintiff; and (3) the larger context in which force was applied. (*See* Rev. 56.1 Stmt. ¶¶ 3, 5, 10, 22; *see also* Collins Decl., Ex. C at 29:7-11, 36:20-37:2, 71:6-9, 90:14-92:17, 96:14-98:15, 101:2-12, 102:4-9, 124:13-125:9; Alban Decl. ¶¶ 5-6; Dapcevic Decl. ¶¶ 5-6, 13-14; Sturtevent Decl. ¶¶ 5-6; Pelage Decl., Ex. 1 at 44:12-45:5; *id*., Ex. 2 at 32:7-21, 38:4-8; *id*., Ex. 3 at 221:10-222:13; *id*., Ex. 11; *id*., Ex. 13 at 92:24-93:22; *id*., Ex. 14 at 56:9-16; *id*. Ex. 17; *id*., Ex. 18; Hurley Aff. ¶¶ 7-8). These facts go to the heart of determining the reasonableness of the force used, and making that determination requires that one version of events be selected over another—a task strictly within the province of the jury. *See generally Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment." (internal quotation marks omitted)); *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) ("In deciding a motion for summary judgment, the court is duty bound not to weigh evidence or assess the credibility of witnesses.").

In sum, the admissible evidence provides different accounts of what transpired on May 27, 2013, and resolving what happened is a question for the jury. Consequently, because Defendants

cannot carry their burden of establishing both that there is no genuine issue of material fact *and* that they are entitled to judgment as a matter of law on this claim for relief, the motion for summary judgment on the Eighth Amendment excessive force claim against Dapcevic is denied.

### B. The Excessive Force Claim Against Alban and Sturtevent

Alban and Sturtevent are implicated in the first claim for relief insofar as Plaintiff alleges that "other . . . officers," apart from Dapcevic, used force against him. (Am. Compl. ¶ 51). The parties also interpret this claim for relief to encompass a claim against Alban and Sturtevent based on their failure to intervene in the use of excessive force. (*See* Def. Br. at 22-23; Opp. Br. at 17-19). Only the latter theory of liability survives the extant motion.

Insofar as Plaintiff intended to press an excessive force claim against Alban and Sturtevent, Defendants have established, based on undisputed evidence, that neither officer used force of any kind against Plaintiff. (*See* Def. Br. at 12, 15). Moreover, even if this were not the case, Plaintiff conceded the argument because he failed to respond to it in his opposition brief. *See Concha v. Purchase Coll. State Univ. of New York*, No. 17-CV-08501, 2019 WL 3219386, at *5 (S.D.N.Y. July 17, 2019) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)). Consequently, any claim for relief against Alban or Sturtevent based on a theory that they themselves used excessive force against Plaintiff is dismissed.

To the extent Plaintiff proceeds on a failure to intervene theory, however, that claim demands a different result on this record.

In order for Plaintiff to prevail against Alban or Sturtevent based on their failure to intervene in the use of excessive force, Plaintiff must establish that: "(1) the officer had a realistic

11

opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Livingston v. Hoffnagle*, No. 19-CV-00353, 2021 WL 3888283, at *5 (N.D.N.Y. Aug. 3, 2021) (internal quotation marks omitted), *adopted by* 2021 WL 3885247 (N.D.N.Y. Aug. 31, 2021). "Importantly, liability will attach only if the official 'observes excessive force is being used or has reason to know that it will be.'" *Valverde v. Folks*, No. 19-CV-08080, 2020 WL 5849515, at *7 (S.D.N.Y. Sept. 30, 2020) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)).

Neither Alban nor Sturtevent saw Dapcevic strike Plaintiff. (Rev. 56.1 Stmt. ¶ 36; Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15; Pelage Decl., Ex. 5 at 71:2-5; *id.*, Ex. 7 at 40:12-15). The question that remains open, however, is whether Alban or Sturtevent *had reason to know* that Dapcevic would strike Plaintiff. Defendants do not cite any evidence establishing Alban and Sturtevent's lack of knowledge about the use of force; instead, Defendants' argument suggests in conclusory fashion that because those men did not *see* Dapcevic use force, they had no reason to *know* that force would be used. (Def. Br. at 23; Reply Br. at 9).[6] Adopting Defendants' argument requires that the Court make factual determinations and disregard the reality that seeing an event unfold and having reason to know it was going to unfold are separate concepts. A reasonable juror could conclude on these disputed facts—whether Dapcevic hit Plaintiff as Plaintiff beat Reyes with the rock *or* Dapcevic hit Plaintiff because Plaintiff refused to drop the rock—that even if Alban and Sturtevent did not technically see Dapcevic use his baton, they still had reason to know Dapcevic would do so. *See Decayette v. Goord*, No. 06-CV-00783, 2009 WL 1606753, at *8 (N.D.N.Y. June

---

[6] Indeed, the evidence cited in the Revised 56.1 Statement speaks only to the fact that Alban and Sturtevent did not see Dapcevic use the baton; it is silent as to what they knew about Dapcevic's use of force. (Rev. 56.1 Stmt. ¶ 22; *see also* Alban Decl. ¶ 15; Sturtevent Decl. ¶ 15).

8, 2009) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Consideration of the three elements of a failure to intervene claim underscores the necessity of this result: (1) Defendants have not established with admissible evidence on these disputed facts that they were unaware that Dapcevic was going to use his baton, and the facts suggest they might have had such knowledge; (2) as discussed above, there is a genuine issue of material fact as to how and why Dapcevic used force; and (3) given the logical inferences of the evidence presented to the Court, neither Alban nor Sturtevent took any steps to prevent Dapcevic's use of force. Defendants' motion for summary judgment on this theory must, accordingly, be denied because they have not established both the absence of genuine issues of material fact and their entitlement to judgment as a matter of law.

II.  Second Claim for Relief: Failure to Protect

The second claim for relief is pressed against all Defendants and posits that Defendants, in violation of the Eighth Amendment, failed to protect Plaintiff: (1) from Reyes' initial attack; and (2) when they subsequently allowed Plaintiff and Reyes to fight. (*See* Am. Compl. ¶¶ 55-69).

In order for Plaintiff to establish a failure to protect claim under the Eighth Amendment, he must show that Defendants acted with "deliberate indifference." *Edwards v. Black*, 854 F. App'x 382, 383 (2d Cir. 2021). The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm . . . ." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks omitted). On this type of claim, "[a] plaintiff may show a substantial risk of harm from either a specific assailant or

a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented." *Dietrich v. Cty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (first alteration added, internal citations and quotation marks omitted). The second prong, the "subjective prong," requires action with a" sufficiently culpable state of mind, which in prison-conditions cases, is one of deliberate indifference to inmate health or safety." *Morgan*, 956 F.3d at 89 (internal quotation marks omitted). "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (internal quotation marks omitted).

With respect to the objective prong, the focus of the Court's inquiry concerns "not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" *Randle v. Alexander*, 960 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Gilmore v. Rivera*, No. 13-CV-06955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996)). The inmate must show that the risk of "actual or imminent" future harm is "so grave that it violates contemporary standards of decency." *Id*. (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003); *Braxton v. Nichols*, No. 08-CV-08568, 2010 WL 1010001, at *11 (S.D.N.Y. Mar. 18, 2010)).

A. The Initial Attack

Insofar as this claim is based on the initial attack, Defendants' motion for summary judgment must be granted for two separate reasons. First, while Plaintiff argued in passing that the

facts support an Eighth Amendment claim as to both theories of liability (i.e., the initial attack and ensuing fight), he offers no substantive explanation as to how a claim based on the initial attack survives. (*See* Opp. Br. at 19-23). The argument is, therefore, conceded.[7] *See Concha*, 2019 WL 3219386, at *5. Second, even if Plaintiff had not conceded the issue, he was the victim of a *surprise* attack. It is well-established that prison officials cannot be deliberately indifferent to a surprise attack. *See, e.g.*, *Carrasco v. Annucci*, No. 17-CV-09643, 2020 WL 5038561, at *3 (S.D.N.Y. Aug. 26, 2020) ("Courts routinely deny deliberate indifference claims based upon surprise attacks." (internal quotation marks omitted)); *Rennalls*, 2015 WL 5730332, at *4; *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013); *see also Charles v. Rockland Cty. Off. of the Sheriff*, No. 16-CV-00166, 2019 WL 1299804, at *3 (S.D.N.Y. Mar. 21, 2019) (granting summary judgment in the Fourteenth Amendment context because that less-stringent standard "is not satisfied when the surprise attack was a surprise to everyone involved, including plaintiff"), *appeal dismissed by* No. 19-1041, 2019 WL 5301898 (2d Cir. Sept. 5, 2019).

Insofar as Plaintiff seeks to proceed on a failure to protect claim based on the initial attack, Defendants' motion for summary judgment is granted and that claim for relief is dismissed.

### B. The Second Attack

Summary judgment cannot be granted as to the second theory of liability, however, because there are genuine issues of material fact.

Plaintiff, in one version of events, was attacked, chased Reyes, and—agitated, ignoring direct orders, and intending to even the score—pummeled Reyes with a rock after catching up with him. (*See* Alban Decl. ¶¶ 10-13; Dapcevic Decl. ¶¶ 9-12; Sturtevent Decl. ¶¶ 10-13). In such a

---

[7] That portion of the opposition brief addressing failure to protect is entitled "Defendant Officers Are Not Entitled to Summary Judgment for Their Failure to Protect Plaintiff from *Further* Assault by Inmate Reyes." (Opp. Br. at 19 (emphasis added)). That title only serves to further support the Court's conclusion that Plaintiff abandoned this theory of liability.

15

situation (i.e., where Plaintiff pursues Reyes seeking retribution) Plaintiff could hardly be heard to complain that Defendants failed to protect him from the fight he sought out. *See, e.g.*, *Louis-Charles v. Courtwright*, No. 11-CV-00147, 2014 WL 457951, at *6 (N.D.N.Y. Feb. 4, 2014) ("The undisputed evidence shows that he was the physical aggressor in each of his altercations with other inmates. Indeed, the gravamen of Plaintiff's complaint, to which he testified at length at his deposition, is that Defendants failed to protect him from his own violent tendencies. . . . . [A]n inmate's own violent tendencies are not the type of 'substantial risk of serious harm' protected by the Constitution."); *Parks v. City of New York*, No. 04-CV-02490, 2006 WL 944659, at *6 (S.D.N.Y. Apr. 11, 2006) (dismissing failure to protect claim where it appeared that the plaintiff was involved in a plan to rob another inmate and was, therefore, "an instigator") (Chin, J.).

However, in another version of the story, as Plaintiff approached, Defendants saw clearly that Plaintiff was injured and bleeding, and heard him shouting, "Look what he did to me!" (Rev. 56.1 Stmt. ¶¶ 15, 18; *see also* Collins Decl., Ex. C at 71:25-75:16; Alban Decl. ¶¶ 10-11; Dapcevic Decl. ¶¶ 8-9; Sturtevent Decl. ¶¶ 10-11; Pelage Decl., Ex. 7 at 23:5-20). While the extent of Plaintiff's injuries cannot support the objective element with respect to the initial attack—indeed, such a finding would ignore the direction that this Court's focus is "not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm," *Mazyck v. Keller*, 531 F. Supp. 3d 630, 642 (W.D.N.Y. 2021) (internal quotation marks omitted) —these injuries would certainly present "a condition of urgency, one that may produce death, degeneration, or extreme pain" leading up to the second attack. *See Gilmore*, 2014 WL 1998227, at *3 (internal quotation marks omitted); *see generally Coronado v. Goord*, No. 99-CV-01674, 2000 WL 1372834, at *3 (S.D.N.Y. Sept. 25, 2000) ("The documentation of several stab wounds serious enough to justify transporting Coronado to an off-site hospital is evidence that there was a

risk of sufficiently serious harm to state a claim for the deprivation of Coronado's Eighth Amendment rights."); *King v. Dep't of Corr.*, No. 95-CV-03057, 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) ("[T]he injury sustained by the plaintiff, a cut to his face, neck, and shoulder requiring 12-13 stitches, and the manner in which he received the injury, are sufficient to satisfy the objective requirement of the Eighth Amendment claim."). Then, after Reyes lost his human shield, he attacked Plaintiff again, forcing Plaintiff to defend himself as Defendants watched. (Collins Decl., Ex. C at 78:13-80:11, 81:12-23; *see also* Pelage Decl., Ex. 6 at 12:3-12, 23:17-24:4, 30:9-15; *id.*, Ex. 8 at 9:21-10:5). Although Defendants disclaim subjective awareness that Plaintiff and Reyes were going to fight, this version of events presents: (1) Plaintiff clearly injured; (2) Plaintiff pursuing Reyes; (3) Plaintiff yelling, "Look what he did to me!"; and (4) Reyes hiding behind Alban. Notwithstanding Defendants' position as to their subjective awareness (or unawareness) of an impending fight, giving Plaintiff the benefit of every inference on these facts, a reasonable jury could find Defendants' claimed ignorance uncredible.

In light of the foregoing, the motion for summary judgment with respect to Plaintiff's claim that Defendants failed to protect him against Reyes' second attack, is denied.

III. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because: (1) reasonable officers could disagree as to whether Dapcevic's use of force was necessary; and (2) Defendants did not know that Plaintiff and Reyes were going to fight and, in any event, reasonable officers could disagree about the proper course of action during the fight. (Def. Br. at 23-25).

When evaluating the existence of qualified immunity at summary judgment, the Court must ask: "(1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a

violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Applying these considerations, Plaintiff's Eighth Amendment rights to both be free from excessive force and be protected against another inmate's attack were clearly established on May 27, 2013. *See Tatum v. City of New York*, No. 06-CV-04290, 2009 WL 124881, at *11 (S.D.N.Y. Jan. 20, 2009). The question, then, is whether the evidence, viewed in a light most favorable to Plaintiff, makes out a violation of those rights. The Court has held that there are genuine issues of material fact on that subject. (*See* discussion *supra*). Defendants' motion for summary judgment based on qualified immunity is, therefore, denied. *See Zwick v. Town of Cheektowaga*, No. 17-CV-00727, 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense." (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)); *Betts v. Rodriquez*, No. 15-CV-03836, 2017 WL 2124443, at *5 (S.D.N.Y. May 15, 2017); *Tatum*, 2009 WL 124881, at *11 ("Dismissal on the basis of a qualified immunity defense is inappropriate where there are facts in dispute that are material to a determination of reasonableness.").

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is GRANTED IN PART. The first claim for relief is dismissed to the extent it alleges Alban and Sturtevent used excessive force against Plaintiff. The first claim for relief shall proceed to trial, however, insofar as it alleges that Dapcevic used excessive force against Plaintiff and that Alban and Sturtevent failed to intervene in the use of that force. The second claim for relief is dismissed as to all Defendants to the extent that it alleges that Defendants failed to protect Plaintiff from Reyes' initial surprise attack. The second claim for relief shall proceed to trial, however, based on Defendants'

purported failure to protect Plaintiff from Reyes' second attack. The claims against the John Doe Defendants are dismissed without prejudice, *sua sponte*.

The Court shall hold a Case Management Conference at 12:30 p.m. on May 4, 2022. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831. The parties shall file, by April 27, 2022, a Proposed Joint Pretrial Order, in accordance with Rule 6(A) of this Court's Individual Practices.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 104 and terminate the John Doe Defendants as parties to this action.

**SO ORDERED:**

Dated: White Plains, New York
March 29, 2022

_____
PHILIP M. HALPERN
United States District Judge