UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM CONSTANT,

                         Plaintiff,

        -against-

NEDZAD DAPCEVIC, ANTONIO ALBAN,
and BRIAN STURTEVENT,

          Defendants.

16 Civ. 03985 (PMH)

---

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTIONS IN LIMINE**

SOKOLOFF STERN LLP
Attorneys for Plaintiff William Constant
179 Westbury Avenue, 2nd Floor
Carle Place, New York 11514

*Of Counsel:*
   Steven C. Stern

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff William Constant submits this memorandum of law in support of his motions *in limine* to preclude Defendants from offering evidence at trial that is not relevant to the issues, and for which the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and will cause delay and a significant waste of time. This case involves a May 27, 2013 incident in which, while in New York State Department of Corrections and Community Supervision custody, Plaintiff was slashed by an inmate, abandoned by the Defendants, required to defend himself from further attack, and later struck in his head with a baton wielded by one of the Defendant Correction Officers.

Plaintiff moves to preclude Defendants from introducing Mr. Constant's prior disciplinary matters and prior criminal history. This evidence is not relevant; if it was, its probative value is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 401-403. It is also improper character evidence that should be excluded under Rules 404 and 608.

Plaintiff also moves to preclude former Deputy Superintendent Edward R. Burnett from testifying as a fact or expert witness, and to limit the expert testimony of Dr. Gregory Mazarin and Dr. Kishore Ranade. Mr. Burnett has no firsthand knowledge of the facts, and is not qualified to testify as an expert for the matters in which Defendants propound him. Dr. Mazarin and Dr. Ranade should not be permitted to suggest the mechanism of injury or opine on the ultimate issue in this case.

<u>**STATEMENT OF FACTS**</u>

The Court's familiarity with the facts of this case is assumed. Plaintiff otherwise refers the Court to his Rule 56.1 Statement and the documents that accompanied Plaintiff's opposition to Defendants' motion for summary judgment.

<u>LEGAL ARGUMENT</u>

**POINT I:**     **THE COURT SHOULD PRECLUDE EVIDENCE REGARDING MR. CONSTANT'S PRISON DISCIPLINARY HISTORY**

Defendants produced a disciplinary printout, which they do not list as a trial exhibit. Although the document purports to list disciplinary matters involving Mr. Constant, it does not provide any details regarding the incidents, but rather characterizes them with one or two words and a code number. In an abundance of caution, Defendants move to prohibit use of disciplinary evidence, either as impeachment or for any other purpose, as it is unclear whether or to what extent Defendants intend to offer it. (Ex. A.)

*A.  Mr. Constant's Prison Disciplinary History Should Be Excluded Under Rule 404(b)*

Federal Rule of Evidence 404(b) prohibits using "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The Second Circuit has held that Rule 404(b) bars using a Section 1983 plaintiff's disciplinary records to show that the plaintiff has an "aggressive character" or that it was "more likely than not that he was the aggressor on the occasions in question." *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996). Instead, "[e]vidence of [the plaintiff 's] disciplinary infractions is quintessential 404(b) character evidence" that must be excluded. *Giles v. Rhoades*, No. 94-cv-6385 (CSH), 2000 WL 1425046, at *11 (S.D.N.Y. Sept. 27, 2000); *see also Lewis v. Velez*, 149 F.R.D. 474, 479 (S.D.N.Y. 1993) (collecting cases). Here, Mr. Constant's disciplinary history serves no purpose other than to suggest Mr. Constant has a propensity for violence or rule-breaking and must have acted in conformity with those traits during his interaction with Defendants.

Further, while Rule 404(b) allows for "other-acts" evidence to be used for "another purpose" besides propensity, such as intent, there would be no proper purpose for using Mr.

Constant's disciplinary history here. To the extent Defendants intend to argue Mr. Constant's prior infractions show an intent to lunge at them during the incident (for which there is no actual evidence), the Second Circuit has ruled that an excessive force plaintiff's disciplinary history does not bear on intent in analogous circumstances. *See Hynes*, 79 F.3d at 291. And the disciplinary history does not suggest Mr. Constant ever engaged in violence towards correction staff. Nor is Mr. Constant's disciplinary history relevant to the reasonableness of Defendants' conduct. The Court of Appeals has rejected the theory that a Section 1983 plaintiff's disciplinary history is relevant to the reasonableness of the Defendants' conduct where Defendants have not "present[ed] evidence that, at the pertinent time, they were aware of [plaintiff's] disciplinary record." *Hynes*, 79 F.3d at 291.

The disciplinary history suggests Plaintiff was involved in a few incidents of fighting, mostly long before the incident at issue (2002, 2003, 2005, and 2006); non-descript "false info" charges in 2004 and 2010; a property in an unauthorized location charge in 2004; a phone violation in 2004; unspecified "harassment" in 2004; failure to follow unspecified orders in 2006 and 2008; a movement violation in 2011; contraband/smuggling in 2011; and an unspecified disturbance in September 2013 (after the incident). This history provides no substantive information on these alleged offenses. It has no bearing on how he behaved on the date of the incident, let alone how Defendants treated him. Because the only purpose for offering Mr. Constant's disciplinary history would be for the improper purpose of trying to prove his propensity for violence or other misbehavior, this evidence should be excluded under Rule 404(b).

B.  *The Disciplinary Record Should Be Excluded Under Rules 402 and 403*

Even if Mr. Constant's infraction record was admissible under Rule 404(b), it should nevertheless be excluded under Rules 402 and 403. Mr. Constant's infraction history is not

probative of any issue in the case. The "key inquiry" is whether "use of force was excessive so as to reach the level of a Constitutional violation." *Eng v. Scully*, 146 F.R.D. 74, 77 (S.D.N.Y. 1993). Evidence of Mr. Constant's disciplinary history will not aid the trier of fact in resolving that question. Even if Mr. Constant's infraction history did have some limited probative value, it is "vastly outweighed by countervailing Rule 403 factors" for at least two reasons. *Doe v. Lima*, No. 14-cv-2953 (PAE), 2020 WL 728813, at *8 (S.D.N.Y. Feb. 13, 2020). First, allowing evidence of Mr. Constant's other purportedly aggressive or disobedient conduct would invite the jury to decide against Mr. Constant on an improper basis because it disapproves of his past actions. That is the classic category of evidence that is excluded as unfairly prejudicial under Rule 403. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Second, admitting Mr. Constant's infraction history "would invite the classic 'trial within a trial' that Rule 403 disfavors." *Lima*, 2020 WL 728813, at *8 (collecting cases); *see id.* at *6.

### C. Mr. Constant's Disciplinary Record May Not Be Used for Impeachment Purposes

Defendants should also not be allowed to use Mr. Constant's disciplinary record for impeachment purposes. A party may inquire into specific instances of conduct on cross-examination to impeach a witness only if those instances are "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). The only allegation that could possibly bear on his character for truthfulness are the references to "false info." But the document provides absolutely no context to the allegations, and the 2004 incident does not even reflect he was actually disciplined. While the 2010 incident indicates minor discipline, that allegation was coupled with "movement" and "out of place" charges, and does not specify the charge for which he was ultimately disciplined. "[C]onverting" this trial "into an exploration" of Mr. Constant's unrelated infractions would "promote delay, risk confusing the jury as to its finite mission, and create a high

risk of unfair prejudice." *Id.* at *6.  It would unduly prejudice the plaintiff, waste time, and confuse the jury.

**POINT II:**     **THE COURT SHOULD PRECLUDE EVIDENCE REGARDING MR. CONSTANT'S CRIMINAL HISTORY**

   *A.  Mr. Constant's Criminal History Is Inadmissible Under Rule 404(b)*

   Like Mr. Constant's disciplinary history, Mr. Constant's criminal conviction in 2000—more than 20 years ago—is inadmissible under Rule 404(b) because it would serve no legitimate non-propensity purpose. The jury will already know Mr. Constant was a prisoner in a State-run penitentiary; the admission of any additional evidence of his criminal conduct would serve only to unduly prejudice the jury against him.

   As with Mr. Constant's disciplinary history, Mr. Constant's criminal record is not relevant to his intent because his intent is not in dispute. *See* Point I.A, *supra*. Even if Mr. Constant's criminal history were admissible under Rule 404(b), it would still flunk Rule 403's balancing test. Like disciplinary history, evidence of prior criminal history is the classic type of evidence that is excluded as unfairly prejudicial under Rule 403 because it would tempt the jury to decide the case on improper grounds. *See supra* Point I.B; *see also Lima*, 2020 WL 728813, at *6 (the improper use of criminal convictions is "paradigmatic unfair prejudice").

   *B.  Mr. Constant's Conviction May Not Be Used for Impeachment Purpose*

   Rules 608 and 609 also prohibit using Mr. Constant's 2000 conviction. First, the 2000 conviction does not fall within Rule 609(a)(2). It is well settled that, in the Second Circuit, "crimes of force," like "armed robbery" or "burglary," are not admissible under Rule 609(a)(2) because those crimes do not "bear directly on the likelihood that the [witness] will testify truthfully." *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977); *see also United States v. Estrada*, 430 F.3d 606,

614 (2d Cir. 2005) (collecting cases); *Lima*, 2020 WL 728813, at *5 (collecting cases).

Thus, the 2000 conviction can only be used for impeachment if it can, "consistent with Rule 609(a)(1), satisfy Rule 403's balancing test." *Lima*, 2020 WL 728813, at *5. When balancing a conviction's probative value against its prejudicial effect, courts examine four factors: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997); *see also Hayes*, 553 F.2d at 828. "Although all of these factors are relevant, 'prime among them is the first factor, i.e., whether the crime, by its nature, is probative of a lack of veracity.'" *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (*quoting United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)) (alterations omitted). The jury will already know from the facts of this case that Mr. Constant was in prison. They need not know anything more than that, which will only serve to unduly prejudice the prosecution of his civil rights action.

These factors weigh heavily against admitting the 2000 conviction for impeachment. First, the impeachment value of the prior crime is low. Crimes of force—like "armed robbery" and "burglary"—are not particularly "probative of credibility for purposes of Rule 609." *Hartman v. Sneiders*, No. 04-cv-1784 (CLP), 2010 WL 11626508, at *12 (E.D.N.Y. Jan. 28, 2010) (collecting cases); *see also Furtado v. Bishop*, 604 F.2d 80, 93-94 (1st Cir. 1979), *cert. denied*, 444 U.S. 1035 (1980) (excluding convictions for armed robbery as "not particularly probative of credibility"). By contrast, however, crimes of force are "quite similar" to the "conduct implicated" by an excessive force claim and its defenses. *Olutosin v. Gunsett*, No. 14-cv-685 (NSR), 2019 WL 5616889, at *10 (S.D.N.Y. Oct. 31, 2019) (collecting cases). Because Defendants will argue that their use of force is reasonable, there is an obvious risk that the jury could view Mr. Constant's robbery conviction

as "probative of aggressive behavior" rather than of Mr. Constant's credibility. *Id.* (internal quotation marks omitted). Thus, the third factor—the similarity of the crime to the conduct at issue—weighs heavily against admission. *Id.*; *see also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) (in excessive force cases, admission of convictions of crimes of force "skirt too close to the impermissible suggestion that plaintiff had a propensity toward violence").

Moreover, standard Rule 403 factors, like "'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence,'" Fed. R. Evid. 403, provide still more reason not to admit the 2000 conviction. Admission of Mr. Constant's armed robbery conviction will invite the jurors to find against Mr. Constant simply because they disapprove of his past behavior. That is the classic scenario that Rule 403 is meant to avoid.

Even when a prior felony conviction is relevant to a plaintiff's credibility, evidence concerning the type of felony committed is not necessary to impeach credibility. *See, e.g., Lima*, 2020 WL 728813, at *7 ("[I]t is generally improper to admit details of a witness's offense beyond that 'necessary to establish a criminal conviction.'"); *Giles v. Rhoades*, No. 94-cv-6385, 2000 WL 1510004, at *1 (S.D.N.Y. Oct. 10, 2000) ("[N]umerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense"); *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (describing courts' discretion to "further limit the evidence of the prior conviction"). The danger of unfair prejudice is extremely high and, even if the Court permits defendants to cross-examine Mr. Constant on his prior conviction, any evidence beyond the fact that Mr. Constant was convicted of a crime is plainly inadmissible under Rule 403.

Here, where the Plaintiff's conviction more than 20 years ago (13 years before the

incident), and the jury will already know he was a prisoner, there is no probative value to mentioning that he had committed a crime.

**POINT III:**      **THE COURT SHOULD RESTRICT DEFENDANT'S EXPERT WITNESSES**

*A.  Former Deputy Superintendent Edward R. Burnett*

Mr. Burnett should not be permitted to testify at all. He is not a fact witness, and is not qualified as an expert on DOCCS policies/procedures or officer training related to this matter.

To determine whether Mr. Burnett may qualify as an expert, the court must first address "the threshold question of whether a witness is qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). The Court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony" to "ensure that the expert will actually be testifying on issues or subject matters within his or her area of expertise." *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (cleaned up); *see also Lara v. Delta Int'l Mach. Corp.*, No. 13-cv-6259 (AKT), 2016 WL 1254023, at *4 (E.D.N.Y. Mar. 31, 2016). The trial court functions in a "gatekeeping" capacity in order to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). This function, "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147, 149-50 (1999). The court's over-arching "gatekeeping" role requires that it "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the field." *Id.* at 152.

Defendants intend to offer Mr. Burnett to testify about "DOCCS policies and procedures regarding, and officer training with respect to the use of physical force, including in which situations and to what degree such force, including the use of batons, is authorized and necessary; contraband, including weapons; the supervision of inmates, including in the Green Haven E&F Yard; and responding to inmates engaging in fights or violence." (*See* Joint Pre-Trial Order.)

Mr. Burnett has no personal knowledge of the incident and, therefore, his testimony regarding what occurred is not relevant. (Exhibit B, Burnett dep. p. 31 ["I had no firsthand information, no."].) He recalls nothing of any administrative actions he took on the date of the incident. (*Id.* pp. 26-27.) He did not write any reports about the incident. (*Id.* p. 28.) Yet his contribution to this matter is that he concluded the use of force was reasonable and necessary— the ultimate issue in this case. (*Id*. pp. 30, 48.) That is the precise—but improper—purpose for which Defendants will offer his testimony.

Nor is Mr. Burnett competent to testify as an expert witness on the use of force. He does not have a college degree. (Burnett Dep. p. 7.) His highest educational degree is from high school, with some community college. (*Id.*) He has never taken any criminal justice courses. (*Id.* p. 8.) He never published any articles on the use of force. (*Id.*)

Mr. Burnett has no knowledge of the training that the Defendant Correction Officers received. He testified, "I don't know what the training included in 2013." (*Id.* p. 36.) He admitted there were some changes in baton techniques since 2013; so he does not know what the techniques were at the time of the incident. (*Id.*) He said the officers were just trained in de-escalation "within the last couple of years," prior to his 2020 deposition; so he cannot testify about that. (*Id.* at p. 36.) In fact, Mr. Burnett is "not a certified trainer" and, therefore "do[es] not [even] have access to the

lesson plan" at DOCCS regarding the use of force. (*Id.* pp. 39-40.) He is not at all competent to testify as an expert in this matter. Fed. R. Evid. 701, 702; *Daubert*, 509 U.S. at 579.

To the extent Mr. Burnett is propounded to suggest the use of force was appropriate, it would plainly usurp the jury's role of resolving the ultimate legal conclusion at the heart of this case. *See Olutosin v. Gunsett*, No. 14-cv-00685 (NSR), 2019 WL 5616889, at *3 (S.D.N.Y. Oct. 31, 2019) (precluding DOCCS Deputy Superintendent of Security from testifying about the reasonableness of a particular use of force).

### B. Dr. Gregory Mazarin and Dr. Kishore Ranade

Dr. Mazarin and Dr. Ranade should be precluded from testifying as expert witnesses for the purposes propounded in the Joint Pretrial Order. Defendants indicate in the Joint Pre-Trial Order that Dr. Mazarin is expected to testify "that none of plaintiff's head lacerations or trauma were caused by a baton, and any other symptoms were caused by the fight with the other incarcerated individual." They submit that Dr. Ranade "will rebut testimony of plaintiff's expert, Dr. Duarte, as to plaintiff's claim of a concussion, vertigo, and blurred vision, reporting that there was no evidence of a concussion, complaints of vertigo were not supported by objective evidence, dizziness was more likely to be related to an underlying cardiac condition, and headaches were the product of the altercation with the other incarcerated individual, not blows from a baton."

"Testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). Here, both doctors are propounded as witnesses with opinions on a fact for which they have no personal knowledge, i.e., whether Officer Dapcevic hit Plaintiff in the head with a baton. This Court already ruled that this

is impermissible expert testimony, and it must be excluded under Rules 702 ad 703. (Tr. of May 4, 2022 conference, pp.15-16.).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff William Constant respectfully submits that this Court should grant his motions *in limine*, together with such other relief that this Court deems proper and just.

Dated:  Carle Place, New York
        June 6, 2022

                                        SOKOLOFF STERN LLP
                                        *Attorneys for Plaintiff*
                                        *William Constant*


                          By:    Steven C. Stern
                                 179 Westbury Avenue, 2nd Floor
                                 Carle Place, New York 11514
                                 (516) 334-4500

13